**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,**

        **Plaintiffs,**

    **v.**                           **Civil Action No. 1:19-cv-00576**

**BLUESTONE COAL CORPORATION,**

        **Defendant.**

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs filed this citizen suit against Defendant Bluestone Coal Corporation under Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. §1365, and Section 520 of the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §1270. They allege that Defendant has discharged pollutants from its Red Fox Surface Mine in violation of its CWA discharge permit and SMCRA mining permit. Defendant has moved to dismiss, arguing that Plaintiffs' action is barred by the CWA and SMCRA preclusion provisions because the same alleged violations have been diligently prosecuted in a 2016 government consent decree. But the 2016 decree has no preclusive effect because (1) it does not require compliance with the same permit limits that Plaintiffs are seeking to enforce, (2) it was not pending or ongoing at the time Plaintiffs filed this case, and (3) it does not diligently prosecute the same violations that Plaintiffs have alleged in this case. Alternatively, Plaintiffs contend that the Court should defer ruling on the issue until Plaintiffs can conduct discovery, because the diligence of a prior prosecution is a question of fact and there are disputed facts at issue.

## Standard of Review

"Whether the diligent prosecution bar is a jurisdictional issue remain an open question" in the Fourth Circuit, but one district court in this Circuit has evaluated it as a jurisdictional issue under Rule 12(b)(1). See Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC, 141 F. Supp. 3d 428, 439 (M.D.N.C. 2015) (quoting Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll County, Md., 523 F.3d 453, 456 (4th Cir. 2008)); Roanoke River Basin Ass'n v. Duke Energy Progress, LLC, No. 1:16-cv-607, 2017 WL 5654757, at *3 (M.D.N.C. Apr. 26, 2017). And although Plaintiffs note that at least one other circuit has ruled that the bar is not a matter of jurisdiction, see Louisiana Environmental Action Network v. City of Baton Rouge, 677 F.3d 737, 749 (5th Cir. 2012),[1] for purposes of the pending motion to dismiss, Plaintiffs will treat the question as jurisdictional.

"In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). Nevertheless, when, as here, a defendant challenges the factual predicate of jurisdiction—and such facts are directly intertwined with those central to the merits of the dispute—the trial court "should then afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." Kerns v. United States, 585 F.3d 187, 192-93 (4th Cir. 2009). The district court may only grant a motion to dismiss for lack of subject-matter jurisdiction when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Upstate Forever v.

---

1   Other circuits have similarly held with regard to the diligent prosecution bars in the Clean Air Act and the Resource Conservation and Recovery Act. See Group Against Smog & Pollution, Inc. v. Shenago, Inc., 810 F.3d 116, 123–24 (3d Cir. 2016) (holding the diligent prosecution bar of the Clean Air Act, 42 U.S.C. §7604(b)(1)(B), is not a jurisdictional issue); Adkins v. VIM Recycling, Inc., 644 F.3d 483, 491–92 (7th Cir. 2011) (ruling the diligent prosecution bar of the Resource Conservation and Recovery Act, 42 U.S.C. §6972(b)(1)(B), is not a jurisdictional issue).

Kinder Morgan Energy Partners, L.P., 887 F.3d 637, 645 (4th Cir. 2018) (quoting Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999)).

**Facts**

On September 30, 2016, the United States filed a Complaint and Consent Decree against Southern Coal Company. Pls'. Ex. A (Compl., United States v. Southern Coal Co., Civ. No. 7:16-cv-00462, CM/ECF #1 (W.D. Va. Sept. 30, 2016)); Pls.' Ex. B (Notice of Lodging of Consent Decree, Id., CM /ECF #2). The U.S. District Court for the Western District of Virginia entered that Decree as a final judgment on December 19, 2016. Def.'s Ex. 1 (Consent Decree, Id., CM/ECF #21). Defendant Bluestone Coal Corporation is a subsidiary of Bluestone Resources, Inc, which is a subsidiary of Southern Coal Company. See id.; Def.'s Memo. at 3 n.7 (CM/ECF #9). The Complaint did not identify or list specific permit violations. See generally Pls.' Ex. A. However, the Consent Decree stated that it "resolves the civil claims of the United States and the States alleged in the Complaint for the violations set forth in Appendix F to this Consent Decree." Def.'s Ex. 1, ¶122.

Appendix F to the Decree identified a limited set of violations of WV/NPDES Permit No. WV1006304 at Defendant's Red Fox Surface Mine. Pls.'s Ex. C, App. F to Consent Decree, United States v. Southern Coal Co., Civ. No. 7:16-cv-00462, CM/ECF #2-7 at 712–14 (W.D. Va. Dec. 19, 2016).[2] Those violations occurred between April 2011 and June 2015 and were violations of the following specific permit limitations:

| Outlet | Permit Limitations Violated |
|--------|------------------------------|
| 001 | Aluminum, pH |
| 002 | Aluminum, iron, TSS, pH |
| 003 | Aluminum, selenium, pH |
| 004 | Aluminum |
| 005 | Aluminum, iron |

---

2   The Declaration of Derek O. Teaney, attached as Plaintiffs' Exhibit D, authenticates the excerpts of Appendix F of the Consent Decree that is attached as Plaintiffs' Exhibit C. As noted in the Teaney Declaration, Appendix F is 731 pages long, so Plaintiffs include only relevant excerpts from that filing.

| 006 | Aluminum, TSS, pH |
| 007 | Aluminum, pH |
| 008 | Aluminum |
| 020 | Aluminum |
| 046 | Selenium |

Id. The 2016 Consent Decree did not list or include any violations of the permit limitations for selenium at Outlets 005, 006, 007, or 008. Id. In contrast, Plaintiffs' Complaint in this action alleges only selenium violations at Outlets 005, 006, 007, and 008. CM/ECF #1 at 11–13. Thus, there is no overlap between the violations prosecuted in the 2016 Consent Decree and those alleged in the present action.

