**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BLUEFIELD DIVISION**

**OHIO VALLEY ENVIRONMENTAL**
**COALITION, WEST VIRGINIA**
**HIGHLANDS CONSERVANCY,**
**APPALACHIAN VOICES, and**
**THE SIERRA CLUB,**

        **Plaintiffs,**

    **v.**                             **Civil Action No. 1:19-cv-00576**

**BLUESTONE COAL CORPORATION,**

        **Defendant.**

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ON JURISDICTIONAL AND LIABILITY ISSUES**

J. MICHAEL BECHER (WVBN 10588)
DEREK O. TEANEY (WVBN 10223)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
PO Box 507
Lewisburg, WV 24901
Telephone:     (304) 382-4798
Email: mbecher@appalmad.org

JAMES M. HECKER (*pro hac vice*)
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone:     (202) 797-8600
Email: jhecker@publicjustice.net

# TABLE OF CONTENTS

**STATUTORY BACKGROUND** ............................................................................... 1

**I. PLAINTIFFS HAVE CONSTITUTIONAL STANDING TO SUE** ............................. 4

    **A. INJURY-IN-FACT** ................................................................................. 5

    **B. TRACEABILITY AND REDRESSABILITY** ........................................ 7

    **C. ORGANIZATIONAL STANDING** ....................................................... 8

**II. PLAINTIFFS HAVE SATISFIED THE STATUTORY REQUIREMENTS FOR JURISDICTION UNDER THE CWA AND SMCRA** ........................................... 8

**III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO BLUESTONE'S LIABILITY UNDER THE CWA FOR VIOLATING THE SELENIUM DISCHARGE LIMITS AND COMPLIANCE SCHEDULE IN ITS WV/NPDES PERMIT** ....................................................................... 10

**IV. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO BLUESTONE'S LIABILITY FOR VIOLATING SMCRA** ........................................ 13

**CONCLUSION** ................................................................................................... 14

Plaintiffs filed this citizen suit against Defendant Bluestone Coal Corporation ("Bluestone") under Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. §1365, and Section 520 of the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §1270. They claim that Bluestone has discharged pollutants from its Red Fox Surface Mine in violation of its CWA discharge permit and SMCRA mining permit. Plaintiffs now move for partial summary as to Plaintiffs' standing to sue, this Court's subject matter and statutory jurisdiction to hear Plaintiffs' claims, and Bluestone's liability for violations of its CWA and SMCRA permits.

## STATUTORY BACKGROUND

The CWA prohibits any person from discharging any pollutant without specific authorization. 33 U.S.C. §1311(a). Permittees who violate their National Pollutant Discharge Elimination System ("NPDES") permits are subject to federal and state enforcement action. 33 U.S.C. §§1319, 1342(b)(7). In addition, citizens may sue any person who violates any term or condition in an NPDES permit. *Id.*, §§ 1365(a)(1), (f)(6). Actionable permit conditions include both discharge limits and compliance or construction schedules. *Id.*, §1365(f)(6); *Locust Lane v. Swatara Township Authority*, 636 F. Supp. 534, 539 (M.D. Pa. 1986). Citizen suits are subject to two limitations. First, the citizen must give 60 days' advance notice of his intent to file suit to the U.S. Environmental Protection Agency ("EPA"), the State and the violator. *Id.*, §1365(b)(1)(A). Second, a citizen may not sue if EPA or the State bring certain types of judicial or administrative enforcement actions. *Id.*, §§1365(b)(1)(B), 1319(g)(6).

The West Virginia Department of Environmental Protection ("WVDEP") administers a state program under SMCRA pursuant to the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA"). W.Va. Code §§ 22-3-1, *et seq.*; 46 Fed. Reg. 5915 (Jan. 21, 1981). WVSCMRA provides that "[a]ny permit issued by the director pursuant to this article to conduct

surface mining operations shall require that the surface mining operations meet all applicable performance standards of this article and other requirements set forth in legislative rules proposed by the director." W.Va. Code §22-3-13(a). In turn, WVDEP's regulations provide that "[t]he permittee shall comply with the terms and conditions of the permit, all applicable performance standards of the Act, and this rule." 38 C.S.R. §2-3.33.c. One of those performance standards provides that mining discharges "shall not violate effluent limitations." *Id.*, §38-2-14.5.b. Accordingly, violations of CWA effluent limitations are also violations of SMCRA, WVSCMRA and Bluestone's mining permit. Like the CWA, SMCRA authorizes citizens to sue "any . . . person who is alleged to be in violation of any rule, regulation, order or permit . . . ." 30 U.S.C. §1270(a)(1).

