**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,**

        **Plaintiffs,**

    **v.**                     **Civil Action No. 1:19-cv-00576**

**BLUESTONE COAL CORPORATION,**

        **Defendant.**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

DEREK O. TEANEY (WVBN 10223)
J. MICHAEL BECHER (WVBN 10588)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
PO Box 507
Lewisburg, WV 24901
Telephone:    (304) 382-4798
Email:  mbecher@appalmad.org

JAMES M. HECKER (*pro hac vice*)
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone:    (202) 797-8600
Email:  jhecker@publicjustice.net

## Table of Contents

Introduction ........................................................................................................... 1

Statement of Facts ................................................................................................ 1

Argument ............................................................................................................... 5

I.     The 2016 Consent Decree Has No Preclusive Effect on this Action. ................... 5

    A.     The 2016 Consent Decree Does Not Require Compliance with the Same
    Selenium Permit Limits and Compliance Schedule that Plaintiffs Seek to
    Enforce. ........................................................................................................ 6

    B.     The 2016 Consent Decree Explicitly Preserves Third-Party Rights to Sue for
    Future Violations ......................................................................................... 7

    C.     The 2016 Consent Decree Does Not Satisfy the Requirement that the
    Government Must Be Prosecuting the Same Violations in a Court at the
    Time Plaintiffs' Citizen Suit Was Commenced. ........................................ 8

        1.     The 2016 Consent Decree Was Not a Pending Prosecution of
        Bluestone's Selenium Violations at the Time Plaintiffs' Complaint
        Was Filed. .......................................................................................... 9

        2.     The 2016 Consent Decree Treats Stipulated Penalties Not as a
        Completed or Ongoing Prosecution but Instead as a Non-Binding,
        Non-Exclusive Remedy ...................................................................... 11

        3.     The 2016 Consent Decree Is Not an Ongoing Prosecution of 40 of
        Bluestone's Selenium Violations or Its Failure to Build a Selenium
        Treatment System .............................................................................. 12

II.    Alternatively, if the Court Does Not Deny Bluestone's Motion on Legal Grounds, It
    Should Deny Bluestone's Motion Because There Are Genuine Issues of Material
    Fact as to Whether the 2016 Consent Decree Is Being Diligently Prosecuted. .................... 13

    A.     There Is a Fact Issue about Diligence Because the Decree Did Not Deter
    Bluestone's Ongoing Selenium Violations and Did Not Require Any Actions
    to Prevent Those Violations. ....................................................................... 14

    B.     There Is a Fact Issue about Diligence Because the Decree Did Not Recover
    Bluestone's Economic Benefit of Noncompliance ................................... 18

Conclusion ............................................................................................................. 20

**Introduction**

Defendant Bluestone Coal Corporation ("Bluestone") has moved for summary judgment, arguing that Plaintiffs' action is barred by the CWA and SMCRA preclusion provisions because the same alleged violations have been diligently prosecuted in a 2016 government consent decree. Essentially, Bluestone has restyled its still-pending motion to dismiss as a summary judgment motion. But the 2016 decree has no preclusive effect because (1) it does not require compliance with the same selenium permit limits that Plaintiffs are seeking to enforce, and (2) it was not a pending or ongoing prosecution of selenium violations at the time Plaintiffs filed this case. Alternatively, if the Court does not deny Bluestone's motion on those legal grounds, there are genuine issues of material fact as to whether the 2016 decree diligently prosecuted Bluestone's selenium violations.

**Statement of Facts**

In September 2016, the United States filed a Complaint and Consent Decree against Southern Coal Company, Bluestone's parent company. Doc. #11-1, 11-2, #9 at 3 n.7. It was entered as a final judgment in December 2016. Doc. #8-1. The Complaint did not identify specific permit violations. *See* Doc. #11-1. The Decree only resolved claims "for the violations set forth in Appendix F to this Consent Decree." Doc. #8-1, ¶122. Appendix F identified violations of WV/NPDES Permit No. WV1006304 at Bluestone's Red Fox Surface Mine that occurred between April 2011 and June 2015 at Outlets 001 through 008, 020 and 046. Doc. #11-3 at 712-14. The listed violations did not include any violations of the permit limitations for selenium at Outlets 005, 006, 007, or 008. Id. In contrast, Plaintiffs' Complaint in this action alleges only selenium violations at Outlets 005, 006, 007, and 008. Doc. #1 at 11-13. Thus, there is no overlap between the violations prosecuted in the 2016 Consent Decree and those alleged in the present action.

At the time the 2016 Consent Decree was entered in December 2016, the numerical effluent limits in Bluestone's modified June 21, 2016 WV/NPDES Permit No. WV1006304 for selenium at

1

Outlets 005, 006, 007, or 008 were not yet in effect. Doc. #11-5 at 3–7. Those limits did not become effective until June 22, 2018, nearly eighteen months after the 2016 Consent Decree was entered. Id. at 3–6. In addition, at the time the 2016 Decree was entered, two deadlines in a compliance schedule in the permit had not yet ripened. One of those deadlines required Bluestone to begin construction of a selenium treatment system by June 21, 2017, and another deadline required it to complete construction of that system by April 21, 2018. Id. at 7. The selenium limits and the two compliance schedule deadlines are what Plaintiffs seek to enforce in this citizen suit.

The 2016 Consent Decree stated that it "does not limit the rights of the United States, DOI, or the States to obtain penalties or injunctive relief under the CWA, SMCRA, or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 122." Doc. #8-1, ¶123. Thus, the Decree only adjudicated and prosecuted the violations of permit limitations referenced in Paragraph 122—which by its express terms was limited to the permit limitations identified in Exhibit F. Id., ¶122. In addition, the Decree stated that it did not "limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law." Id., ¶128. Thus, the Decree did not preclude the United States, the State, or anyone else from bringing a future prosecution seeking civil penalties or injunctive relief for any violations that were not listed in Appendix F of the Decree.

