IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

OHIO VALLEY ENVIRONMENTAL COALITION,
WEST VIRGINIA HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB

    Plaintiffs,

v.                     CIVIL ACTION NO. 1:19-00576

BLUESTONE COAL CORPORATION,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    Pending before the court is defendant Bluestone Coal Corporation's motion to dismiss.  (ECF No. 8.)  For the reasons that follow, the motion to dismiss is **DENIED**.

I.    **Background**

    *A. The 2016 Consent Decree*

    On September 30, 2016, the United States filed a complaint and proposed Consent Decree against Southern Coal Corporation ("SCC").[1]  See <u>United States v. Southern Coal Corp.</u>, No. 7:16-cv-00462 (W.D. Va. 2016); (ECF No. 11, Ex. A (complaint); <u>id.</u> Ex. B

---

[1] Although defendant Bluestone Coal Corporation is not named as a party-defendant in the Consent Decree as filed, it subsequently became subject to the full scope of the Consent Decree because Bluestone Coal Corporation is a subsidiary of Bluestone Resources, Inc, which is a subsidiary of SCC.  (ECF No. 9.)

(notice of consent decree).)  There followed public notice of
the settlement by publication in the *Federal Register* for a
thirty-day period for public comment.  (See ECF No. 8, Ex. 3.)
The only comment on the proposed Consent Decree was submitted by
Appalachian Mountain Advocates, on behalf of environmental
advocacy groups including plaintiffs in this action, and the
comment asked DOJ counsel to "confirm" that the proposed Consent
Decree "does not preclude any citizen suit" against SCC for
Clean Water Act ("CWA") violations not released by the Consent
Decree.  (See id. Ex. 4.)  The DOJ, in its "Memorandum in
Support of Its Unopposed Motion to Enter the Consent Decree,"
responded that

> [T]he Decree does not limit the rights of third
> parties 'except as otherwise provided by law' . . . .
> Whether or not future citizen suits are precluded by
> some legal doctrine outside of the Consent Decree is a
> determination most appropriately made by the court in
> which the citizen suit is filed, based on . . .
> whether Defendants are in compliance with the law or
> the Consent Decree at the time of a future suit and
> the actions of EPA and the States in response to any
> non-compliance.

(Id. Ex. 5 (internal citations omitted).)

In its motion supporting entry of the Consent Decree, the
United States also summarized the terms of the Consent Decree,
maintained that the Consent Decree is "fair, adequate,
reasonable and in the public interest," and stated that "the

settlement process was fair and well informed" and "designed to achieve CWA compliance" which "will provide widespread environmental benefit." (Id. Ex. 5.)  The United States argued that the Consent Decree "is forward-looking, [and] contains multiple frameworks for bringing defendants into compliance." (Id. Ex. 5.)  The government's motion was also supported by the "Declaration of Laurie E. Ireland," an EPA official. (See id. Ex. 6.)  Ms. Ireland stated that since negotiations began in late 2014, "there have been notable improvements in Defendants' compliance record," that the EPA will closely monitor defendants' performance, and that there are "many mechanisms provided under the Decree" to continue enforcement compliance. (Id. Ex. 6.)  The U.S. District Court for the Western District of Virginia entered the Consent Decree as a final judgment on December 19, 2016. (Id. Ex. 1.)

The Consent Decree is in effect until an indefinite date; from December 19, 2016 until such time as EPA and the states conclude that the goals of the Consent Decree have been met by SCC. (See id. Ex. 1 ¶¶ 1137-39.)  The Consent Decree applies to all "facilities" and "future facilities" of SCC; that is, all coal mining sites owned, operated or permitted by SCC, including the Red Fox Surface Mine. (Id. Ex. 1 ¶¶ 7, 14.dd, 14.gg; see also supra note 1.)

3

The Consent Decree required SCC: to develop and implement an environmental management system ("EMS"), (id. Ex. 1 ¶¶ 134-38), an internal corporate system, and a compliance database, (id. Ex. 1 ¶¶ 148-57); to conduct audits of the EMS, (id. Ex. 1 ¶¶ 139-42); and to develop and implement pond protocols, protocols for sampling, testing, and reporting, outlet sampling and verification, and certified violation reporting, corrective measures, and violation response procedures. (Id. Ex. 1 ¶¶ 144-47.) SCC was required to retain independent third-party consultants to audit and report to the company and EPA. The consultants and their qualifications were specified, (id. Ex. 1 ¶¶ 130, 31, 34, 36, 40, 42, 57), and they could be retained or replaced only with EPA's approval. The Consent Decree requires training programs for company personnel. (Id. Ex. 1 ¶¶ 160-62.)