At the time the 2016 Consent Decree was entered, Defendant's WV/NPDES Permit No. WV1006304 did not contain a numerical effluent limit for selenium at Outlets 005, 006, 007, or 008. Pls.' Ex. E (Major Modification No. 16 to WV/NPDES Permit No. WV1006304). Instead, it only contained a compliance schedule for selenium at those outlets. Id. at 3–7. That schedule was imposed in a permit modification that the West Virginia Department of Environmental Protection ("WVDEP") issued on June 21, 2016. Id. Under that modification, Defendant only had to monitor and report the selenium concentration at those outlets until June 22, 2018. Id. at 3–6. On and after that date, Defendant's discharges had to comply with numerical effluent limits for selenium. Id. Those limits are a monthly average of 4.7 µg/l and a daily maximum of 8.2 µg/l. Id. Plaintiffs only seek to enforce violations of those selenium limits after June 22, 2018, which is nearly eighteen months after the 2016 Consent Decree was entered.

The 2016 Consent Decree stated that it "does not limit the rights of the United States, DOI, or the States to obtain penalties or injunctive relief under the CWA, SMCRA, or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 122." Def.'s Ex. 1, ¶ 123. Thus, the Decree only adjudicated and prosecuted the violations of permit limitations referenced in Paragraph 122—which by its express terms was

limited to the permit limitations identified in Appendix F. Id., ¶122. In addition, the Decree stated

that it did not "limit the rights of third parties, nor party to this Consent Decree, against Defendants,

except as otherwise provided by law." Id., ¶128. Thus, the Decree did not preclude the United States,

the State, or anyone else from bringing a future prosecution seeking civil penalties or injunctive relief

for any violations that were not listed in Appendix F of the Decree.

The 2016 Consent Decree does not contain any deadline for Defendant to achieve permit

compliance. Instead, the injunctive relief provisions of the Decree required Defendant to establish an

environmental management system, conduct environmental audits and inspections, analyze the cause

of violations, implement corrective actions, set up a compliance database on a publicly available

website, and conduct employee training. Id., ¶¶34–62. The Decree also imposed stipulated penalties

for future permit violations, but designated those penalties as a non-exclusive remedy that would

qualify for an offset against any statutory penalties that were subsequently assessed. Id., ¶¶84–102.

Specifically and importantly, the Decree states that "[s]tipulated penalties are not the United States' or

the States' exclusive remedy for violations of this Consent Decree," and the United States and the

States "expressly reserve the right to seek" additional relief for future violations of the law, "including

. . . statutory penalties [and] additional injunctive relief . . . ." Id., ¶102.

According to Bluestone's quarterly reports filed with the United States pursuant to the Decree,

Bluestone has reported 42 violations of its average selenium limits and 65 violations of its maximum

selenium limits at Outlets 005, 006, 007, and 008 since July 2018. Pls.' Ex. F.[3] Bluestone reported that

---

3   The 107 violations listed in the quarterly reports that Bluestone submitted to the United States are
    greater than the number of violations listed on the monthly discharge monitoring reports
    ("DMRs") that Bluestone submitted to WVDEP (on which Plaintiffs relied in their Complaint),
    because the DMR form only requires Bluestone to list the highest maximum value in each month.
    In some months, Bluestone sampled selenium four times and exceeded the maximum limit on
    multiple days. See, e.g., Pls' Ex. F at 2 (four selenium samples taken at Outlet 007 during
    September 2018).

it paid no stipulated penalties for 31 violations of the maximum selenium limits at those Outlets. Id.[4]

Its stipulated penalties for the remaining 75 violations total $286,500. Id.[5] But that figure is far short

of the potential statutory civil penalty to which Bluestone exposed itself by continuing to violate the

CWA. The maximum statutory civil penalty for CWA violations after November 2, 2015 is $54,833

per day of violation. 40 C.F.R. § 19.4; 84 Fed. Reg. 2059 (Feb. 6, 2019). For the purpose of calculating

penalties, a violation of a monthly average limit is counted as a violation for each day of the month.

Chesapeake Bay Foundation v. Gwaltney of Smithfield, Ltd., 791 F.2d 304, 313 (4th Cir. 1986),

vacated and remanded on other grounds, 484 U.S. 49 (1987). Bluestone's 107 violations comprise a

total of 1,345 days of violations, which are subject to a maximum civil penalty of $73,256,888. Pl.

Ex. G.

## I.     The 2016 Consent Decree Has No Preclusive Effect on this Action.

The CWA and SMCRA each contain substantially similar language providing that the

commencement of a citizen suit in federal court is barred only when "the Administrator or State has

commenced and is diligently prosecuting a civil or criminal action . . . to require compliance with the

standard, limitation, or order" at issue in the citizen suit. 33 U.S.C. §1365(b)(1)(B); 30 U.S.C.