## FACTS

Bluestone purchased the Red Fox Surface Mine (the "Mine") in McDowell County, West Virginia in 2015. Doc. #9 at 7. Mining activities at the Mine are regulated by WVSCMRA Permit No. S007282, which WVDEP renewed on June 29, 2018. Pl. Ex. A.

Bluestone's water discharge activities at the Red Fox Mine are regulated by WV/NPDES Permit No. WV1006304. WVDEP renewed that permit on March 12, 2014, for a five-year term ending on August 13, 2018. Pl. Ex. B. WVDEP has administratively extended the permit until August 13, 2020. Pl. Ex. C.

The 2014 WV/NPDES permit required Bluestone to comply with the limits on total recoverable selenium in its permit by June 13, 2016. Pl. Ex. B at 6–9. In 2016, WVDEP modified the 2014 permit to extend that compliance deadline until June 22, 2018. Doc. #11-5. Since July 2018, Bluestone has reported on its Discharge Monitoring Reports ("DMRs") and its quarterly reports pursuant to a 2016 Consent Decree (Doc. #8-1) that it has discharged amounts of selenium

from Outfalls 005 through 008 into tributaries of Dry Fork of the Tug Fork River that exceed its permit limits. Pl. Exs. D, E. According to its DMRs and quarterly reports, Bluestone violated its monthly average selenium limit 60 times and its daily maximum selenium limit 78 times at Outlets 005, 006, 007, and 008 from July 2018 through March 2020. Hecker Decl., Pl. Ex. F.

The 2016 WV/NPDES modified permit contained a compliance schedule that required Bluestone to begin construction of a selenium treatment system by June 21, 2017, and complete construction of that system by April 21, 2018. Doc. #11-5 at 7. Bluestone failed to comply with those two deadlines. In its quarterly reports under the 2016 Consent Decree, Bluestone explained the causes of, and its responses to, its selenium violations as follows:

| Quarter | Explanation of Selenium Violations |
|---|---|
| 3rd Quarter 2018 | High sediment in pond causing higher Se result in discharge, also ineffective treatment. Working with NALCO consultant to determine treatment options. |
| 4th Quarter 2018 | Not yet in-compliance |
| 1st Quarter 2019 | Ineffective treatment, working with NALCO consultant to determine treatment options |
| 2nd Quarter 2019 | Conducting selenium fish tissue test, working to increase permit limits |
| 3rd Quarter 2019 | Conducting selenium fish tissue test, working to increase permit limits |
| 4th Quarter 2019 | Conducting selenium fish tissue test, working to increase permit limits |
| 1st Quarter 2020 | Outlets 005 and 006: Conducting selenium fish tissue test, working to increase permit limits<br>Outlets 007 and 008: In Litigation payment not applied[1] |

Doc. #11-6; Pl. Ex. E. Bluestone's engineering consultant, Roland Doss, testified that in July 2017, Bluestone asked him to prepare a selenium study plan, but he did no further substantive work on that project until August 2019, when he developed a plan to take fish tissue samples below several

---

[1] Bluestone has apparently stopped paying stipulated penalties for these violations under the terms of the 2016 Consent Decree, which means that those violations are not being diligently prosecuted under that Decree. *See* Pl. Dismiss Opp. Br. at 13-16, Doc. #11.

outlets at the mine site. Doss Dep. 10-12, 115-16, Pl. Ex. G. Doss further testified that Bluestone

did not discuss the "generalities" of selenium treatment options with him until December 2019 or

January 2020. *Id.* at 109–10, 116. Bluestone did not discuss specific selenium treatment recom-

mendations with Mr. Doss until February or March 2020. *Id.* at 110–11, 116-19. Bluestone has not

asked him to implement any specific treatment strategy. *Id.* at 120-21. Thus, as of April 16, 2020,

when Mr. Doss was deposed, Bluestone has still not begun construction of a treatment system for

selenium at the Mine. Instead, according to Bluestone's environmental compliance manager,

George Stephens, Bluestone has applied to WVDEP to modify its permit to weaken the selenium

limits at Outlets 005, 007 and 008. Stephens Dep. 6, 52, Pl. Ex. H. It has not sought such a

modification at Outlet 006, but also has not decided how it will achieve compliance at that outfall.