The Decree contained nothing to enforce the compliance schedule for construction of a selenium treatment system, either through stipulated penalties or a compliance deadline. Instead, the injunctive relief provisions of the Decree merely required Bluestone to establish an environmental management system, conduct environmental audits and inspections, analyze the cause of violations, implement certain corrective actions, set up a compliance database on a publicly available website, and conduct employee training. Id., ¶¶34–62. The Decree also imposed stipulated penalties for some future permit violations, but not all of them.

2

The Decree set the following rules for stipulated penalties. First, it did not impose any stipulated penalties for the first violation of a daily maximum limit at each outlet in each month. Id., ¶47.a.i. Second, if Bluestone measured a second violation of a daily maximum limit at the same outlet in the same month and within 72 hours after it notified the United States of the first violation, it was liable for a "Category One" stipulated penalty. Id. Third, if Bluestone measured a violation of a daily maximum limit at the same outlet in the same month more than 72 hours after it notified the United States of the first violation, it was liable for a higher "Category Two" stipulated penalty. Id., ¶¶47.a.ii, 88. Finally, the first violation of a monthly average limit was subject to a "Category One" stipulated penalty, and a second violation of the same limit at the same outlet in the next month was subject to a higher "Category Two" stipulated penalty. Id., ¶¶47.b, 88.

Furthermore, the Consent Decree designated stipulated penalties as a non-exclusive remedy that would qualify for an offset against any statutory penalties that were subsequently assessed. Id., ¶¶84–102. Specifically and importantly, the Decree states that "[s]tipulated penalties are not the United States' or the States' exclusive remedy for violations of this Consent Decree," and the United States and the States "expressly reserve the right to seek" additional relief for future violations of the law, "including . . . statutory penalties [and] additional injunctive relief . . . ." Id., ¶102.

Bluestone has reported 60 violations of its monthly average selenium limits and 78 violations of its daily maximum selenium limits at Outlets 005, 006, 007, and 008 since July 2018.[1] Doc. #54-6

---

[1] Plaintiffs note that on page 12 of their Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment on Jurisdictional and Liability Issues, there is a typographical error asserting that Bluestone has accrued "78-7" violations of its daily maximum limit for selenium. Doc. #55 at 12. That number should have been "78."

Plaintiffs also note that paragraph 7 of the Declaration of James M Hecker submitted as Exhibit F in support of Plaintiffs' summary judgment motion states that there were 77 daily maximum limit violations. Doc. #54-6, ¶7. That number should also be 78 to conform to the 78 daily maximum violations listed in Mr. Hecker's violation list at Doc. #54 at 5–7..

at 4–7. Bluestone paid no stipulated penalties for 40 violations of the daily maximum selenium limit at those Outlets. Id.; Pl. Ex. A. In addition, Bluestone did not pay any stipulated penalties for any violations of its permit limits for selenium at Outlets 007 and 008 in the first quarter of 2020 because it said those limits were "in litigation." Pl. Ex. B.[2]

Bluestone claims that it has paid $280,000 in stipulated penalties for the selenium violations alleged in the Complaint and additional penalties for subsequent violations. Doc. 57 at 7. But those penalties are far short of Bluestone's potential statutory civil penalties for those violations. The maximum statutory civil penalty for CWA violations after November 2, 2015 is $54,833 per day of violation. 40 C.F.R. § 19.4; 84 Fed. Reg. 2059 (Feb. 6, 2019). For penalty purposes, a violation of a monthly average limit is counted as a violation for each day of the month. Chesapeake Bay Foundation v. Gwaltney of Smithfield, Ltd., 791 F.2d 304, 313 (4th Cir. 1986), vac'd and rem'd on other grounds, 484 U.S. 49 (1987). Bluestone's 138 effluent limit violations total 1,904 days of violations, which are subject to a civil penalty of $104,402,032. Doc. #55 at 12. And that figure does not include potential civil penalties for Bluestone's failure to meet certain deadlines in its compliance schedule.

Bluestone still does not have a definite plan for permit compliance. Its engineering consultant, Roland Doss, testified that in July 2017, Bluestone asked him to prepare a selenium study plan, but he did no further substantive work on that project until August 2019, when he developed a plan to take fish tissue samples below several outlets at the mine site. Doss Dep. 10–12, 115-16, Doc. #54-7. Doss further testified that Bluestone did not discuss the "generalities" of selenium treatment options with him until December 2019 or January 2020. Id. at 109–10, 116. Bluestone did not discuss specific selenium treatment recommendations with Mr. Doss until February or March 2020. Id. at 110–11, 116–19. Bluestone has not asked him to implement any specific treatment strategy. Id. at 120–21.

[2] Plaintiffs' Exhibits A and B are explained and authenticated by the Declaration of James M. Hecker, attached as Exhibit C to this memorandum.

4

Thus, as of April 16, 2020, when Mr. Doss was deposed, Bluestone has still not begun construction of a treatment system for selenium at the Mine. Instead, according to Bluestone's environmental compliance manager, George Stephens, Bluestone has applied to WVDEP to modify its permit to weaken the selenium limits at Outlets 005, 007 and 008. Stephens Dep. 6, 52, Doc. #54-8. It has not sought such a modification at Outlet 006, but also has not decided how it will achieve compliance at that outfall. Id. at 52–53.