Reporting requirements are a major component of the Consent Decree. SCC is obligated to file quarterly reports listing violations of their National Pollution Discharge Elimination System ("NPDES") and Surface Mining Control and Reclamation Act ("SMCRA") permits, violations of the Consent Decree, and the company's responses to violations. (Id. Ex. 1 ¶¶ 175-83; 84-101.) SCC has submitted quarterly reports for all quarters through the time the motion to dismiss was filed. (See ECF No. 9.)

4

The Consent Decree sets forth a scheme of escalating stipulated penalties for violations, including but not limited to, violations for effluent limit exceedances (daily, monthly or quarterly, as required by permits), failures to sample, reporting violations, non-compliance with terms of the Consent Decree, and for persistent non-compliance.  (See ECF No. 8, Ex. 1 ¶¶ 84-96.)  SCC must calculate stipulated penalties for violations, which are then included in the quarterly reports, and which must be paid by the date the quarterly reports are submitted.  However, the Consent Decree sets those penalties as a non-exclusive remedy that would qualify for an offset against any statutory penalties that were subsequently assessed.  (Id. Ex. 1 ¶¶ 84-102.)  The Consent Decree states that "[s]tipulated penalties are not the United States' or the States' exclusive remedy for violations of this Consent Decree," and the United States and the States "expressly reserve the right to seek" additional relief for future violations of the law, "including . . . statutory penalties [and] additional injunctive relief." (Id. Ex. 1 ¶ 102.)  Additionally, the Consent Decree contained a provision that "[t]his Consent Decree does not . . . limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law."  (Id. Ex. 1 ¶ 128.)

### B. Red Fox Mine Violations in the 2016 Consent Decree

The 2016 Consent Decree only adjudicated and prosecuted the violations of permit limitations identified in Appendix F.  (Id. Ex. 1 ¶ 122; see also ECF No. 11, Ex. C (relevant excerpts of Appendix F).)  Identified within Appendix F were a set of violations of West Virginia NPDES Permit No. WV1006304 at Defendant's Red Fox Surface Mine.  (ECF No. 11, Ex. C.)  Those violations occurred between April 2011 and June 2015, and included some violations of specific permit limitations at Red Fox Mine Outlets 001-008, 020, and 046, but the Consent Decree did not list or include any violations of the permit limitations for selenium at Outlets 005-008.  (See id.)

At the time the Consent Decree was entered, defendant's WV/NPDES Permit No. WV1006304 did not contain a numerical effluent limit for selenium at Outlets 005-008.  (See id. Ex. E.)  Instead, the permit only contained a compliance schedule for selenium at those outlets.  (See id. Ex. E.)  That schedule was imposed in a permit modification that the West Virginia Department of Environmental Protection ("WVDEP") issued on June 21, 2016.  (Id. Ex. E.)  Under that modification, defendant had to monitor and report the selenium concentration at those outlets until June 22, 2018, but on and after June 22, 2018,

defendant's discharges at Outlets 005-008 had to comply with numerical effluent limits for selenium.[2]  (See id. Ex. E.)

### C. Plaintiffs' Complaint and The Alleged Permit Violations

On August 6, 2019, the Ohio Valley Environmental Coalition, West Virginia Highlands Conservancy, Appalachian Voices, and the Sierra Club, (collectively "plaintiffs"), filed the instant Complaint against defendant pursuant to the citizen suit provisions of the CWA, 33 U.S.C. §§ 1251 et seq., and SMCRA, 30 U.S.C. §§ 1270 et seq.  According to the Complaint, the allegations of which are taken as true for purposes of the motion to dismiss, defendant has discharged pollutants from Outlets 005-008 at its Red Fox Surface Mine in violation of its CWA discharge permit and SMCRA mining permit.  The effluent limit violations alleged in the Complaint occurred on specified dates between July 2018 and June 2019, and thus occurred after defendant's discharges at Outlets 005-008 had to comply with the numerical limits.  (See ECF No. 1, app. A; supra note 2.)

The Red Fox Mine operates under WV/NPDES Permit WV1006304 and WV/SMCRA Permit S007282.  (See ECF No. 9, Ex. 2.)  The exceedances that are the subject of this suit were discharged from outfalls 005-008, which were subject to the above-listed

---

[2] Those limits are a monthly average of 4.7 μg/l and a daily maximum of 8.2 μg/l.  (Id. Ex. E.)