§1270(b)(1)(B). This Court has stated that:

> Courts engage in a two-part inquiry to determine whether a defendant may invoke the
> diligent prosecution bar at 33 U.S.C. §1365(b)(1)(B) to preclude a citizen suit from
> enforcing an effluent standard or limitation imposed pursuant to the Act. First, a court
> must determine whether a prosecution by the state (or the EPA Administrator) to
> enforce the same "standard, order, or limitation" was pending on the date that the
> citizens' suit commenced. Second, if the answer to the previous question is affirmative,

---

4    The lack of civil penalties for those 31 violations is indicated by the "N/A" designation in the
     column that designates the Stipulated Penalty Category.

5    To calculate this figure, Plaintiffs listed in the attached table every violation reported by Bluestone
     in its quarterly reports, used the penalty category assigned by Bluestone from Paragraph 88.a. of
     the Decree, and then summed the penalties for each violation. Pls.' Ex. G. For example, a Category
     2 average violation is subject to a $4,500 penalty. Plaintiffs obtained Bluestone's quarterly reports
     at http://www.southerncoalcorporation.droppages.com. The reports that Plaintiffs selected are
     the ones filed under "Effluent Limits Violations" and then named "Explanations."

a court must also determine whether the prior pending action was being "diligently prosecuted" by the state at the time that the citizens' suit was filed.

Ohio Valley Envtl. Coal., Inc. v. Patriot Coal Corp., Civ. No. 3:11-0115, 2011 WL 6101921, at *5 (S.D.W. Va. Dec. 7, 2011). As established below, the 2016 Consent Decree does not satisfy either of those requirements.

### A. The 2016 Consent Decree Did Not Require Compliance With the Same Permit Limitations that Plaintiffs Seek to Enforce

Plaintiffs' action is not precluded because the 2016 Consent Decree did not require compliance with the same requirement that Plaintiffs seek to enforce. That Decree only sought compliance with the limitations that were in effect on September 30, 2016. Those limitations are listed in Appendix F to the Decree and did not include the selenium limitations at Outlets 005, 006, 007 and 008. Pls.' Ex. C. Indeed, the Decree could not enforce those limits because they were not even in effect on September 30, 2016. They became effective eighteen months later on June 22, 2018. Pls. Ex. E. The 2016 Consent Decree therefore has no preclusive effect.

This Court's decision in Ohio Valley Environmental Coalition v. Independence Coal Co., Inc., Civil No. 3:10-0836, 2011 WL 1984523 (S.D. W.Va. 2011), is directly on point. There, as here, the defendant argued that a prior government consent decree imposed corrective action requirements and stipulated penalties for future violations of all of its permit limits at any outlet and therefore barred a CWA citizen suit for violations of selenium limits. 2011 WL 1984523 at *3. This Court rejected that argument for two reasons.

First, the consent decree contained explicit provisions stating that it did not bar future actions by the United States, the State, or third parties to seek penalties for future violations. Id. at *5. The language of the third-party provision in Independence is identical to the language of the third-party provision in the 2016 Consent Decree in this case. Compare id. at *3 with Def.'s Ex. 1, ¶128. In Independence, the United States interpreted that same provision to mean that "the Decree would not

7

prevent the United States, States <u>or any other entities including citizens</u> from pursuing violations that were not alleged in the Complaint or occurred after" the Decree was lodged with the court. 2011 WL 1984523 at *3 (emphasis added).

Second, the Court stated that the selenium limits sought to be enforced by citizens were not in effect when the decree was entered. <u>Id.</u> at *5. Again, that is exactly the same as the situation presented in this case. The Court stated that it "cannot imagine how the Consent Decree was, in good faith, calculated to achieve compliance" with selenium limits that were not yet in effect; "the effect of the Consent Decree on future violations" of those limits "could not have been more than a speculative consideration." <u>Id.</u> at *6.[6]

In <u>Independence</u>, the consent decree included stipulated penalties for future violations of selenium limitations that became effective after the decree was entered. Despite those penalties, this Court held that the decree did not preclude a subsequent citizen suit for future violations, because the decree was not intended, and could not have sought, to require compliance with those selenium

---

6   The Supreme Court has similarly held that "a judgment . . . cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." <u>Lawlor v. Nat'l Screen Service</u>, 349 U.S. 322, 328 (1955) (holding that a prior lawsuit cannot preclude a later lawsuit when the second suit is based on actions that occurred after the judgment in the prior action, even if the cases are closely related) (internal quotation and citation omitted). Furthermore, the preclusive effect of a government consent decree "reaches, at the very most, to those claims and violations to which the Petition and Consent Judgment specifically refer." <u>Citizens Legal Environmental Action Network v. Premium Standard Farms</u>, Civ. No. 97-6073, 2000 WL 220464, at *10 (W.D. Mo. 2000). <u>See also</u> <u>Berry v. Farmland Indus., Inc.</u>, 114 F. Supp.2d 1150, 1156 (D. Kan. 2000) (finding that citizen suit claims that were not mentioned in an EPA consent decree were not resolved by decree's entry and not precluded under the CWA); <u>Borough of Upper Saddle River, N.J. v. Rockland Cty. Sewer Dist. #1</u>, 16 F. Supp. 3d 294, 323 (S.D.N.Y. 2014) (consent order did not resolve violations occurring after its execution); <u>Riverkeeper, Inc. v. Mirant Lovett, LLC</u>, 675 F. Supp. 2d 337, 346 (S.D.N.Y. 2009) (same); <u>see also</u> <u>Humane Soc. of U.S. v. HVFG, LLC</u>, Civ. No. 06-C- 6829, 2010 WL 1837785, at *13 (S.D.N.Y. May 6, 2010), <u>as amended</u> (May 18, 2010) (limiting effect of consent order based on whether its terms expressly listed the violations asserted by plaintiff, and finding that violations not listed therein "were not contemplated, let alone resolved" by the consent order).

limitations at the time the decree was filed. The present case involves exactly the same factual situation. This Court's holding in <u>Independence</u> therefore applies with full force to this case and the Court should deny Defendant's motion on that basis.