*Id.* at 52–53.

On June 4, 2019, Plaintiffs notified Bluestone of their intent to file a citizen suit against it

under both the CWA and SMCRA for violations of its selenium limits. Becher Decl., Ex. 1, Pl.

Ex. I. Neither WVDEP nor EPA has filed the type of judicial or administrative penalty proceeding

against Bluestone that would preclude Plaintiffs' citizen suit. *See* Pl. Dismiss Opp. Br., Doc. #11.

More than 60 days after sending their notice letter, Plaintiffs filed their Complaint on August 6,

2019. Doc. #1.

## I.     PLAINTIFFS HAVE CONSTITUTIONAL STANDING TO SUE

Section 505(g) of the CWA authorizes the filing of a citizen suit by "any person or persons

having an interest which is or may be adversely affected." 33 U.S.C. §1365(g). That provision

confers standing to the limits of the U.S. Constitution. *PIRG v. Powell Duffryn Terminals*, 913

F.2d 64, 70 n.3 (3d Cir. 1990). To have constitutional standing, a plaintiff must suffer an actual or

threatened injury-in-fact that is fairly traceable to the challenged action by the defendant and is

likely to be redressed by a favorable decision. *Friends of the Earth v. Laidlaw Environmental*

4

*Services*, 528 U.S. 167, 180–81 (2000). Plaintiffs' members satisfy those requirements.

Bluestone discharges wastewater from Outlets 005, 006, 007, and 008 at the Mine into Horsepen Creek, Big Creek, and Jacobs Fork, which are all tributaries of the Tug River. Bluestone 2018 NPDES Renewal Permit Application, Pl. Ex. J. In 2016, WVDEP designated Horsepen Creek, Big Creek and the Tug River as impaired for selenium under Section 303(d) of the CWA, 33 U.S.C. § 1313(d). 2016 West Virginia Integrated Water Quality Monitoring and Assessment Report, Pl. Ex. K. In *Ohio Valley Envtl. Coal., Inc. v. Consol of Kentucky, Inc.*, Civ No. 2:13-5005, 2014 WL 1761938 (S.D. W. Va. Apr. 30, 2014), this Court found that one of the members of the Ohio Valley Environmental Coalition ("OVEC") had standing to sue to enforce violations of selenium limits at a mine that discharged into Mill Creek, which is also a tributary of the Tug River. That member had a historically strong connection to the area, was aesthetically offended because of the selenium pollution and, as a result, refrained from wading in the stream. *Id.* at *7– 9. Because the facts on standing here are similar to those in that case, the Court should reach the same legal conclusion about Plaintiffs' standing in this case to protect the affected waters from pollution from Bluestone's mine.

### A.      INJURY-IN-FACT

To establish injury-in-fact, "a plaintiff need only show that he [or she] used the affected area and that he [or she] is an individual for whom the aesthetic and recreational values of the area [are] lessened by the defendant's activity." *Piney Run Preservation Ass'n v. County Com'rs of Caroll County, MD,* 268 F.3d 255, 263 (4th Cir. 2001) (internal quotation marks omitted; modification in original.) "Congress has identified NPDES violations, however trifling, as injurious to persons such as plaintiffs' members, who use bodies of water into which a permittee's effluents flow." *Student Public Interest Research Group of New Jersey v. Georgia Pacific Corp.,* 615 F. Supp. 1419, 1424 (D. N.J. 1985). It is sufficient for standing purposes to show that the

plaintiff's members had reasonable concerns about the defendant's discharges that affect their recreational, aesthetic or recreational interests. *Laidlaw*, 528 U.S. at 183-84; *see also Friends of the Earth v. Gaston Copper Recycling,* 629 F.3d 387, 397 (4th Cir. 2011) ("In light of Jones' use of waters in this area and his reasonable concern that runoff from Gaston's facility is polluting the waters in that area, we hold that plaintiffs asserted an injury in fact through their member Jones and established standing to prosecute this suit.")