As a result of this inaction, Bluestone has been in violation of the compliance schedule in its permit since at least June 21, 2017, when it was supposed to begin construction of a selenium treatment system. As of May 9, 2020, Bluestone was in violation of that permit condition for 1,053 days. Altogether then, Bluestone has violated the CWA on 2,957 days.[3] See Doc. 55 at 12–13.

## Argument

### I.  The 2016 Consent Decree Has No Preclusive Effect on this Action.

The CWA and SMCRA each contain substantially similar language providing that the commencement of a citizen suit in federal court is barred only when "the Administrator or State has commenced and is diligently prosecuting a civil or criminal action . . . to require compliance with the standard, limitation, or order" at issue in the citizen suit. 33 U.S.C. §1365(b)(1)(B); 30 U.S.C. §1270(b)(1)(B). Application of this bar requires courts to engage in a two-part inquiry. The first step is to "determine whether a prosecution by the state or the EPA Administrator to enforce the *same* standard, order, or limitation' was pending on the date that the citizens suit commenced." Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co., 808 F.Supp.2d 868, 883 (S.D. W. Va. 2011) (emphasis added; internal quotation marks omitted). The second step is to determine whether the governmental action was being diligently prosecuted at the time the citizens' suit was filed. *Maple Coal*, 808 F.Supp.2d at 883. In other words, there must be an ongoing prosecution.

---

[3] As a result, Bluestone could be liable for a maximum civil penalty of $162,141,181.

As established below, Section 505(b)(1)(B) does not preclude this citizen suit. The 2016 Consent Decree did not prosecute the selenium-related violations that Plaintiffs' are enforcing, and the Decree was not an ongoing prosecution of those violations at the time Plaintiffs' Complaint was filed. Consequently, the Court should deny Bluestone's motion for summary judgment.

A.   **The 2016 Consent Decree Does Not Require Compliance with the Same Selenium Permit Limits and Compliance Schedule that Plaintiffs Seek to Enforce.**

Plaintiffs' action is not precluded because the 2016 Consent Decree does not require compliance with the same two types of selenium-related permit requirements that Plaintiffs seek to enforce. That Decree was filed on September 30, 2016 and only sought compliance with the permit limitations that were in effect on that date. Those limitations are listed in Appendix F to the Decree and did not include the selenium limitations at Outlets 005, 006, 007 and 008 that Plaintiffs seek to enforce. Doc. #11-3. Indeed, the Decree could not enforce those limits because they were not even in effect on September 30, 2016. They only became effective eighteen months later on June 22, 2018. Doc. #11-5 at 3–6. In addition, the 2016 Consent Decree did not mention or seek to enforce the compliance schedule deadlines in the 2016 modified permit that required Bluestone to begin construction of a selenium treatment system by June 21, 2017, and complete construction of that system by April 21, 2018. Doc. #11-5 at 7. The Decree predated all of those requirements and therefore has no preclusive effect on this action.

This Court's decision in Ohio Valley Environmental Coalition v. Independence Coal Co., Inc., Civil No. 3:10-0836, 2011 WL 1984523 (S.D. W.Va. 2011), is directly on point. There, as here, a prior government consent decree included stipulated penalties for future violations of selenium limitations that became effective after the decree was entered. There, as here, the defendant argued that the decree barred a CWA citizen suit for violations of those selenium limits. Id. at *3. This Court rejected that argument, reasoning that the selenium limits sought to be enforced by citizens were not in effect when

the decree was entered. Id. at *5. The Court stated that it "cannot imagine how the Consent Decree

was, in good faith, calculated to achieve compliance" with selenium limits that were not yet in effect;

"the effect of the Consent Decree on future violations" of those limits "could not have been more

than a speculative consideration." Id. at *6.

The fact situation in Independence is exactly the same as the situation presented in this case.

The 2018 selenium limits were not yet in effect, and the 2017 and 2018 construction schedule deadlines

had not yet ripened when the 2016 Consent Decree was entered, so violations of those requirements

were only a speculative consideration at that time. This Court's holding in that case therefore applies

with full force here and prevents the 2016 Consent Decree from precluding Plaintiffs' action.[4]

**B.      The 2016 Consent Decree Explicitly Preserves Third-Party Rights to Sue for Future Violations.**

There is a second reason why Independence compels denial of Bluestone's motion. The

consent decree at issue in Independence included explicit provisions stating that it did not bar future

actions by the United States, the State, or third parties to seek penalties for future violations. Id. at *5.

The language of the third-party provision in Independence is identical to the language of the third-

---

[4] The Supreme Court has similarly held that "a judgment . . . cannot be given the effect of
extinguishing claims which did not even then exist and which could not possibly have been sued upon
in the previous case." Lawlor v. Nat'l Screen Service, 349 U.S. 322, 328 (1955) (holding that a prior
lawsuit cannot preclude a later lawsuit when the second suit is based on actions that occurred after the
judgment in the prior action, even if the cases are closely related) (internal quotation and citation
omitted). Furthermore, the preclusive effect of a government consent decree "reaches, at the very
most, to those claims and violations to which the Petition and Consent Judgment specifically refer."
Citizens Legal Environmental Action Network v. Premium Standard Farms, Civ. No. 97-6073, 2000
WL 220464, at *10 (W.D. Mo. 2000). See also Berry v. Farmland Indus., Inc., 114 F.Supp.2d 1150,
1156 (D. Kan. 2000) (finding that citizen suit claims that were not mentioned in an EPA consent
decree were not resolved by decree's entry and not precluded under the CWA); Borough of Upper
Saddle River, N.J. v. Rockland Cty. Sewer Dist. #1, 16 F.Supp.3d 294, 323 (S.D.N.Y. 2014) (consent
order did not resolve violations occurring after its execution); Riverkeeper, Inc. v. Mirant Lovett, LLC,
675 F.Supp.2d 337, 346 (S.D.N.Y. 2009) (same); see also Humane Soc. of U.S. v. HVFG, LLC, Civ.
No. 06-C- 6829, 2010 WL 1837785, at *13 (S.D.N.Y. May 6, 2010), as amended (May 18, 2010)
(limiting effect of consent order based on whether its terms expressly listed the violations asserted by
plaintiff, and finding that violations not listed therein "were not contemplated, let alone resolved" by
the consent order).