7

WV/NPDES Permit.  (Id. Ex. 2.)  Defendant admits that that
discharges listed in the Complaint exceeded permitted levels for
selenium discharge.  (Id.; see also ECF No. 1.)  The permit
exceedances were reported by defendant to the WVDEP by the
company's routine filing of discharge monitoring reports, as
required by the company's NPDES permit, issued by WVDEP.  (See
ECF No. 9.)  Defendant also reported the exceedances to the
United States Environmental Protection Agency (EPA), the United
States Department of Justice (DOJ), and the United States
Department of Interior, Office of Surface Mining Reclamation and
Enforcement (OSMRE), in accordance with the Consent Decree.
(Id.)

      According to Bluestone's quarterly reports filed with the
various agencies pursuant to the Consent Decree, Bluestone has
reported 42 violations of its average selenium limits and 65
violations of its maximum selenium limits at Outlets 005-008
since July 2018.  (ECF No. 11, Ex. F.)  Defendant, through SCC,
has paid approximately $278,000 in stipulated penalties for
those selenium effluent violations at Red Fox Mine occurring
from July 2018 to June 30, 2019.  (ECF No. 9.)[3]  However,

---

[3] Defendant states it has also paid additional stipulated
penalties for violations occurring after June 30, 2019.  (ECF
No. 57.)

8

defendant reported that it paid no stipulated penalties for thirty-one violations of the maximum selenium limits at those Outlets.  (See ECF No. 11, Ex. F.)  Additionally, if defendant's violations are not covered by the stipulated penalties of the Consent Decree, its 107 total violations would be subject to a maximum CWA statutory civil penalty of $73,256,888.  (See id. Ex. G.)

Plaintiffs' suit seeks declaratory and injunctive relief as well as civil penalties against defendant for these selenium limit violations at Outlets 005-008 at the Red Fox Surface Mine. (ECF No. 1.)  On June 4, 2019, plaintiffs mailed notice of the violations and their intent to file suit in letters addressed to defendant, the EPA, OSMRE, and the WVDEP, as required by § 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and § 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)(A).  After waiting the required sixty days, during which neither the EPA, OSMRE, and/or the WVDEP commenced an action to redress the alleged violations, plaintiffs filed suit before this court.

### D. Defendant's Motion and Responses

Defendant filed a motion to dismiss on September 25, 2019, arguing that plaintiff's suit was precluded by the Consent Decree and any action by this court would create undue interference with the Consent Decree.  (See ECF No. 9.)

9

Defendant argues this action is precluded because the Consent
Decree is a final judgment that remains in effect, and because
the EPA has been diligently prosecuting the Consent Decree.
(Id.)  Furthermore, defendant claims that it is exploring ways
to correct the selenium problem at the Red Fox Mine.  (Id.)
Defendant also adds that plaintiffs do not have standing to
pursue this claim, as their claims are not redressable in this
suit but only redressable pursuant to the Consent Decree before
the U.S. District Court in Virginia where the Consent Decree was
entered.  (Id.)

     Plaintiffs filed a Response, arguing that their claims are
not precluded by the Consent Decree for three reasons: (1) the
Consent Decree does not require compliance with the permit
limits plaintiffs are seeking to enforce; (2) the government's
prosecution of the Consent Decree was not pending or ongoing at
the time plaintiffs filed this case; and (3) the Consent Decree
is not being diligently prosecuted.  (See ECF No. 11.)
Plaintiffs also argue that a prior case in this very district,
Ohio Valley Environmental Coalition, Inc. v. Independence Coal
Company, 2011 WL 1984523 (S.D.W. Va. May 20, 2011), is directly
on point as to why their suit is not precluded.

     As to the standing issue, plaintiffs respond by explaining
that the success of defendant's redressability argument hinges

on whether plaintiffs' suit is precluded by the Consent Decree.
(Id.)  If the Consent Decree does preclude the instant action,
then the issue of standing is mooted.  (Id.)  But if the Consent
Decree does not preclude the instant action, plaintiffs argue
that they can obtain redress through the court issuing
additional civil penalties, up to the statutory maximum, for
violations alleged in the Complaint even though the violations
are subject to stipulated penalties in the Consent Decree.
(Id.)  There have been violations that have not resulted in any
penalty payment, and issuing penalties for these violations
would provide redress of plaintiffs' injuries.  (Id.)  Lastly,
plaintiffs make the additional argument that this court may
elect to defer its ruling on the motion to dismiss in order to
allow discovery on the fact-based question of whether the
Consent Decree has or has not been diligently prosecuted.  (Id.)