**B.    The 2016 Consent Decree Does Not Satisfy the Requirement that the Government's Prosecution Is Pending on the Date Plaintiffs' Citizen Suit Was Commenced.**

The CWA and SMCRA preclusion sections both provide that a prior government action has preclusive effect only if the government "is diligently prosecuting" that action at the time the citizen suit was commenced. 33 U.S.C. § 1365(b)(1)(B); 30 U.S.C. § 1270(b)(1)(B). Here, Plaintiffs' citizen suit is not precluded because the government's prosecution as embodied in the 2016 Consent Decree was not pending or ongoing at the time Plaintiffs' complaint was filed.

Only actions that the government "<u>is</u> diligently prosecuting" are preclusive. 33 U.S.C. §1365(b)(1)(B) (emphasis added). Congress's use of the present tense in that phrase is deliberate, significant, and controlling. In <u>Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.</u>, 484 U.S. 49 (1987), the Supreme Court based its decision that the CWA citizen suit provision in Section 505 of the Act conferred no jurisdiction for a citizen suit to enforce against wholly past violations on the present tense of the phrase "is alleged to be in violation" in §505(a)(1). The Court's primary interpretation of the phrase was its plain meaning:

> The most natural reading of "to be in violation" is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future. Congress could have phrased its requirement in language that looked to the past ("to have violated"), but it did not choose this readily available option . . . . [T]he prospective orientation of that phrase could not have escaped Congress's attention . . . . [C]ongress has demonstrated in yet other statutory provisions that it knows how to avoid this prospective implication by using language that explicitly targets wholly past violations.

484 U.S. at 57. The Supreme Court's admonition in <u>Gwaltney</u> to give meaning to the tenses used in §505(a)'s limitation on the type of violations that citizens can enforce must also be followed in interpreting §505(b)'s limitation on the type of government actions that can preclude citizen suits.

Consequently, a citizen suit can only enforce violations that are ongoing at the time the suit is filed, and a prior government action is preclusive only if it is ongoing at the time the citizen suit is filed.[7] Conversely, citizens cannot enforce wholly past violations, and past completed prosecutions cannot preclude citizen suits. The courts have so held. California Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 728 F.3d 868, 873 (9th Cir. 2013) ("[T]he phrase ['has commenced and is diligently prosecuting' in Section 505(b) of the CWA] requires an inquiry as to whether the government was diligently prosecuting its action at the time when the citizen filed his or her complaint."); Conn. Fund for the Env't v. Contract Plating Co., 631 F. Supp. 1291, 1293 (D. Conn. 1986) (same); Conn. Fund for the Env't v. L & W Indus., Inc., 631 F. Supp. 1289, 1291 (D. Conn. 1986) (same). Most courts have reached that same conclusion when they have construed the identical phrase in Section 309(g)(6)(A)(ii) of the CWA (33 U.S.C. § 1319(g)(6)(A)(ii)), Section 304(b)(1)(B) of the Clean Air Act ("CAA") (42 U.S.C. § 7604(b)(1)(B)), and Section 7002(b)(1)(B) of the Resource Conservation and Recovery Act ("RCRA") (42 U.S.C. § 6972(b)(1)(B)). Citizens for a Better Env't-Cal. v. Union Oil Co., 83 F.3d 1111, 1118 (9th Cir. 1996) (CWA); Glazer v. Am. Ecology Envtl. Servs. Corp., 894 F. Supp. 1029, 1034

---

7   In Ohio Valley Environmental Coalition v. Consol of Ky., Civ. No. 2:13-cv-5005, 2014 WL 1761938, at *5 (S.D.N.Y. 2014), this Court agreed with Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 890 F. Supp. 470, 485–86 (D.S.C. 1995), vacated by 149 F.3d 303 (4th Cir. 1998), rev'd, 528 U.S. 167 (2000), that citizen suits are precluded if the government "is diligently prosecuting or has diligently prosecuted a judicial action to enforce the same alleged violations" (emphasis added). Plaintiffs respectively submit that that conclusion is contrary to the central holding of Gwaltney, namely, that the present tense in Section 505 is controlling and that the court cannot read the past tense into the language in that section. The Gwaltney court distinguished the prospective orientation of the CWA from the past orientation of the Resource Conservation and Recovery Act, which authorizes citizens to sue a person "who has contributed or who is contributing" to the "past or present" handling, storage, treatment, transportation, or disposal of certain hazardous wastes. Gwaltney, 484 U.S. at 57, n.2 (quoting 42 U.S.C. §6972(a)(1)(B)).

Moreover, the question of whether a concluded governmental enforcement action could present a statutory bar to a later citizen suit under 33 U.S.C. §1365(b) was not argued by the parties in Consol, and this Court ultimately concluded that the prior action was not diligently prosecuted on other grounds. 2014 WL 1761938, at *7–*9. Accordingly, this Court's statements in Consol regarding the relative timing of the two enforcement actions were obiter dicta.