Dustin White is a member of OVEC and Erin Savage belongs to Appalachian Voices and Sierra Club. They use the streams into which Bluestone discharges and the downstream waters of the Tug River and have concrete aesthetic and recreational interests that are harmed by Bluestone's selenium discharges.

Mr. White has visited the receiving streams several times over the last four or five years, including in December 2019. White Decl., ¶¶4, 12, Pl. Ex. L. His aesthetic enjoyment of those streams is lessened because he knows that the streams are listed as impaired for selenium, and that selenium can adversely affect the aquatic life and fish in the streams. *Id*., ¶¶5–6. 9. He refrains from fishing in the streams because they are impaired by mine pollution. *Id.*, ¶14. He would fish in the streams and enjoy them more if they were cleaned up. *Id.,* ¶¶14–15.

Ms. Savage has visited the receiving streams since 2014, including in 2019. Savage Decl., ¶¶9, 14, Pl. Ex. M. Her aesthetic enjoyment of those streams is lessened because she knows that the streams are listed as impaired for selenium, and that selenium can adversely affects the aquatic life and fish in the streams. *Id*., ¶¶6-8. 10-11. She would enjoy her visits to the streams more if Bluestone's selenium pollution were reduced. *Id.,* ¶17.

These affiants' concerns about the effects of Bluestone's pollution on waters that they use are reasonable. This Court has recognized that concerns about selenium pollution are sufficient to

support a finding that a user of the affected stream has a particularized injury. *Consol of Kentucky*, 2014 WL 1761938, at *14. Consequently, Plaintiffs' members have demonstrated that they suffer an injury-in-fact.

    **B.**    **TRACEABILITY AND REDRESSABILITY**

To satisfy the traceability prong, the Fourth Circuit has explained that "a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kind of injuries alleged in the specific geographic area of concern." *Gaston Copper*, 204 F.3d at 161 (internal quotation marks omitted). As this Court has recognized, the traceability prong for standing is met when declarants claim that the injuries resulted from elevated pollution in the same streams into which defendants discharge pollutants. *Ohio Valley Envtl. Coalition v. Marfork Coal,* Civ. No. 5:12-cv-1464, 2013 WL 4509601, at *5 (S.D. W. Va. Aug. 23, 2013).

Bluestone's own monitoring data show it is discharging excessive levels of selenium from the Mine. Pl. Exs. D, E, F. That selenium pollution has directly led to the injuries suffered by Plaintiffs' two standing witnesses. Each of them has a direct recreational and/or aesthetic interest in the affected creeks that is diminished by the excessive levels of selenium in those waters. WVDEP has also determined that the water quality of Horsepen Creek, Big Creek, and the Tug River is impaired by selenium. Pl. Ex. K at List Pages 25, 27–28, New List Pages 10–11.

Civil penalties and injunctive relief can redress the injuries caused by violations of effluent limits; injunctive relief can prevent and civil penalties can deter future violations. *Laidlaw,* 528 U.S. at 185-86; *Gaston Copper,* 204 F.3d at 162-63. Ms. Savage and Mr. White have each stated that their enjoyment of the waters downstream from Bluestone's discharges would improve if Bluestone would comply with its permits and if water quality were improved. Moreover, Mr. White stated that he refrains from fishing in the affected streams because they are polluted. Plaintiffs' members therefore satisfy all requirements for constitutional standing.

C.      ORGANIZATIONAL STANDING

An organization has representational standing when (1) at least one if its members would have standing to sue in his or her own right, (2) the organization's purpose is germane to the interests that it seeks to protect, and (3) there is no need for the direct participation of the individual members in the action. *Gaston Copper Recycling*, 204 F.3d at 155. Each of the Plaintiff organizations is represented by at least one member who would have standing to sue in his or her own right. White Decl., ¶2; Savage Decl., ¶¶2–4. This action is germane to the purposes of each Plaintiff organization. White Decl., ¶2; Savage Decl., ¶¶2–4. Lastly, because this action is one for injunctive and declaratory relief and not for monetary damages, individual members are not required to participate in the action. *PIRG v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 70 (3d Cir. 1990); *Ohio Valley Envtl. Coalition v. Fola Coal Co.*, 274 F. Supp. 3d 378, 387 (S.D. W. Va. 2017). Plaintiffs therefore satisfy all requirements for organizational standing.