party provision in the 2016 Consent Decree in this case. Compare id. at *3 with 2016 Consent Decree, Doc. #8-1 at ¶128. In Independence, the United States interpreted that same provision to mean that "the Decree would not prevent the United States, States or any other entities including citizens from pursuing violations that were not alleged in the Complaint or occurred after" the Decree was lodged with the court. 2011 WL 1984523 at *3 (emphasis added). This Court agreed with that interpretation. Id.

Similarly, here, the 2016 Decree did not preclude the United States, the State, or anyone else from bringing a future prosecution seeking civil penalties or injunctive relief for any violations that were not listed in Appendix F of the Decree or occurred after the Decree was lodged in 2016. Since the 2018 selenium limits are not listed in that Appendix and the selenium-related violations occurred after the Decree was lodged, Plaintiffs are not precluded by that Decree from enforcing those violations.

**C.     The 2016 Consent Decree Does Not Satisfy the Requirement that the Government Must Be Prosecuting the Same Violations in a Court at the Time Plaintiffs' Citizen Suit Was Commenced.**

The CWA and SMCRA preclusion sections both provide that a prior government action has preclusive effect only if the government "is diligently prosecuting" an action for the same violations at the time the citizen suit was commenced. 33 U.S.C. § 1365(b)(1)(B); 30 U.S.C. § 1270(b)(1)(B). Here, the 2016 Consent Decree has no preclusive effect because it (1) was not an ongoing prosecution of Bluestone's selenium violations at the time Plaintiffs' Complaint was filed; (2) classified stipulated penalties as a "non-exclusive" remedy that was not binding on the government or citizens; and (3) did not prosecute or penalize 38 violations of the daily maximum limit for selenium that Plaintiffs seek to enforce.

1.      **The 2016 Consent Decree Was Not a Pending Prosecution of Bluestone's Selenium Violations at the Time Plaintiffs' Complaint Was Filed.**

Only actions that the government "is diligently prosecuting" are preclusive. Congress' use of the present tense in that phrase is deliberate, significant, and controlling. In Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49 (1987), the Supreme Court held that the phrase "is alleged to be in violation" in the same section of the CWA must be read in accordance with its plain meaning and as a present tense construction:

> The most natural reading of "to be in violation" is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future. Congress could have phrased its requirement in language that looked to the past ("to have violated"), but it did not choose this readily available option . . . . [T]he prospective orientation of that phrase could not have escaped Congress's attention . . . . [C]ongress has demonstrated in yet other statutory provisions that it knows how to avoid this prospective implication by using language that explicitly targets wholly past violations.

484 U.S. at 57. The Supreme Court's admonition in Gwaltney to give meaning to the tenses used in §505(a)'s limitation on the type of violations that citizens can enforce must also be followed in interpreting §505(b)'s limitation on the type of government actions that can preclude citizen suits. Consequently, a citizen suit can only enforce violations that are ongoing at the time the suit is filed, and a prior government action is preclusive only if it is ongoing at the time the citizen suit is filed.[5]

---

[5] In the unpublished opinion in Ohio Valley Environmental Coalition v. Consol of Ky., Civ. No. 2:13-cv-5005, 2014 WL 1761938, at *5 (S.D.N.Y. 2014), this Court agreed with Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 890 F.Supp.470, 485–86 (D.S.C. 1995), vacated by 149 F.3d 303 (4th Cir. 1998), rev'd, 528 U.S. 167 (2000), that citizen suits are precluded if the government "is diligently prosecuting or has diligently prosecuted a judicial action to enforce the same alleged violations" (emphasis added). Plaintiffs respectively submit that that conclusion is contrary to the central holding of Gwaltney, namely, that the present tense in Section 505 is controlling and that the court cannot read the past tense into the language in that section. The Gwaltney court distinguished the prospective orientation of the CWA from the past orientation of the Resource Conservation and Recovery Act ("RCRA"), which authorizes citizens to sue a person "who has contributed or who is contributing" to the "past or present" handling, storage, treatment, transportation, or disposal of certain hazardous wastes. Gwaltney, 484 U.S. at 57, n.2 (quoting 42 U.S.C. § 6972(a)(1)(B)).

Conversely, citizens cannot enforce wholly past violations, and past completed prosecutions cannot preclude citizen suits. The courts have so held. California Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 728 F.3d 868, 873 (9th Cir. 2013) ("[T]he phrase ['has commenced and is diligently prosecuting' in §505(b) of the CWA] requires an inquiry as to whether the government was diligently prosecuting its action at the time when the citizen filed his or her complaint").[6]

The 2016 Consent Decree was not a pending or ongoing prosecution of Bluestone's selenium violations at the time Plaintiffs filed the present action. The most recent date of any of the prosecuted violations at Bluestone's Red Fox Mine listed in Appendix F of that Decree was June 30, 2015. Doc. #11-3 at 713. None of those violations involved selenium. Id. In addition, the most recent substantive entry in the docket sheet of that action is the entry of the Consent Decree, which occurred on December 19, 2016. Doc. #11-8. No subsequent motion has been filed or is pending. The case has been dormant for over three years. The only current activity in the case, which is not reflected in the

---

Moreover, the question of whether a concluded governmental enforcement action could present a statutory bar to a later citizen suit under 33 U.S.C. §1365(b) was not argued by the parties in Consol, and this Court ultimately concluded that the prior action was not diligently prosecuted on other grounds. 2014 WL 1761938, at *7–*9. Accordingly, this Court's statements regarding the relative timing of the two enforcement actions were obiter dicta.