Defendant countered in its Reply that the opinion in
Independence is inapposite, as the Consent Decree here does
require compliance with the permit limits plaintiffs are seeking
to enforce because the Consent Decree requires compliance with
the terms of all permits issued while the Consent Decree is in
effect – the permit at Red Fox is covered as a future permit at
a future facility, as defined by the Consent Decree.  (See ECF
No. 14.)  Defendant also responds that the Consent Decree is

forward-looking and ongoing, as it was designed to and is in the process of enforcing compliance.  (Id.)  Defendant further contends that the Consent Decree is being diligently prosecuted, as defendant has paid approximately $278,000 in penalties for the selenium violations alleged by plaintiffs.  (Id.)  Defendant did not make any additional arguments on the standing issue, but did argue that this court need not wait for discovery to rule on its motion to dismiss because the government's diligent prosecution is demonstrated as a matter of law by the papers presently before the court.  (Id.)

## II.  <u>Standard of Review for Motion to Dismiss</u>

"[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." <u>Rogers v. Jefferson-Pilot Life Ins. Co.</u>, 883 F.2d 324, 325 (4th Cir. 1989) (citation omitted) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 48 (1957) and <u>Johnson v. Mueller</u>, 415 F.2d 354, 355 (4th Cir. 1969)).  "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  <u>Mylan Laboratories, Inc. v. Matkari</u>, 7 F.3d 1130,

12

1134 (4th Cir. 1993); see also Ibarra v. United States, 120 F.3d 474, 474 (4th Cir. 1997).

In evaluating the sufficiency of a pleading, the cases of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), provide guidance.  When reviewing a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted, a court must determine whether the factual allegations contained in the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and, when accepted as true, "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) and 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 550 U.S. at 563.  As the Fourth Circuit has explained, "to withstand a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'"  Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 350 (4th Cir. 2013) (quoting Twombly, 550 U.S. at 570).

13

When considering a 12(b)(6) motion, a court must accept all of the complaint's factual allegations as true and draw all reasonable inferences therefrom in favor of the plaintiff.  See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md., 684 F.3d 462, 467 (4th Cir. 2012).

The court may consider the 2016 Consent Decree and WV/NPDES permit WV1006304.  "Without converting a motion to dismiss into a motion for summary judgment, a court may consider documents that are attached to the complaint," as well as "documents extrinsic to the complaint if they are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their authenticity."  Tinsley v. OneWest Bank, FSB, 4 F. Supp. 3d 805, 819 (S.D.W. Va. 2014) (quoting Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222-23 (4th Cir. 2009)). The Consent Decree and WV/NPDES permit WV1006304 were referenced in the Complaint and were attached in full to defendant's motion to dismiss.  It is clear that review of the Consent Decree and permit WV1006304's terms is integral to proper consideration and resolution of plaintiffs' claims and defendant's defenses. Moreover, the Consent Decree and permit WV1006304 are public records, and the Consent Decree is a court decision and a final judgment.  They are undisputedly authentic and neither party has questioned their authenticity.

14

III. **Diligent Prosecution Standard**

Under the CWA, a citizen may file a suit "against any person . . . who is alleged to be in violation of an effluent standard or limitation under this chapter or an order issued by the Administrator or a State with respect to such a standard or limitation."  33 U.S.C. § 1365(a).  "Effluent standard or limitation" is further defined to include, *inter alia,* those standards established pursuant to § 1311 and "a permit or condition . . . issued under § 1342."  Id. § 1365(f).  Citizen suits are, however, subject to several limitations.  Relevant to this case is the statutory bar to citizen suits where "the Administrator or State has commenced and is diligently prosecuting a civil or criminal action . . . to require compliance with the standard, limitation, or order" at issue in the citizen suit.  Id. § 1365(b)(1)(B).

When there is a concurrent government action addressing the standard or limitation at issue in a citizen suit, plaintiffs bear the burden of proving the government prosecution is not diligent.  Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., Md., 523 F.3d 453, 459 (4th Cir. 2008).  The government prosecution is presumed to be diligent.  See id.  The government prosecution also need not be "far-reaching or zealous. . . . Nor must an agency's prosecutorial strategy coincide with that

15

of the citizen-plaintiff." Karr v. Hefner, 475 F.3d 1192, 1196 (10th Cir. 2007). However, the deference owed is not unlimited: "a diligent prosecution analysis requires more than mere acceptance at face value of the potentially self-serving statements of a [government] agency and the violator." Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743, 760 (7th Cir. 2004).