(E.D. Tex. 1995) (CAA and RCRA); <u>Pub. Interest Research Group, Inc. v. GAF Corp.</u>, 770 F. Supp. 943, 949 (D.N.J. 1991) (CWA); <u>contra</u>, <u>Grp. Against Smog & Pollution, Inc. v. Shenango Inc.</u>, 810 F.3d 116, 129 (3d Cir. 2016) (CAA).[8]

The 2016 Consent Decree was not a pending or ongoing prosecution at the time Plaintiffs filed the present action. The latest date of the prosecuted violations listed in Appendix F of that Decree was June 30, 2015. Pls.'s Ex. C, App. F to Consent Decree, <u>United States v. Southern Coal Co.</u>, Civ. No. 7:16-cv-00462, CM/ECF #2-7 at 712 (W.D. Va. Dec. 19, 2016). The last substantive entry in the docket sheet of that action is the entry of the Consent Decree, which occurred on December 19, 2016. Pls.' Ex. H (Docket Sheet). No subsequent motion was filed or is pending. The case has been dormant for nearly two years. The only current activity in the case, which is not reflected in the docket sheet, is Defendant's self-monitoring of its permit compliance and its payment of stipulated penalties. Monitoring compliance with a decree is not a prosecution in a court. <u>Student Pub. Interest Research Group, Inc. v. Georgia-Pacific Corp.</u>, 615 F. Supp. 1419, 1431–32 (D.N.J. 1985) (finding that a post-consent decree of administrative surveillance was not action in court that would bar a citizen suit).

Moreover, according to Bluestone's own quarterly reports, it has paid no stipulated penalties whatsoever for 31 violations of its selenium maximum limit. Pls.' Ex. F. It is axiomatic that an unpenalized violation has not been prosecuted at all, much less diligently prosecuted. <u>Citizens Legal Envtl. Action Network, Inc. v. Premium Standard Farms, Inc.</u>, Civ. No. 97-6073-CV-SJ-6, 2000 WL 220464, at *13 (W.D. Mo. Feb. 23, 2000) (Consent Judgment's release of unspecified claims "itself evidences no prosecution at all, much less a diligent one"). An unprosecuted violation is not part of

---

8   <u>Shenango</u> was wrongly decided and inconsistent with <u>Gwaltney</u> because the Third Circuit rejected the "literal, inflexible, or grammatical interpretation" of the statutory language that the Supreme Court mandated in <u>Gwaltney</u>. 810 F.3d at 129. In any event, the case is distinguishable because the <u>Shenango</u> decree lacked the third-party rights provision that is contained in the 2016 Consent Decree in this case. Consent Decree, <u>United States v. Shenango, Inc.</u>, Civil No. 2:12-cv-01029-GLL, Docket #8 at 53–54 (W.D. Pa. Nov. 6, 2012).

an action "to require compliance" within the meaning of 33 U.S.C. § 1365(b)(1)(B) or 30 U.S.C. § 1270(b)(1)(B). Only actions "to require compliance" can preclude a citizen suit. Frilling v. Village of Anna, 924 F. Supp.821, 836-39 (S.D. Ohio 1996).

Furthermore, the violations that were penalized cannot be classified as having been prosecuted in a court. As established above, the language of the 2016 Consent Decree shows that none of the parties to the Consent Decree intended the subsequent payment of a stipulated penalty to be classified as an ongoing prosecution of the underlying violation. Instead, the parties designated the stipulated penalty remedy as "non-exclusive" and they expressly reserved the right to file new prosecutions for civil penalties and injunctive relief for any future violations, including violations that would be subject to those penalties. Def.'s Ex. 1, ¶102. Paragraph 102 provides that stipulated penalties "are not the exclusive remedy for violations of this Consent Decree." Id. Paragraph 122 provides that the Decree only resolves the United States' and the State's alleged claims "for the violations set forth in Appendix F to this Consent Decree." Id., ¶122. Paragraph 123 provides that the Decree does "not limit the rights of the United States, DOI, or the States to obtain penalties or injunctive relief under the CWA, SMCRA, or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 122." Id., ¶123. And Paragraph 128 provides that the decree does not "limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law." Id., ¶128. The necessary and intended effect of those four provisions is that the United States does not regard the payment of a stipulated penalty as a prosecution that has any preclusive effect on itself or anyone else.

In Sierra Club v. City & Cty. of Honolulu, Civ. No. CV0400463DAE-BMK, 2008 WL 515963 (D. Haw. Feb. 26, 2008), the court construed a CWA consent decree with the same type of release provisions as those in this case and in Independence. The court rejected the defendant's argument that those provisions barred a CWA citizen suit, concluding that "it would be an incongruous result

12

for this Court to find that EPA and [the state] may bring subsequent suit based on [CWA violations not covered by the consent decree] but [citizen] Plaintiffs may not." Id. at *7. It simply makes no sense to say that the government is currently prosecuting violations that it said it was not yet prosecuting, or to prevent citizens from prosecuting those unaddressed violations. The 2016 Consent Decree therefore fails to meet the requirement for an ongoing prosecution and has no preclusive effect.