II.     **PLAINTIFFS HAVE SATISFIED THE STATUTORY REQUIREMENTS FOR JURISDICTION UNDER THE CWA AND SMCRA**

As to statutory standing requirements, OVEC sent the required 60-day notice letter prior to filing suit under the CWA and SMCRA, and waited more than the required 60 days before filing their Complaints. *Fola Coal*, 274 F. Supp. 3d at 387–88 (citing 33 U.S.C. § 1365(b)(1)(A); 30 U.S.C. § 1270(b)(1)(A)); Becher Decl., ¶2, Pl. Ex. I. The notice letter alleged violations of both the selenium discharge limits and the construction schedule for the selenium treatment system. Becher Decl., Ex. 1, Pl. Ex. I. Plaintiffs have shown that neither WVDEP nor EPA has filed the type of administrative or judicial enforcement action that has preclusive effect on this citizen suit. Doc. #11. Plaintiffs therefore have statutory standing to sue and meet all jurisdictional requirements under both the CWA and SMCRA.

Furthermore, Plaintiffs have satisfied the jurisdictional standard set forth in *Chesapeake*

*Bay Foundation, Inc. v. Gwaltney of Smithfield*, 484 U.S. 49 (1987). In that case, the Supreme Court held that to invoke the jurisdiction of the federal courts, citizen plaintiffs must "allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." 484 U.S. at 57. On remand from the Supreme Court, the United States Court of Appeals for the Fourth Circuit held that the plaintiffs could establish jurisdiction under this standard

> either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations.

*Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171–72 (1988). Furthermore, the Fourth Circuit stated that violations do not cease to be ongoing unless "the risk of defendant's continued violation had been completely eradicated when citizen-plaintiffs filed suit." *Id.* at 172. The time for determining whether an ongoing violation exists is when plaintiff's complaint is filed. *NRDC v. Texaco Ref. & Mktg., Inc.*, 2 F.3d 493, 503 (3d Cir. 1993) ("[O]nce a citizen plaintiff establishes an ongoing violation of a parameter at the time the complaint is filed, the court is obliged to assess penalties for all proven violations of that parameter[.]").

The present case meets the first jurisdictional test for proving ongoing violations. Plaintiffs' complaint was filed on August 6, 2019. Doc. #1. Bluestone's DMRs show that it violated its selenium limits in every month from August 2019 through February 2020. Pl. Exs. D, E, F. "[P]roof of one or more post-complaint violations is itself conclusive" of the ongoing nature of the pre-complaint violations. *NRDC*, 2 F.3d at 502. Bluestone also has still not built the selenium treatment system that its permit requires. Accordingly, the risk of further violations has not been eliminated. *Gwaltney of Smithfield*, 844 F.2d at 172 (1988). This Court therefore has subject matter jurisdiction over Bluestone's permit violations.

9

### III.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO BLUESTONE'S LIABILITY UNDER THE CWA FOR VIOLATING THE SELENIUM DISCHARGE LIMITS AND COMPLIANCE SCHEDULE IN ITS WV/NPDES PERMIT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." It further provides that summary judgment may be rendered on the issue of liability alone, although there may be an issue as to the remedy. Fed. R. Civ. P. 56(a). The Supreme Court has explained that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Here, there are no genuine issues of material fact as to Bluestone's liability.

Section 505(a)(1) of the CWA authorizes citizens to bring suit for violation of any "effluent standard or limitation." 33 U.S.C. §1365(a). Section 505(f)(6), in turn, defines "effluent standard or limitation" to include "a permit or condition thereof issued under Section 402." 33 U.S.C. §1365(f)(6). The Court has the power to require compliance with those permit conditions. 33 U.S.C. §1365(a).