[6] See also Conn. Fund for the Env't v. Contract Plating Co., 631 F.Supp. 1291, 1293 (D. Conn. 1986) (same); Conn. Fund for the Env't v. L & W Indus., Inc., 631 F.Supp. 1289, 1291 (D. Conn. 1986) (same). Most courts have reached that same conclusion when they have construed the identical phrase in other sections of the CWA, the Clean Air Act ("CAA"), and RCRA. Citizens for a Better Env't-Cal. v. Union Oil Co., 83 F.3d 1111, 1118 (9th Cir. 1996) (CWA); Glazer v. Am. Ecology Envtl. Servs. Corp., 894 F.Supp. 1029, 1034 (E.D. Tex. 1995) (CAA and RCRA); Pub. Interest Research Group, Inc. v. GAF Corp., 770 F.Supp. 943, 949 (D.N.J. 1991) (CWA); contra, Grp. Against Smog & Pollution, Inc. v. Shenango Inc., 810 F.3d 116, 129 (3d Cir. 2016) (CAA). Shenango was wrongly decided and is inconsistent with Gwaltney because the Third Circuit rejected the "literal, inflexible, true grammatical interpretation" of the statutory language that the Supreme Court mandated in Gwaltney. 810 F.3d at 129. In any event, the case is distinguishable because the Shenango decree lacked the third party rights provision that is contained in the 2016 Consent Decree in this case. Consent Decree, United States v. Shenango, Inc., Civil No. 2:12-cv-01029-GLL, Doc. #8 at 53–54 (W.D. Pa. Nov. 6, 2012).

docket sheet, is Bluestone's self-monitoring of its permit compliance and its payment of stipulated penalties. Monitoring compliance with a decree is not a prosecution in a court. Student Pub. Interest Research Group, Inc. v. Georgia-Pacific Corp., 615 F. Supp. 1419, 1431–32 (D.N.J. 1985) (finding that post-consent decree administrative surveillance was not action in court that would bar a citizen suit). Furthermore, as shown in Part C.2 below, payment of stipulated penalties is not a completed or ongoing prosecution under the 2016 Decree.

> **2. The 2016 Consent Decree Treats Stipulated Penalties Not as a Completed or Ongoing Prosecution but Instead as a Non-Binding, Non-Exclusive Remedy**

The 2016 Consent Decree treats stipulated penalties not as a completed or ongoing prosecution but as a non-binding, non-exclusive remedy. None of the parties to the Consent Decree intended the subsequent payment of a stipulated penalty to be classified as an ongoing prosecution of the underlying violation. Instead, the parties designated the stipulated penalty remedy as "non-exclusive" and expressly reserved the right to file new prosecutions for civil penalties and injunctive relief for any future violations, including violations that would be subject to those penalties. Doc. #8-1, ¶102.

Paragraph 102 provides that stipulated penalties "are not the exclusive remedy for violations of this Consent Decree." Id. Paragraph 122 provides that the Decree only resolves the United States' and the State's alleged claims "for the violations set forth in Appendix F to this Consent Decree." Id., ¶122. Paragraph 123 provides that the Decree does "not limit the rights of the United States, DOI, or the States to obtain penalties or injunctive relief under the CWA, SMCRA, or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 122." Id., ¶123. And Paragraph 128 provides that the decree does not "limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law." Id., ¶128. The necessary and intended effect of those four provisions is that the

11

United States does not regard the payment of a stipulated penalty as a prosecution that has any preclusive effect on itself or anyone else.

In Sierra Club v. City & Cty. of Honolulu, Civ. No. CV0400463DAE-BMK, 2008 WL 515963 (D. Haw. Feb. 26, 2008), the court construed a CWA consent decree with the same type of release provisions as those in this case and in Independence. The court rejected the defendant's argument that those provisions barred a CWA citizen suit, concluding that "it would be an incongruous result for this Court to find that EPA and [the state] may bring subsequent suit based on [CWA violations not covered by the consent decree] but [citizen] Plaintiffs may not." Id. at *7. It simply makes no sense to say that the government is currently prosecuting violations that it said it has not yet fully prosecuted or penalized, or to prevent citizens from prosecuting those unaddressed violations.

3. **The 2016 Consent Decree Is Not an Ongoing Prosecution of 40 of Bluestone's Selenium Violations or Its Failure to Build a Selenium Treatment System**

The 2016 Consent Decree does not require Bluestone to pay any stipulated penalties for its failure to comply with the compliance schedule in its permit for constructing a selenium treatment system. Bluestone has been in violation of that schedule for at least 1,053 days. See Doc. #55 at 12–13. The Decree also excuses Bluestone from paying any stipulated penalties for the first violation of a daily maximum limit at each outlet in each month. Doc. #8-1, ¶47.a.i. As a result, Bluestone's quarterly reports show that it has paid no stipulated penalties whatsoever for 40 violations of its daily maximum limit for selenium. Pls.' Ex. A.

It is axiomatic that an unpenalized violation has not been prosecuted. Citizens Legal Envtl. Action Network, Inc. v. Premium Standard Farms, Inc., Civ. No. 97-6073-CV-SJ-6, 2000 WL 220464, at *13 (W.D. Mo. Feb. 23, 2000) (Consent Judgment's release of unspecified claims "itself evidences no prosecution at all, much less a diligent one"). An unprosecuted violation is not part of an action "to require compliance" within the meaning of 33 U.S.C. §1365(b)(1)(B) or 30 U.S.C. §1270(b)(1)(B).