Nonetheless, the standard for plaintiffs to meet their burden and show that the government has failed to diligently prosecute an alleged violation is a high standard. See id. at 759; see also Karr, 475 F.3d at 1198. This is due to the important, yet limited, role of citizens in enforcing the CWA. Citizen suits are an element of Congress's strategy for enforcing the CWA, but private intervenors are meant to "supplement rather than to supplant" public litigation. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987). Otherwise, the government's ability to reach voluntary settlements with defendants would be severely undermined, as defendants would have little incentive to settle disputes with the government if they remained open to unlimited citizen suits despite settling. See Piney Run, 523 F.3d at 459; United States v. Metro. Water Reclamation Dist. of Greater Chicago, 792 F.3d 821, 824-25 (7th Cir. 2015).

16

Therefore, to meet its burden, a citizen-plaintiff must do more than show an agency's strategy is less aggressive than that which would be pursued by the citizen.  Plaintiffs must show that the government action is not capable of requiring compliance or was not in good faith calculated to do so.  See Piney Run, 523 F.3d at 460; see also Envtl. Conservation Org. v. City of Dallas, 529 F.3d 519, 528–29 (5th Cir. 2008) (A non-diligent prosecution may be shown "[i]f a citizen-suit plaintiff demonstrates that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding the government-backed consent decree").  Essentially, a plaintiff must provide a set of facts demonstrating that the defendant will continue to engage in violations that were not satisfactorily addressed by a consent decree.  See City of Dallas, 529 F.3d at 529.

## IV.  Analysis: The Consent Decree Does Not Preclude Plaintiffs' Suit

### A. The Consent Decree was not designed to require compliance with the permit limits plaintiffs are seeking to enforce

The Consent Decree "in no way affects or relieves [defendant] of [its] responsibility to comply with applicable . . . permits."  (ECF No. 8, Ex. 1 ¶¶ 7, 21.)  Additionally, the

17

Consent Decree is forward-looking, as it prospectively provides for stipulated penalties in case of future violations.  (See id. ¶¶ 88-89.)  Therefore, the court finds that the Consent Decree was pending and ongoing on the date that plaintiffs filed their suit.  However, plaintiffs' suit is not precluded if the prosecution was not diligent as to these violations because the Consent Decree was not designed to require compliance with the permit violations at issue in plaintiffs' Complaint.  See Piney Run, 523 F.3d at 460.

The violations in the Complaint occurred at Outlets that were not addressed by the Consent Decree:  Appendix F to the Consent Decree did not include any violations of the permit limitations for selenium at Outlets 005-008, which are the violations that form the basis of plaintiffs' suit.  (See ECF No. 11, Ex. C.)  Additionally, the permit regulating Outlets 005-008 did not contain any numeric effluent limits at the time the Consent Decree became a final judgment.  (See id. Ex. E.) Instead, the permit only contained a compliance schedule for selenium at those outlets, and it was only on and after June 22, 2018, that defendant's discharges at Outlets 005-008 had to comply with numerical effluent limits for selenium.  (See id.) Thus, plaintiffs are suing a defendant subject to an active consent decree for violations of effluent limits that did not

18

exist at the time the Consent Decree was made final and were not specifically addressed by that Consent Decree.

This court faced a nearly identical scenario in Independence.  See Ohio Valley Envtl. Coal., Inc. v. Indep. Coal Co., 2011 WL 1984523 (S.D.W. Va. May 20, 2011).  There, like here, plaintiffs sued a defendant subject to an active consent decree for violations of effluent limits that did not exist and were not specifically addressed by a consent decree.  See id. Like the Consent Decree here, the consent decree in Independence "prospectively provided for stipulated penalties in case of future violations," id. at *2, and applied to "all pollutants . . . regulated under effluent limits contained in Defendants' NPDES permits."  Id. at *3.  Thus, the defendant in Independence made the same argument as the defendant here, claiming that any future violations of future permits "are encompassed by the relief provided by the Consent Decree and, accordingly, Plaintiffs' action is barred" because the consent decree's stipulated penalties for any future violations constitutes diligent prosecution.[4]  Id. at *3-4.