C.   **Even if the 2016 Consent Decree Could Be Classified as an Ongoing Prosecution, the Decree Has Not Diligently Prosecuted Selenium Violations at Outlets 005 Through 008.**

Even assuming arguendo that the 2016 Consent Decree could be classified as an ongoing prosecution, that Decree has not diligently prosecuted Defendant's selenium violations at Outlets 005 through 008, because it has not resulted in permit compliance at those outlets. As shown in the table below and Plaintiffs' Exhibit F, since the selenium limits became effective at those outlets in June 2018, Defendant has violated those limits at one or more outlets in every month ("V"=violation):

|            | 005 | 006 | 007 | 008 |
|------------|-----|-----|-----|-----|
| July 2018  | V   | V   | V   | V   |
| Aug. 2018  | V   | V   | V   | V   |
| Sept. 2018 | V   | V   | V   | V   |
| Oct. 2018  | V   | V   | V   | V   |
| Nov. 2018  | V   | V   | V   | V   |
| Dec. 2018  | V   | V   | V   | V   |
| Jan. 2019  | V   | V   | V   | V   |
| Feb. 2019  | V   | V   | V   | V   |
| Mar. 2019  | V   | V   | V   | V   |
| Apr. 2019  | V   | V   | V   |     |
| May 2019   | V   |     | V   |     |
| June 2019  |     |     | V   | V   |
| July 2019  |     |     | V   |     |
| Aug. 2019  |     |     | V   |     |
| Sept. 2019 |     |     |     | V   |

This history of noncompliance shows that the stipulated penalties imposed by the 2016 Consent Decree are too small to deter noncompliance. Those penalties range from $2,500 to $4,500 per violation. Def.'s Ex. 1, ¶88.a. Non-coercive actions that assess modest penalties are not diligent

actions "to require compliance." See Ohio Valley Envtl. Coal., Inc. v. Hobet Min., LLC, 723 F. Supp.

2d 886, 908 (S.D.W. Va. 2010) ("A lenient penalty that is far less than the maximum penalty may

provide evidence of non-diligent prosecution." (Quoting Laidlaw, 890 F. Supp. at 491.)); see also Jones

v. City of Lakeland, 224 F.3d 518, 522–23 (6th Cir.2000) (holding that imposition of "nominal token

penalties in lieu of punitive compliance incentive penalties of $10,000.00 per day authorized by the

Clean Water Act . . . contradicted a level of 'diligent prosecution'"). Bluestone's stipulated penalties

for its 107 violations since July 2018 amount to $286,500, which is less than one-half of one percent

of Bluestone's maximum statutory penalty liability of $73,256,888. To serve as a deterrent, civil

penalties must be in an amount "high enough to insure that polluters cannot simply absorb the penalty

as a cost of doing business." Laidlaw, 890 F. Supp. at 491–92. Defendant's continuous history of non-

compliance with its selenium limitations since July 2018 shows that it has treated the Decree as if it

were merely a license to continue to pollute.

In addition, Defendant still does not even have a plan to achieve compliance with selenium

limits at the four outlets. In the quarterly reports that Defendant has filed pursuant to the Consent

Decree, Defendant's explanations do not even suggest that it has an effective treatment plan or a time

frame to achieve compliance:

| Date of Selenium Violation | Explanation |
|---|---|
| 3rd Quarter 2018 | "High sediment in pond causing higher Se result in discharge, also ineffective treatment. Working with NALCO consultant to determine treatment options." See Pls.' Ex. F at 1. |
| 4th Quarter 2018 | "Not yet in-compliance" See id. at 4. |
| 1st Quarter 2019 | "Ineffective treatment, working with NALCO consultant to determine treatment options" See id. at 5. |
| 2nd Quarter 2019 | "Conducting selenium fish tissue test, working to increase permit limits" See id. at 6. |

14

The CWA and SMCRA bar citizen suits only when the government "is diligently prosecuting . . . an action . . . to require compliance." 33 U.S.C. §1365(b)(1)(B); 30 U.S.C. §1270(b)(1)(B). Therefore, diligent prosecution is prosecution that has brought or reasonably can be expected to bring about compliance. As the Fourth Circuit has held, "a CWA enforcement action will be considered diligent where it is capable of requiring compliance with the Act and is in good faith calculated to do so." Piney Run Pres. Ass'n v. The Cty. Comm'rs of Carroll Cty., Md., 523 F.3d 453, 460 (4th Cir. 2008). The 2016 Consent Decree fails that test as applied to the present case, for two reasons.

First, as shown above, the 2016 Consent Decree was not capable of requiring compliance with the selenium limits that Plaintiffs are enforcing in this case because those limits were not in effect at the time the Consent Decree was filed. Independence, 2011 WL 1984523, at *7 (holding that a Consent Decree that predates the effective date of particular effluent limitation was not capable of requiring compliance with the new limits or calculated to do so).

Second, Defendant has been in continuous non-compliance with its selenium limits since July 2018, yet the United States has done nothing further to enforce the Decree, such as setting a fixed deadline for compliance or filing new actions seeking higher penalties. It has relied entirely on the existing stipulated penalty framework, which has spectacularly failed to result in compliance. The Supreme Court has told trial courts that in cases of noncompliance with the CWA, they should issue "relief [they] consider[] necessary to secure prompt compliance with the Act." Weinberger v. Romero-Barcelo, 456 U.S. 305, 311 (1982). So, too, the government prosecutors' actions are not diligent if they settle a CWA prosecution for less than prompt compliance. The 2016 Consent Decree fails that test. See Sierra Club v. SCM Corp., 572 F. Supp. 828, 831 n. 3 (W.D.N.Y. 1983) (the government may "fail the test of diligent prosecution if it fails to adequately monitor or enforce the consent order or if it

permits new and independent pollution law violations to occur").[9] Plaintiffs should therefore be free to bring an action to seek Defendant's prompt compliance with the CWA and SMCRA.