Enforcement of the CWA is "intentionally straightforward." *United States v. CPS Chemical Co., Inc*., 779 F. Supp. 437, 442 (E.D. Ark. 1991). The legislative history of the CWA shows that Congress intended to expedite enforcement actions. The Senate report on the 1972 CWA states that "[e]nforcement of violations of requirements of this Act should be based on a minimum of discretionary decisionmaking or delay." S. Rep. No. 414, 92nd Cong., 2nd Sess. (1972) at 64, *reprinted in* 1972 U.S. Code Cong. & Ad. News at 3730. This report also states that "[a]n alleged violation of an effluent control limitation or standard would not require reanalysis of technological [or] other considerations at the enforcement stage" and that therefore "the issue

before the courts would be a factual one of whether there had been compliance." S. Rep. No. 414 at 79, 80, *reprinted in* 1972 U.S. Code Cong. & Ad. News at 3745, 3746.

The CWA achieves the goal of expedited enforcement in two ways. First, it places the burden of measuring and reporting pollutant levels on permit holders. Enforcement is thus made easy and inexpensive because evidence of violations must be compiled and documented by the permit holders themselves. *PIRG v. Elf Atochem*, 817 F. Supp. 1164, 1178 (D.N.J. 1993). Second, the CWA imposes strict liability for permit violations. *Am. Canoe Ass'n v. Murphy Farms*, 412 F.3d 536, 540 (4th Cir. 2005) ("[T]he CWA creates a regime of strict liability for violations of its standards."); *Powell Duffryn,* 913 F.2d at 73 n.10. A discharger's culpability or good faith does not excuse a violation. *CPS Chemical*, 779 F. Supp. at 442. Consequently, a violation of a permit requirement by a discharger is an automatic violation of the CWA. *PIRG v. Rice*, 774 F. Supp. 317, 325 (D.N.J. 1991).

Thus, establishing liability is simply a matter of compiling the records that permit holders are required to keep. If these records show permit violations, liability can be established by summary judgment. As this Court has observed, when determining liability under the CWA, "[a]ll the court . . . is called upon to do is compare the allowable quantities of pollution listed in the permits with the available statistics on actual pollution.'" *Ohio Valley Envtl. Coal., Inc. v. Hobet Min., LLC*, 723 F.Supp.2d 886, 896 (S.D. W. Va. 2010) (quoting *Student Pub. Interest Group of N.J. v. Monsanto Co.*, 600 F. Supp. 1479, 1483 (D.N.J. 1985); *see also Elf Atochem*, 817 F. Supp. at 1178. Civil suits under the CWA are "well-suited for summary judgment." *SPIRG v. AT&T Bell Laboratories*, 617 F. Supp. 1190, 1204 (D.N.J. 1985). "[C]onsistent with the Act's requirement for accurate self-reporting, courts should treat DMRs, which must be certified by the discharger, as admissions that are sufficient to establish liability under the CWA." *United States v. Allegheny*

11

*Ludlum Corp.*, 366 F.3d 164, 177 (3d Cir. 2004); *see also U.S. v. Smithfield Foods, Inc.*, 965 F. Supp. 769, 782-83 (E.D. Va. 1997), *aff'd*, 191 F.3d 516 (4ᵗʰ Cir. 1999) (granting summary judgment based on DMRs).

Bluestone prepared and submitted the DMRs and quarterly reports on which Plaintiffs base this motion. Federal and state regulations required Bluestone to certify under penalty of perjury that the monitoring results in its DMRs were accurate. 40 C.F.R. §§122.22(b), (d), 122.41(k)(1); W.Va. Code §47-30-4.7.d. Bluestone's quarterly reports under the 2016 Consent Decree require the same certification. Doc. #8-1 at 45. Based on those reported violations listed in Plaintiffs' Exhibit F, Plaintiffs seek a declaration from this Court that Bluestone is liable for 60 violations of its monthly average limit for selenium and 78-7 violations of its daily maximum limit for selenium. Each violation of a monthly average limit is treated as a violation for every day in the month in which the violation occurred, rather than as a single violation for that month. *United States v. Smithfield Foods, Inc*., 972 F. Supp. 338, 340 (E.D. Va. 1997), *aff'd,* 191 F.3d 516, 527 (4th Cir. 1999). Bluestone's 60 monthly average violations comprise 1,826 days of violation. Pl. Ex. F. Adding those to Bluestone's 78 days of violation of its daily maximum limit results in a total of 1,904 days of violation.[2]

Bluestone is also liable for violating the compliance schedule in its 2016 WV/NPDES permit for construction of a selenium treatment system. Section 1365(f) of the CWA defines an enforceable effluent standard or limitation as "a permit or condition thereof issued under section

---

[2] As noted by the Fourth Circuit, "the two limits are included in the Permit for different reasons and serve distinct purposes: daily maximum effluent limits protect the environment from the acute effects of large, single releases, and monthly averages protect against chronic effects occurring at lower levels." *Smithfield Foods*, 191 F.3d at 527 (upholding district court ruling that violations of monthly average and daily maximum limits for same pollutant in same month constitute separate violations of Clean Water Act).