12

Only actions "to require compliance" can preclude a citizen suit. Frilling v. Village of Anna, 924 F.Supp. 821, 836–39 (S.D. Ohio 1996). The 2016 Consent Decree therefore fails to meet the requirement for an ongoing prosecution for these two sets of violations and has no preclusive effect.

## II. Alternatively, if the Court Does Not Deny Bluestone's Motion on Legal Grounds, It Should Deny Bluestone's Motion Because There Are Genuine Issues of Material Fact as to Whether the 2016 Consent Decree Is Being Diligently Prosecuted.

We have shown above that, as a legal matter, the 2016 Consent Decree cannot be classified as an ongoing prosecution of the same selenium and compliance schedule violations that Plaintiffs are prosecuting. Alternatively, even if the Court found that the Decree could be classified as such a prosecution, there are genuine issues of material fact as to whether the Decree is being diligently prosecuted, and those factual disputes preclude granting Bluestone's motion. J.D. by Doherty v. Colonial Williamsburg Found., 925 F.3d 663, 669 (4th Cir. 2019) ("If there are genuine issues of material fact that can only be resolved by a factfinder, then the motion for summary judgment must be denied.").

The CWA and SMCRA bar citizen suits only when the government "is diligently prosecuting . . . an action . . . to require compliance." 33 U.S.C. §1365(b)(1)(B); 30 U.S.C. §1270(b)(1)(B). Diligent prosecution is prosecution that has brought or reasonably can be expected to bring about compliance. As the Fourth Circuit has held, "a CWA enforcement action will be considered diligent where it is capable of requiring compliance with the Act and is in good faith calculated to do so." The Piney Run Pres. Ass'n v. The Cty. Comm'rs Of Carroll Cty., MD, 523 F.3d 453, 460 (4th Cir. 2008). Diligent prosecution is a question of fact. Hudson Riverkeeper Fund v. Harbor at Hastings, 917 F. Supp. 251, 256 (S.D.N.Y. 1996); see also Ohio Valley Envtl. Coalition v. Independence Coal Co., Inc., Civ. No. 3:10-cv-0836, 2011 WL 13161421, at *3 (S.D. W. Va. June 20, 2011) (denying motion for certification for immediate appeal on the ground that question of diligent prosecution presented fact questions). The disputed factual issues in this case that show a lack of diligent prosecution are (1) Bluestone's

13

continuing permit noncompliance and lack of a plan to comply; and (2) the Decree's failure to recover Bluestone's economic benefit from its delayed compliance.

A. **There Is a Fact Issue about Diligence Because the Decree Did Not Deter Bluestone's Ongoing Selenium Violations and Did Not Require Any Actions to Prevent Those Violations.**

There is a genuine issue of material fact as to whether the Decree has diligently prosecuted Bluestone's selenium violations at Outlets 005-008 and Bluestone's failure to comply with the construction schedule for a selenium treatment system. As shown in the table below and Doc. #54-6, since the selenium limits became effective at those outlets in June 2018, Bluestone has violated its average or maximum limit at two or more outlets in every month ("V"=violation):

|  | 005 | 006 | 007 | 008 |
|---|---|---|---|---|
| July 2018 | V | V | V | V |
| Aug. 2018 | V | V | V | V |
| Sept. 2018 | V | V | V | V |
| Oct. 2018 | V | V | V | V |
| Nov. 2018 | V | V | V | V |
| Dec. 2018 | V | V | V | V |
| Jan. 2019 | V | V | V | V |
| Feb. 2019 | V | V | V | V |
| Mar. 2019 | V | V | V | V |
| Apr. 2019 | V | V | V |  |
| May 2019 | V |  | V | V |
| June 2019 |  | V | V | V |
| July 2019 |  | V | V |  |
| Aug. 2019 |  |  | V |  |
| Sept. 2019 |  |  | V | V |
| Oct. 2019 |  | V | V | V |
| Nov. 2019 |  |  | V | V |
| Dec. 2019 |  |  | V | V |
| Jan. 2020 |  | V | V | V |
| Feb. 2020 | V | V | V | V |
| Mar. 2020 | V |  | V |  |

In addition, Bluestone never built the selenium treatment system that its permit required. It still does not even have a plan to build that system and to achieve compliance with selenium limits at the four outlets. In the quarterly reports that Bluestone has filed pursuant to the Consent Decree,

Bluestone's explanations do not even suggest that it has an effective treatment plan or a time frame to achieve compliance:

| Date of Selenium Violation | Explanation |
| --- | --- |
| 3rd Quarter 2018 | High sediment in pond causing higher Se result in discharge, also ineffective treatment. Working with NALCO consultant to determine treatment options. |
| 4th Quarter 2018 | Not yet in-compliance |
| 1st Quarter 2019 | Ineffective treatment, working with NALCO consultant to determine treatment options |
| 2nd Quarter 2019 | Conducting selenium fish tissue test, working to increase permit limits |
| 3rd Quarter 2019 | Conducting selenium fish tissue test, working to increase permit limits |
| 4th Quarter 2019 | Conducting selenium fish tissue test, working to increase permit limits |
| 1st Quarter 2020 | Outlets 005 and 006: Conducting selenium fish tissue test, working to increase permit limits<br>Outlets 007 and 008: In Litigation payment not applied[7] |

Doc. #11-6, 54-5. As we have shown above, Bluestone's engineering consultant, Roland Doss, testified that in July 2017, Bluestone asked him to prepare a selenium study plan, but he did no further substantive work on that project until August 2019, when he developed a plan to take fish tissue samples below several outlets at the mine site. Doss Dep. 10-12, 115-16, Doc. #54-7. Bluestone did not discuss the "generalities" of selenium treatment options with Doss until December 2019 or January 2020, and did not discuss specific selenium treatment recommendations with him until February or March 2020. *Id.* at 109–11, 116–19. Bluestone has not asked him to implement any specific treatment strategy. *Id.* at 120–21. As of April 16, 2020, Bluestone has still not begun construction of a selenium treatment system.