---

[4] Importantly, the consent decree in Independence also contained an identical provision reserving certain rights to third parties as the Consent Decree in this case:  both consent decrees stated that "[t]his Consent Decree does not . . . limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law."  (ECF No. 8,

19

That argument is just as unpersuasive here as it was to this court in Independence.  "The claim-preclusive effect of a consent judgment may reach beyond the claims that were specifically asserted—so long as the parties clearly intended that result."  Citizens Legal Envtl. Action Network, Inc. v. Premium Standard Farms, Inc., 2000 WL 220464, at *7 (W.D. Mo. Feb. 23, 2000).  Here, there is no evidence that the parties clearly intended for the Consent Decree to require compliance with the future selenium effluent limits.  This court in Independence put it well when it explained that

> While the Consent Decree does provide prospective injunctive relief in the event of future violations of the WV/NPDES permits, the Court cannot imagine how the Consent Decree was, in good faith, calculated to achieve compliance with the selenium effluent limitations.  The Court is not implying that the parties . . . colluded to allow Defendants to avoid compliance with these limits.  [But at] the time the complaint . . . was filed, May 10, 2007, the selenium limits were not in effect. . . .  Accordingly, the effect of the Consent Decree on future violations of the selenium effluent limitations could not have been more than a speculative consideration of the EPA . . . at the time the Consent Decree was negotiated and lodged with the court.

2011 WL 1984523, at *6 (citations omitted).

---

Ex. 1 ¶ 128.)  This provision does not displace the CWA's limits on citizen suits when there is ongoing diligent prosecution, but it also makes clear that citizen suits shall not be barred when plaintiffs can demonstrate a lack of diligent prosecution.  See Independence, 2011 WL 1984523, at *5.

## B. The violations alleged are separate and distinct from violations addressed by the Consent Decree

To defeat a claim preclusion defense, the new wrong cannot be related in origin to the pre-settlement violations.  See Friends of Milwaukee's River v. Milwaukee Metropolitan Sewerage Dist., 382 F.3d 743, 758 (7th Cir. 2004); see also N. California River Watch v. Redwood Oil Co., 2008 WL 4601016, at *6 (N.D. Cal. Oct. 15, 2008) ("If plaintiff can sufficiently allege [that a violation] is from a new source that was not covered by the consent decree, then that complaint would not be barred by res judicata.").  Plaintiffs allege selenium effluent violations of NPDES Permit WV1006304 at Outlets 005-008; of the 103 alleged violations of NPDES Permit WV1006304 in Appendix F of the Consent Decree, zero involved selenium violations at Outlets 005-008, and only two involved selenium violations at all.  (See ECF No. 11, Ex. C.)  Plaintiff's claims are not related in origin and are separate and distinct from the violations in the Consent Decree, and thus the element of res judicata requiring an identity of causes of action is not met here.  Cf. Friends of Milwaukee's River, 382 F.3d at 758 (finding the opposite – that plaintiffs' claims were barred by res judicata – because the alleged violations had the "same factual basis" as the violations in the consent decree).

### C. The court is not convinced that the Consent Decree
### will ensure defendants comply with its permit limits

Additionally, this court finds that like in Independence, the Consent Decree could not have been in good faith calculated to achieve compliance with the violations that plaintiff raises. The Consent Decree contains provisions about reporting requirements and the need to "implement treatment measures" when violations are detected until compliance is achieved. (See ECF No. 8, Ex. 1 ¶¶ 47-62.) However, just as in Independence, these provisions are insufficient in light of the "extreme difficulty" coal companies have had in complying with selenium effluent limitations,[5] and in light of the fact that the Consent Decree requires less than defendant's WVDEP selenium permits themselves require. 2011 WL 1984523, at *6. At the time of the Consent

_____

[5] On this point of the difficulty selenium poses and the general failure to comply with selenium limits, see Robert G. McLusky & Blair M. Gardner, *Selenium Issues in the Coal Industry*, 30 ENERGY & MIN. L. INST. 6, 222 (2009) ("WVU's literature review also confirmed that there were no easy solutions for treating existing sources of selenium. . . . [E]xisting techniques were unable to achieve reductions to 5 ug/l, required large amounts of power, were very expensive, or suffered from other potential reliability or regulatory issues"); Sarah J. Surber, *Writing a Check That the State Can't Cash:  Water Pollution from Coal Mining and the Imminent and Inevitable Failure of the West Virginia Special Reclamation Water Fund*, 27 TUL. ENVTL. L.J. 1, 20 (2013) ("WVDMR continued to issue MTR NPDES permits, knowing that mining companies would discharge illegal quantities of selenium and that sites were not installing selenium treatment technology.").