## II.   Alternatively, if the Court Does Not Deny Defendant's Motion on Legal Grounds, It Should Defer Ruling and Allow Plaintiffs Time to Conduct Discovery on Whether the 2016 Consent Decree Is Being Diligently Prosecuted

When a "defendant challenges the factual predicate of subject matter jurisdiction" in a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff is generally afforded less procedural protection because Rule 12(d), which converts a motion to dismiss to a motion for summary judgment, only governs motions made pursuant to Rule 12(b)(6). Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). But to promote judicial economy, the Fourth Circuit has held that, "'where the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' a presumption of truthfulness should attach to the plaintiff's allegations" and the trial court should "afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." Id. at 193 (quoting Adams v. Bain, 697 F.3d 1213, 1219 (4th Cir. 1982)); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13 (1978) (noting discovery available to ascertain jurisdictional facts); McLaughlin v. McPhail, 707 F.2d 800, 806 (4th Cir. 1983) (holding that discovery is available to explore jurisdictional facts).

Bluestone's motion relies on evidence outside of the pleadings. As noted in the standard of review section above, it is an open question in the Fourth Circuit whether the question of diligent prosecution is a jurisdictional one. But it is indisputable that diligent prosecution is a question of fact. Hudson Riverkeeper Fund v. Harbor at Hastings, 917 F. Supp. 251, 256 (S.D.N.Y. 1996); see also

---

9   A citizen suit for penalties might be less appropriate "if the defendant had been the subject of a prior prosecution for identical violations, and if that prosecution required defendants to undertake a long-term remedial project which was designed to cure those violations." N. California River Watch v. Sonoma Cty. Water Agency, C 97-4263 CRB, 1998 WL 886645, at *3 (N.D. Cal. Dec. 16, 1998). Here, however, the Decree does not require Defendant to undertake a specific remedial project which is designed to cure its selenium violations at Outlets 005 through 008.

Ohio Valley Envtl. Coalition v. Independence Coal Co., Inc., Civ. No. 3:10-cv-0836, 2011 WL 13161421, at *3 (S.D. W. Va. June 20, 2011) (denying motion for certification for immediate appeal on the ground that question of diligent prosecution presented fact questions). And because Defendant's arguments are based on facts that are also relevant to its defenses against claims for civil penalties and injunctive relief, the extra-record facts on which Defendant relies are intertwined with the merits here. Accordingly, whether treated as a 12(b)(1) or a 12(b)(6) motion, Plaintiffs, Defendant's motion presents at least two fact issues that preclude a finding of diligent prosecution, and Plaintiffs should be permitted to conduct factual discovery. Teaney Decl., ¶¶9–12 (Pls. Ex. D).

First, one of the fact issues in determining the diligence of a prosecution is whether the government action calculated and recovered the economic benefit of the violator's noncompliance. Laidlaw, 890 F. Supp. at 494. That fact issue is also relevant to the calculation of the appropriate civil penalty under the CWA. 33 U.S.C. §1319(d). Plaintiffs have not had an opportunity to discover the facts on that issue. In United States v. Arch Coal, Inc., Civ. No. 2:11-0133, 2011 WL 2493072, at *13 (S.D.W. Va. June 22, 2011), this Court allowed citizens to conduct discovery on the economic benefit of the violator's noncompliance before it decided whether it was appropriate to approve a proposed CWA consent decree. That same principle applies here.

Second, there are unresolved fact issues related to Plaintiffs' claim for injunctive relief. Bluestone's attorney asserts, without any supporting evidence or citation, that Bluestone is exploring corrective actions and treatment options. CM/ECF #9 at 12 n.14. That hearsay is inadmissible to demonstrate diligence, and opens the door to a factual issue that Plaintiffs are entitled to investigate through discovery. See Glazer v. American Ecology Environmental Services, 894 F. Supp. 1029, 1037 (E.D. Tex. 1995) (declining to make a finding of diligent prosecution where "plaintiffs have not had an adequate opportunity to develop their evidence"). In any event, there is no dispute that selenium

17

violations are continuing despite the Consent Decree, and Bluestone is not currently subject to any compliance deadline or plan.

III.    **Plaintiffs Have Standing to Sue**

Bluestone concedes that, for the purpose of its present motion, Plaintiffs have alleged sufficient facts to show that they satisfy the injury and causation requirements for constitutional standing. CM/ECF #9 at 9 n.11. Bluestone's standing argument is limited to the contention that, if the Court concludes that the 2016 Consent Decree bars their suit, then Plaintiffs' injury is not redressable in this Court. Id. at 14. As a result, Bluestone's standing argument is wholly conditional on the success of its preclusion argument. Plaintiffs agree that if the Court concludes that their suit is precluded by the Decree, the case must be dismissed. In that event, the Court need not—and should not—decide the standing issue, and that issue will be moot. See Three Affiliated Tribes of Fort Berthold Reservation v. World Eng'g, P.C., 467 U.S. 138, 157 (1984) (holding that it is a "fundamental rule of judicial restraint . . . that [a court] will not reach constitutional questions in advance of the necessity of deciding them"); Hutchinson v. Proxmire, 443 U.S. 111, 123 (1979) (declaring that "dispositive issues of statutory and local law are to be treated before reaching constitutional issues").