12

1342 of this title." 33 U.S.C. §1365(f). Bluestone's WV/NPDES permit imposed a construction schedule for a selenium treatment system as an enforceable condition of its permit. *See Locust Lane*, 636 F. Supp. at 539. The legislative history of the CWA provides that "citizens are granted authority to bring enforcement actions for violations of schedules or timetables of compliance . . . ." S. Rep. No. 414, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad. News 3668, 3747. Each day that Bluestone violated the compliance schedule is an additional day of violation. Bluestone has been in violation of the compliance schedule since at least the June 21, 2017 deadline to commence construction of a selenium treatment system. As of May 9, 2020, that constitutes 1,053 days of violation. Altogether then, Bluestone is liable for 2,957 days of violations of the CWA.

## IV.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO BLUESTONE'S LIABILITY FOR VIOLATING SMCRA

West Virginia's federally-approved SMCRA standard provides that SMCRA permittees "shall not violate effluent limitations." *Id.,* § 38-2-14.5.b. Plaintiffs can enforce that performance standard against SMCRA permittees. *Molinary v. Powell Mountain Coal Co*., 125 F.3d 231, 236-37 (4th Cir. 1997); *Ohio Valley Envtl. Coal., Inc. v. Apogee Coal Co.*, LLC, 531 F. Supp. 2d 747, 760–64 (S.D. W.Va. 2008) (allowing citizen plaintiffs to "pursue their claim based on violations of state regulations passed pursuant to SMCRA").

For SMCRA purposes, the applicable effluent limitations that Bluestone has violated are its selenium discharge limits. Bluestone's violations of those limitations in its WV/NPDES permit are also violations of its state-issued mining permit under SMCRA. *See Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co.*, 808 F. Supp. 2d 868, 874, 877, 899 (S.D. W.Va. 2011) (granting summary judgment to plaintiffs under both the CWA and SMCRA for violations of selenium limits in a mining company's WV/NPDES permit); *Ohio Valley Envtl. Coal., Inc. v. Coal-Mac, Inc.*, 775 F.

13

Supp. 2d 900, 905, 928–29 (S.D. W.Va. 2011) (same). Plaintiffs are therefore entitled to summary judgment as to Bluestone's liability under SMCRA for 60 monthly average effluent limitation violations and 78 daily maximum effluent limitation violations, for a total of 138 SMCRA violations.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for partial summary judgment on jurisdiction and liability.

Respectfully submitted,

**/s/ J. Michael Becher**
J. MICHAEL BECHER (WVBN 10558)
DEREK O. TEANEY (WVBN 10223)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 646-1182
Email: dteaney@appalmad.org

JAMES M. HECKER (DCBN 291740)
PUBLIC JUSTICE
1620 L Street, NW Suite 630
Washington, DC 20036
Telephone: (202) 797-8600, ext. 225
Email: jhecker@publicjustice.net

*Counsel for Plaintiffs*

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,**

       **Plaintiffs,**

  **v.**                                    **Civil Action No. 1:19-cv-00576**

**BLUESTONE COAL CORPORATION,**

       **Defendant.**

**CERTIFICATE OF SERVICE**

I, J. Michael Becher, hereby certify that, on May 8, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to each of the following CM/ECF participants:

MICHAEL W. CAREY
S. BENJAMIN BRYANT
CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
707 Virginia Street, East, Suite 901
P.O. Box 913
Charleston, WV 25323
mwcarey@csdlaw.com
sbbryant@csdlawfirm.com
*Counsel for Defendants*

                             **.s/ J. Michael Becher**
                             J. Michael Becher (WVBN 10588)