---

[7] Bluestone has apparently stopped paying stipulated penalties for these violations under the terms of the 2016 Consent Decree, which means that those violations are not being diligently prosecuted under that Decree.

Instead, Bluestone has applied to WVDEP to modify its permit to weaken the selenium limits at Outlets 005, 007 and 008. Stephens Dep. 6, 52, Doc. #54-8. It has not sought such a modification at Outlet 006, but also has not decided how it will achieve compliance at that outfall. Id. at 52–53. The pendency of a modification proceeding does not excuse violations of a permit prior to actual modification, and a modification request does not stay existing permit limitations. Student Pub. Interest Research Grp. of New Jersey, Inc. v. Monsanto Co., 600 F.Supp. 1479, 1483 (D.N.J. 1985); Arkansas Wildlife Federation v. Bekaert Corp., 791 F.Supp. 769, 782 (W.D. Ark. 1992). A permittee must comply with its permit until the permit is modified and any modifications are not retroactive. Connecticut Fund for the Environment v. Upjohn Co., 660 F. Supp. 1397, 1411 n.21, 1413 (D. Conn. 1987). "The Supreme Court of the United States has recognized in the context of the Clean Air Act that where a polluter is seeking a variance, the application 'is carried out on the polluter's time, not the public's.'" Ohio Valley Envtl. Coal., Inc. v. Coal-Mac, Inc., 775 F.Supp.2d 900, 920 (S.D.W. Va. 2011) (quoting Train v. Natural Res. Def. Council, 421 U.S. 60, 92 (1975)). That same principle applies under the CWA. An NPDES permit "offender remains liable for violations while a request is pending." Coal Mac, 775 F. Supp. 2d at 920 (quoting Natural Res. Def. Council, Inc. v. Outboard Marine Corp., 692 F. Supp. 801, 811 (N.D. Ill. 1988)).

That history of noncompliance and inaction shows that the 2016 Consent Decree has been ineffective to deter noncompliance and prompt corrective actions. The Decree imposed no stipulated penalties or other sanction for violating the compliance schedule, and required no plan to achieve compliance with the selenium limits. The stipulated penalties for the ongoing selenium violations are paltry, ranging from $2,500 to $4,500 per violation. Doc. #8-1, ¶88.a. Non-coercive actions that assess modest penalties are not diligent actions "to require compliance." See Ohio Valley Envtl. Coal., Inc. v. Hobet Min., LLC, 723 F. Supp. 2d 886, 908 (S.D.W. Va. 2010) ("A lenient penalty that is far less than the maximum penalty may provide evidence of non-diligent prosecution") (quoting Laidlaw, 890

F. Supp. at 491)); see also Jones v. City of Lakeland, 224 F.3d 518, 522–23 (6th Cir. 2000) (holding that imposition of "nominal token penalties in lieu of punitive compliance incentive penalties of $10,000.00 per day authorized by the Clean Water Act . . . contradicted a level of 'diligent prosecution'").

Bluestone estimates that its stipulated penalties for its selenium effluent violations amount to about $300,000, which is less than one-half of one percent of Bluestone's maximum statutory penalty liability for those violations of $104,404,032. To serve as a deterrent, civil penalties must be in an amount "high enough to insure that polluters cannot simply absorb the penalty as a cost of doing business." Laidlaw, 890 F. Supp. at 491–92. Bluestone's continuous history of non-compliance with its selenium limitations and compliance schedule since July 2018 shows that it has treated the Decree as if it were merely a license to continue to pollute and to ignore the directive in its permit to build a selenium treatment system.

The 2016 Consent Decree did not even attempt to require compliance with the construction schedule for the selenium treatment system or to undertake any specific remedial project. Bluestone has been in continuous non-compliance with its selenium limits and compliance schedule since July 2018, yet the United States and the State have done nothing further to enforce the Decree, such as setting a fixed deadline for compliance or filing new actions seeking higher penalties. They have relied entirely on the existing stipulated penalty framework, which has spectacularly failed to result in compliance. That is not diligent prosecution. Gardeski v. Colonial Sand & Stone Co., Inc., 501 F.Supp. 1159, 1166 (S.D.N.Y. 1980) (finding lack of diligence when state agency failed to enforce its consent order and allowed violations to continue unabated).

The Decree was therefore not capable of or calculated to compel compliance with the selenium limits or the compliance schedule for the selenium treatment system. The Seventh Circuit has held that, if a citizen suit plaintiff can establish that there is a realistic prospect of continuing

violations, notwithstanding the result of state prosecution, the citizen suit can proceed. <u>Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage Dist.</u>, 382 F.3d 743, 765 (7th Cir. 2004). That is because "compliance"—in the context that the Fourth Circuit used that term in <u>Piney Run</u>—"means an <u>end</u> to violations, not merely a reduction in the number or size of them." <u>Id.</u> at 764. (emphasis original) Accordingly, courts measure diligence by whether the "alleged diligent prosecution achieves a permanent solution or whether violations will continue notwithstanding the polluter's settlement with the government." <u>Id.</u> The evidence of Bluestone's persistent noncompliance therefore raises a factual issue as to whether the 2016 Consent Decree fails the diligent prosecution test. <u>See</u> <u>Sierra Club v. SCM Corp.</u>, 572 F. Supp. 828, 831 n.3 (W.D.N.Y. 1983) (the government may "fail the test of diligent prosecution if it fails to adequately monitor or enforce the consent order or if it permits new and independent pollution law violations to occur"); <u>Hobet Min.</u>, 723 F. Supp. 2d at 907 ("If the federal court finds that the state action was not capable of requiring compliance or was not in good faith calculated to do so, it should not hesitate to allow a citizen suit to proceed.").