Decree's filing or entry, defendant's WV/NPDES permit WV1006304
did not yet require compliance with specific selenium effluent
limits, but instead contained a schedule of compliance for
selenium discharges.  (ECF No. 11, Ex. E.)  This schedule of
compliance required that defendant complete construction of a
treatment system for selenium discharges and "achieve compliance
with the final selenium effluent limitations"[6] by June of 2018.
(Id.)  Yet, according to defendant's quarterly reports filed
pursuant to the Consent Decree, defendant has no effective
treatment system nor had it developed a plan to achieve
compliance at the time of plaintiffs' filing of the Complaint.
(See ECF No. 11, at p. 14.)  Thus, just as in Independence,

> The WVDEP imposed the specific requirement that
> Defendants install selenium treatment systems, which
> Defendants have yet to complete. . . .  The Consent
> Decree's tiered response approach has no similarly
> stringent approach to achieving compliance with the
> selenium effluent limitations.  Rather, the tiered
> response provisions apply only to violations of the
> daily and monthly limits, not to the additional
> treatment system requirements.  The WVDEP recognized
> that this, at a minimum, was necessary to begin to
> address the consistent inability of the defendants to
> comply with the selenium effluent limitations.

2011 WL 1984523, at *6 (citations omitted).  The Consent Decree
does not include the mechanisms that were calculated to achieve

---

[6] Those limits are a monthly average of 4.7 µg/l and a daily
maximum of 8.2 µg/l.  (Id. Ex. E.)

23

compliance with the violations that plaintiff raises, and as
such does not constitute a diligent prosecution.

### D. The Consent Decree does not appear to have removed the economic incentives to violate permit limits

Defendant has paid approximately $278,000 in stipulated
penalties for those selenium effluent violations at Red Fox
Mine.  (ECF No. 9.)  However, as defendant continues to be in
consistent non-compliance with the terms of its selenium permits[7]
despite facing these general penalties for violations and repeat
violations as stipulated, it appears evident that the Consent
Decree's penalties have not "remove[d] or neutralize[d] the
economic incentive to violate [the selenium-related]
environmental regulations."  United States v. Smithfield Foods,
Inc., 191 F.3d 516, 529 (4th Cir. 1999).  Moreover, defendant

---

[7] Defendant has violated its selenium limits at one or more of
Outlets 005-008 in every month from June 2018 to the time of
plaintiffs' filing in August 2019.  (See ECF No. 11, at p. 13;
ECF No. 12, Ex. 1).  These types of repeated violations stands
in stark contrast to cases finding diligent prosecution, and is
more in line with those in which plaintiffs showed a lack of
diligent prosecution.  Compare Sierra Club v. Powellton Coal
Co., LLC, 2010 WL 454929, at *12 (S.D.W. Va. Feb. 3, 2010) (no
diligent prosecution where there were thousands of continuing
violations after the filing of the consent decree), with Comfort
Lake Ass'n v. Dresel Contracting, Inc., 138 F.3d 351, 357 (8th
Cir. 1998) (finding diligent prosecution where many of the
violations alleged by plaintiffs occurred prior to the consent
decree and were highly unlikely to continue).

reported that it paid no stipulated penalties for thirty-one violations of the maximum selenium limits at those Outlets. (See ECF No. 11, Ex. F.)  When a consent decree creates an ineffective penalty regime and/or does not challenge continuing violations, courts have found this to be another sign of a lack of diligent prosecution.  See, e.g., Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743, 762 (7th Cir. 2004) ("courts have considered whether penalties are assessed and whether the amount of the penalty has taken into account the economic benefit the violator derived from noncompliance")[8]; Atl. States Legal Found., Inc. v. Eastman Kodak Co., 933 F.2d 124, 128 (2d Cir. 1991) (explaining that a motion to dismiss should be denied if violations are continuing); Ohio Valley Envtl. Coal., Inc. v. Hobet Min., LLC, 723 F. Supp. 2d

---

[8] The Seventh Circuit in Friends of Milwaukee's Rivers cautioned that continuing violations are not always a sign of a lack of diligent prosecution:  sometimes continuing violations are due to "underlying systemic causes [that] are likely to continue until a large-scale remedial project addressing those underlying causes is completed." 382 F.3d at 762.  Thus, courts should not levy "additional penalties on violators who are undertaking massive remedial projects [because such action] will not bring about compliance any faster or cause the result to be any more effective."  Id. at 763.  However, here there is no evidence that defendant has the beginnings of an effective treatment system nor has even developed a plan to achieve compliance – and this is particularly harmful to defendant's case when its permit required such action be completed by June of 2018.  See supra; (ECF No. 11, at p. 14); (id. Ex. E.)