Alternatively, Bluestone may implicitly be making a broader argument that Plaintiffs' injury is not redressable even if there is no preclusion, because Plaintiffs cannot obtain penalties for the same violations that are subject to stipulated penalties under the 2016 Consent Decree. That argument is also without merit. Sierra Club v. Powellton Coal Co., LLC, Civ. No. 2:08-1363, 2010 WL 454929, at *14 (S.D.W. Va. Feb. 3, 2010) ("Plaintiffs allege a substantial number of violations occurring after the consent order, and plaintiffs are not barred from seeking additional penalties for violations within the consent order or those occurring afterwards"); see also Pub. Interest Research Grp. of New Jersey, Inc. v. Hercules, Inc., 970 F. Supp. 363, 365-66 (D.N.J. 1997) (prior state administrative penalty assessment is, at most, only presumptively adequate and does not necessarily preclude a federal court

from assessing additional penalties in a citizen suit); <u>Pub. Interest Research Grp. of New Jersey, Inc.</u> <u>v. Elf Atochem North America, Inc.</u>, 817 F. Supp. 1164, 1171-72, 1177 (D.N.J. 1993) (prior state administrative penalty assessment of $275,000 did not prevent court from assessing additional penalties up to the statutory maximum of $60 million in a citizen suit). "[A] decision favorable to plaintiffs would be one that imposed further penalties above those already paid by defendant. The imposition of such penalties would result in further deterrence against future violations by other violators and thereby provide redress to plaintiffs." <u>Id.</u> at 1177. Similarly, here, Bluestone's payment of stipulated penalties is less than the statutory maximum and does not preclude the payment of additional penalties that may be needed to deter further violations.[10] As the Supreme Court has held, "all civil penalties have some deterrent effect," <u>Friends of the Earth, Inc. v. Laidlaw Environmental</u> <u>Services, Inc.</u>, 528 U.S. 167, 185 (2000), and an injury is redressable so long as it "would be reduced to some extent if [Plaintiffs] received the relief they seek." <u>Massachusetts v. EPA</u>, 549 U.S. 497, 526 (2007). Accordingly, civil penalties will redress Plaintiffs' members' injuries.

Moreover, Plaintiffs also have standing to seek injunctive relief. As the Fourth Circuit has held, "[a] plaintiff seeking injunctive relief shows redressability by 'alleg[ing] a continuing violation or the imminence of a future violation' of the statute at issue." <u>Friends of the Earth, Inc. v. Gaston</u> <u>Copper Recycling Corp.</u>, 204 F.3d 149, 162 (4th Cir. 2000) (quoting <u>Steel Co. v. Citizens for a Better</u> <u>Env't</u>, 523 U.S. 83, 108 (1998)). Plaintiffs' Complaint easily satisfies that test. CM/ECF #1, ¶39. Moreover, the 2016 Consent Decree did not require Bluestone to take any specific action to achieve compliance with the selenium limits at Outlets 005 through 008. Def.'s Ex. 1, ¶¶34–62. Bluestone does not identify any such compliance plan. Nor does Bluestone show that it is currently in compliance with those limits. Thus, there is a risk of continuing selenium violations. The standard for measuring

---

10  In any event, Plaintiffs have standing to sue Bluestone for the 31 selenium violations for which it has paid no penalty at all.

the viability of a citizen claim for injunctive relief is "whether violations will 'continue' in the sense that the violations will not be cured even after the remedial plan implemented by the consent decree has been fully implemented in accordance with reasonable timetables." <u>Ohio Valley Envtl. Coal., Inc. v. Hobet Mining, LLC</u>, Civ. No. 3:08-0088, 2008 WL 5377799, at *7 (S.D.W. Va. Dec. 18, 2008) (quoting <u>Envtl. Conservation Org. v. City of Dallas</u>, 529 F.3d 519, 530 (5th Cir. 2008)). Measured by this standard, Plaintiffs have standing to seek injunctive relief. The 2016 Consent Decree contained no remedial plan for the violations at Outlets 005 through 008. The fact that the United States <u>could</u> seek injunctive relief to impose such a remedial plan in its Virginia action does not negate Plaintiffs' standing. The United States has not done so, so there is no conflict between the two enforcement actions, and Plaintiffs can seek such relief in this case.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

DATEDL      October 9, 2019                           Respectfully submitted,

                                                      **/s/ Derek O. Teaney**
                                                      DEREK O. TEANEY (WVBN 10223)
                                                      APPALACHIAN MOUNTAIN ADVOCATES, INC.
                                                      PO Box 507
                                                      Lewisburg, WV 24901
                                                      Telephone:     (304) 793-9007
                                                      Email:         dteaney@appalmad.org

                                                      JAMES M. HECKER (DCBN 291740)
                                                      PUBLIC JUSTICE
                                                      1620 L Street, NW Suite 630
                                                      Washington, DC 20036
                                                      Telephone:     (202) 797-8600, ext. 225
                                                      Email:         jhecker@publicjustice.net

                                                      Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BLUEFIELD DIVISION

**OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,**

        **Plaintiffs,**

  **v.**                                     **Civil Action No. 1:19-cv-00576**

**BLUESTONE COAL CORPORATION,**

        **Defendant.**

### <u>CERTIFICATE OF SERVICE</u>

I, Derek O. Teaney, do hereby certify that on October 9, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to each of the following CM/ECF participants:

MICHAEL W. CAREY
S. BENJAMIN BRYANT
CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
707 Virginia Street, East, Suite 901
P.O. Box 913
Charleston, WV 25323
mwcarey@csdlawfirm.com
sbbryant@csdlawfirm.com
<u>Counsel for Defendants</u>

                                          **/s/ Derek O. Teaney**
                                          DEREK O. TEANEY (WVBN 10223)