### B. There Is a Fact Issue about Diligence Because the Decree Did Not Recover Bluestone's Economic Benefit of Noncompliance

One of the fact issues in determining the diligence of a prosecution is whether the government action calculated and recovered the economic benefit of the violator's noncompliance. <u>Laidlaw</u>, 890 F. Supp. at 494. Section 309(d) of the CWA requires a court to consider specific factors in determining an appropriate civil penalty, including "the economic benefit (if any) resulting from the violations." 33 U.S.C. § 1319(d). The purpose of the economic benefit component of the penalty is to "keep violators from gaining an unfair competitive advantage by violating the law . . . by including as part of the penalty an approximation of the amount of money the violator has saved by failing to comply with its permit." <u>United States v. Smithfield Foods, Inc.</u>, 191 F.3d 516, 529 (4th Cir. 1999). Civil penalties seek to deter violations by discouraging future violations. <u>PIRG v. Powell Duffryn Terminals, Inc.</u>, 720 F. Supp. 1158, 1166 (D.N.J. 1989), <u>aff'd in relevant part</u>, 913 F.2d 64 (3d Cir. 1990). To serve that

function, the amount of the penalty must be high enough to ensure that polluters cannot simply absorb the penalty as a cost of doing business. Id. Otherwise, a rational profit-maximizing company would choose to pay the penalty rather than incur compliance costs. Id.

Economic benefit is the after-tax present value of avoided or delayed expenditures on necessary pollution control measures. Laidlaw, 890 F. Supp. at 481. Economic benefit represents the opportunity a polluter had to earn a return on funds that should have been spent to purchase, operate, and maintain appropriate pollution control devices. Id. To determine a company's economic benefit from noncompliance with its permit, one must compare the company's cash flows associated with its delayed permit compliance to what those cash flows would have been if the company had obtained the necessary pollution control equipment on time. Id. Thus, economic benefit is quantified by comparing the present value of the costs of complying on time with the costs of complying late. Hawaii's Thousand Friends v. City and County of Honolulu, 821 F. Supp. 1368, 1387 (D. Hawaii 1993).

"The determination of economic benefit begins with determining what actions a company should have taken in order to comply with its permit and avoid its violations." PIRG v. Magnesium Elektron, Inc., 1995 WL 461252 at *12 (D.N.J. 1995), rev'd on other grounds, 123 F.3d 111 (3d Cir. 1997). Bluestone was required to complete construction of a selenium treatment system by April 21, 2018 and achieve compliance with the selenium limits by June 22, 2018. It has still not built that system, and therefore has avoided and delayed its compliance costs by almost two years. Plaintiffs' engineering expert has determined that Bluestone could have feasibly installed a SeHawk treatment system to achieve on-time compliance. Schneiter Decl., Ex. 1 at 3 (attached as Pl. Ex. D). Plaintiffs' economic expert has determined that, as of February 28, 2020, Bluestone's economic benefit from delayed installation of that treatment system is at least $3.3 million—more than ten times higher than the stipulated penalties it has paid for its violations. Shefftz Decl., Ex. 1 at 1 (attached as Pl. Ex. E).

EPA's Civil Penalty Policy states that "penalties should, at a minimum, recover the economic benefit of noncompliance." Laidlaw, 890 F. Supp. at 493; Student Pub. Interest Research Grp. of New Jersey, Inc. v. AT & T Bell Labs., 617 F. Supp. 1190, 1201 (D.N.J. 1985); see also Sierra Club v. Cedar Point Oil Co. Inc., 73 F.3d 546, 574 (5th Cir. 1996). Because Bluestone's stipulated penalties are far less than its economic benefit from its noncompliance, there is a fact issue as to whether 2016 Consent Decree diligently prosecuted Bluestone's selenium violations.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Bluestone's motion for summary judgment.

Respectfully submitted,

**/s/ Derek O. Teaney**

DEREK O. TEANEY (WVBN 10223)
J. MICHAEL BECHER (WVBN 10558)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 646-1182
Email: dteaney@appalmad.org

JAMES M. HECKER (DCBN 291740)
PUBLIC JUSTICE
1620 L Street, NW Suite 630
Washington, DC 20036
Telephone: (202) 797-8600, ext. 225
Email:  jhecker@publicjustice.net

*Counsel for Plaintiffs*

20

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,**

        **Plaintiffs,**

    **v.**                          **Civil Action No. 1:19-cv-00576**

**BLUESTONE COAL CORPORATION,**

        **Defendant.**

**CERTIFICATE OF SERVICE**

       I, J. Michael Becher, hereby certify that, on May 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to each of the following CM/ECF participants:

       MICHAEL W. CAREY
       S. BENJAMIN BRYANT
       CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
       707 Virginia Street, East, Suite 901
       P.O. Box 913
       Charleston, WV 25323
       mwcarey@csdlaw.com
       sbbryant@csdlawfirm.com
       *Counsel for Defendants*

                              **/s/ Derek O. Teaney**
                              Derek O. Teaney (WVBN 10223)