886, 908 (S.D.W. Va. 2010) (finding no diligent prosecution in part because the consent decree's penalties "appear inadequate to remove the economic benefit of non-compliance"); Citizens Legal Envtl. Action Network, Inc. v. Premium Standard Farms, Inc., 2000 WL 220464, at *13 (W.D. Mo. Feb. 23, 2000) (noting that two indicia of diligent prosecution are whether violations are continuing and whether the economic incentive to pollute has been removed); Friends of the Earth, Inc. v. Laidlaw Envtl. Svcs. (TOC), 890 F. Supp. 470, 489-95 (D.S.C. 1995), *vacated on other grounds*, 149 F.3d 303 (4th Cir. 1998), *rev'd on other grounds*, 528 U.S. 167 (2000).  This court in Independence faced a nearly identical situation and found that this insufficient economic incentive was another factor demonstrating a lack of diligent prosecution:

> [T]he current violations of the selenium effluent limitations were not considered in the calculation of the fine imposed on Defendants . . .  The Consent Decree covers only those violations that had occurred prior to the lodging of the Consent Decree.  As the selenium effluent limitations were not in effect at that time, the . . . fine was not calculated to account for future violations of those limits. Therefore, the fine assessed against Defendants does not "remove or neutralize the economic incentive to violate [the selenium-related] environmental regulations."

2011 WL 1984523, at *6 (citations omitted).

26

### *E. Plaintiffs' claims are redressable before this court*

Defendant correctly conceded that plaintiff possesses the injury and causation elements of the standing requirements.  See ECF No. 9, at p. 9 n.11; see also Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) (explaining standing requirements).  The only issue as to standing is whether plaintiffs' claims are redressable before this court.  Redressability is met if it is "likely" that the injury asserted will be "redressed by a favorable decision."  Lujan, 504 U.S. at 561.

Because plaintiffs' suit is not precluded by the diligent prosecution bar, plaintiffs' claims are redressable before this court.[9]  Plaintiffs ultimately seek civil penalties for defendant's alleged violations, among other remedies such as an injunction requiring defendant to immediately comply with the effluent limitations within permit WV1006304.  (See ECF No. 1, at p. 10.)  Once plaintiffs meet their burden of demonstrating a lack of diligent prosecutions, plaintiffs are no longer barred from seeking civil penalties for defendant's violations even though those same violations are subject to stipulated penalties

---

[9] Both parties correctly argued that if plaintiffs' claim was barred because they could not demonstrate a lack of diligent prosecution, plaintiffs would not have standing.

under the Consent Decree.  See Sierra Club v. Powellton Coal
Co., 2010 WL 454929, at *14 (S.D.W. Va. Feb. 3, 2010)
("[P]laintiffs are not barred from seeking additional penalties
for violations within the consent order or those occurring
afterwards.").  Furthermore, the Supreme Court has made clear
that civil penalties provide a valid form of redress.  See
Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
528 U.S. 167, 185-86 (2000) ("To the extent that [civil
penalties] encourage defendants to discontinue current
violations and deter them from committing future ones, they
afford redress to citizen plaintiffs who are injured or
threatened with injury as a consequence of ongoing unlawful
conduct.").  Thus, plaintiffs' claims are redressable because
they seek a remedy that this court possesses the power to grant
and which would redress their injuries "by abating current
violations and preventing future ones."  Id. at 187 (2000).

**V.   Conclusion**

    The court has fully considered the parties' pleadings, in
the light most favorable to the plaintiffs, and finds that
plaintiffs have met their burden of proof showing that that the
government action is not capable of requiring compliance or was
not in good faith calculated to do so.  There is a realistic
prospect that the violations alleged in its complaint will

continue notwithstanding the current Consent Decree.  As such, and for the reasons expressed above, defendant's motion to dismiss, (ECF No. 8), is **DENIED**.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO ORDERED this 3rd day of June, 2020.

Enter:

David A. Faber
Senior United States District Judge