IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**OHIO VALLEY ENVIRONMENTAL**
**COALITION, et al.,**

      **Plaintiffs,**

  v.                                      Civil Action No. 1:19-cv-00576

**BLUESTONE COAL CORPORATION,**

      **Defendant.**

## PROPOSED INTEGRATED PRETRIAL ORDER

Pursuant to the Court's November 4, 2019 Scheduling Order and Local Rule 16.7, Plaintiffs and Defendant Bluestone Coal Corporation ("Bluestone") submit this Proposed Pretrial Order. Plaintiffs have moved for partial summary judgment on statutory and constitutional standing, subject matter jurisdiction, and liability. Bluestone has moved for summary judgment on statutory preclusion. Those motions are ripe for determination, and their resolution may eliminate the need for trial of certain issues.

**(1) Pre-Trial Disclosures Required by Fed. R. Civ. P. 26(a)(3) and Objections Thereto**

The parties have each submitted pre-trial disclosures pursuant to Rule 26(a)(3). Plaintiffs' pretrial disclosures are attached as Exhibit A and Bluestone's pretrial disclosures are attached as Exhibit B.

**(2) Plaintiffs' Statement of Contested Issues of Law Requiring a Ruling Before Trial**

    a. Whether Plaintiffs have statutory and constitutional standing to bring this action based on their members' use and enjoyment of tributaries of the Tug River downstream from discharges from Bluestone's Red Fox Surface Mine.

b. Whether Plaintiffs have satisfied the statutory requirements for jurisdiction, i.e., a pre-suit notice letter and ongoing violations, under the Clean Water Act and the Surface Mining Control and Reclamation Act (SMCRA).

c. Whether Bluestone is liable for violating the effluent limitations in its WV/NPDES Permit, and has therefore violated both the Clean Water Act and SMCRA.

**(2) Defendant's Statement of Contested Issues of Law Requiring a Ruling Before Trial**

Defendant agrees with plaintiffs' listing of contested issues of law requiring a ruling before trial.

Bluestone challenges plaintiffs' standing solely on the basis that this action is precluded by 33 USC §1365(b)(1)(B), by virtue of the federal Consent Decree entered in the US District Court for the Western District of Virginia, and by the federal government's diligent prosecution thereof. The Court addressed this issue in its Order (Doc. 60), denying defendant's motion to dismiss. The same issue is raised in the parties' motions for summary judgment.

**(3) Statement of Elements of Plaintiffs' Claims**

To establish jurisdiction over their claims, Plaintiffs must establish that they have organizational standing under Article III of the United States Constitution, *Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 174 (2000), that they complied with the 60-day notice requirements of Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)(A), and that Bluestone is in continuing violation of each permit or performance standard at issue. 33 U.S.C. § 1365(a); 30 U.S.C. § 1270(a)(2); *Gwaltney v. Smithfield, Ltd, v. Chesapeake Bay Foundation*, 484 U.S. 49 (1987). Plaintiffs have summarized the facts and law concerning the standing and

notice issues in their motion for partial summary judgment. Doc. #55. Bluestone did not file a brief opposing Plaintiffs' motion for partial summary judgment on standing and jurisdiction.

As to the merits of Plaintiffs' claims, Bluestone's WV/NPDES permit under the CWA and its mining permit under SMCRA each prohibit it from violating the effluent limitations in its water discharge permit. Plaintiffs rely on Bluestone's certified discharge monitoring reports for undisputed evidence of those violations. Bluestone did not file a brief opposing Plaintiffs' motion for partial summary judgment on liability.

Bluestone's sole defense, and the basis for its motion for summary judgment, is that Plaintiffs' action is precluded by a 2016 Consent Decree between it and the United States. This Court rejected that defense in its opinion denying Bluestone's motion to dismiss. Doc. 60. Bluestone's summary judgment brief is based on the same arguments that this Court rejected in that opinion.

As to relief, Plaintiffs seek a declaratory judgment and an award of civil penalties for 1,904 days of violation of Bluestone's effluent limitations for selenium and 1,053 days of violation of its compliance schedule for construction of a selenium treatment system. 33 U.S.C. § 1365(a). The Court has discretion to set the penalty amount based on consideration of the five statutory penalty factors in 33 U.S.C. § 1319(d): "the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." The statutory maximum penalty is $54,833 for each day of violation after November 2, 2015. 40 C.F.R. § 19.4; 84 Fed. Reg. 2059 (Feb. 6, 2019). All of Bluestone's selenium violations occurred after that day.

Plaintiffs also seek a permanent injunction requiring Bluestone to install selenium treatment systems at the outlets that have ongoing selenium violations. 33 U.S.C. § 1365(a). Plaintiffs further seek an award of attorneys' fees, expert witness fees, and costs. *Id.*, § 1365(d).

**(3) Statement of Elements of Defendant's Defenses**

Bluestone asserts plaintiffs' claims are precluded by the preclusion provision of the Clean Water Act, 33 USC §1365 (b)(1)(B). If §1365 precludes this action, then plaintiffs do not have "redressable" claims, and hence no standing. The Court rejected defendant's preclusion and standing arguments by its Memorandum Opinion and Order (Doc 60) denying defendant's motion to dismiss.

Bluestone acknowledges that its discharge monitoring reports (DMRs) establish that discharges from outfalls 005, 006, 007 and 008, on Red Fox permits NPDES WV 1006304 and SMCRA S007282, during the time beginning July 2018 on occasions, violated selenium limits in the permits.[1]

The Court's consideration of civil penalties is guided by the factors set forth in 33 USC §1319(d):

1. seriousness of the violations;
2. the "economic benefit, if any;" to the permittee;
3. the history of violations;
4. good faith compliance efforts by the permittee;
5. the economic impact on the permittee; and
6. "such other matters as justice may require."

---

[1] The parallel provisions of SMCRA also apply to this case.

Defendant contends that each of these statutory factors weighs against the imposition of civil penalties, and that should the Court choose to impose civil penalties, such penalties should be minimal. Bluestone has incurred about $406,000 and had paid approximately $371,000 to the United States pursuant to the Consent Decree for the same selenium effluent violations at issue in this case, and must be given credit for such payments if the Court considers imposing any additional civil penalties.[2]

Bluestone will present evidence that it has taken efforts to comply with its permits.

Bluestone opposes plaintiffs' request for injunctive relief because the company has been striving to achieve compliance. Bluestone will also present evidence that it will achieve compliance because of the trend showing improved selenium numbers for Outlet 006, and because of possible changes to the method and manner of measuring the selenium in the receiving waters. Evidence (discussed below) will show that injunctive relief will not be warranted.

Plaintiffs' demand for attorney fees and costs will depend on their success in the case, and the necessity and reasonableness of their work and charges. Bluestone does not agree that plaintiffs are entitled to attorney fees and costs.

**(4) Plaintiffs' Summary of Material Facts and Theories of Liability**

Bluestone holds surface mining and WV/NPDES permits for its Red Fox Surface Mine, which discharges from four outlets into tributaries of Dry Fork of the Tug Fork River. Bluestone's 2016 NPDES permit imposed effluent limitations on discharges of selenium from each outlet, expressed as both a monthly average and a daily maximum. Doc. #11-5 at 3-6. Bluestone has reported on its Discharge Monitoring Reports ("DMRs") and its quarterly reports

---

[2] Defendant will present evidence of the specific amounts paid and owed through the filing of the next quarterly report required by the federal Consent Decree, which is due July 30.

pursuant to the 2016 Consent Decree (Doc. #8-1) that it has violated its monthly average selenium limit 60 times and its daily maximum selenium limit 78 times at Outlets 005, 006, 007, and 008 from July 2018 through March 2020. Doc. #54-6 at 4-7. Plaintiffs may introduce DMRs, and quarterly reports required by the 2016 Consent Decree, showing additional violations in subsequent months (at least April-June 2020) if those DMRs and reports become publicly available prior to trial.

Bluestone's 2016 WV/NPDES permit also contained a compliance schedule that required Bluestone to begin construction of a selenium treatment system by June 21, 2017, and complete construction of that system by April 21, 2018. Doc. #11-5 at 7. Bluestone failed to comply with those two deadlines and, as of this date, has still not begun construction of those systems. Bluestone's mining permit under SMCRA also requires compliance with those same effluent limitations and compliance schedule. 38 C.S.R. § 2-14.5.b.

In July 2017, Bluestone asked its engineering consultant, Roland Doss, to prepare a selenium study plan, but he did no further substantive work on that project until August 2019, when he developed a plan to take fish tissue samples below several outlets at the mine site—the latter plan being requested by Bluestone's counsel in response to this litigation. Bluestone did not discuss the "generalities" of selenium treatment options with Mr. Doss until December 2019 or January 2020. Bluestone did not discuss specific selenium treatment recommendations with Mr. Doss until February or March 2020. Bluestone has not asked him to implement any specific treatment strategy. Thus, as of April 16, 2020, when Mr. Doss was deposed, Bluestone had still not begun construction of a treatment system for selenium at the Mine. Instead, according to Bluestone's environmental compliance manager, George Stephens, Bluestone has applied to WVDEP to modify its permit to weaken the selenium limits at Outlets 005, 007 and 008. It has

6

not sought such a modification at Outlet 006, but also has not decided how it will achieve compliance at that outlet. WVDEP has not issued a draft permit that would modify the selenium limits in Bluestone's permit.

Plaintiffs' engineering expert will testify that it was feasible for Bluestone to install selenium treatment systems in July 2018 that would have achieved timely compliance with its permit limits. Plaintiffs' economic expert will testify that Bluestone has gained an economic benefit of at least $845,000 per outlet by failing to install those treatment systems.

**(4)     Defendant's Summary of Material Facts and Theories of Defense**

Bluestone's current owners acquired the company in 2015. The Red Fox mine is a surface mine covering approximately 1300 acres near Bishop in McDowell County. At acquisition Red Fox was subject to an NPDES permit – WV1006304 – and corresponding SMCRA permit – S007282.

The permits were issued by the WV Department of Environmental Protection (DEP). The permit did not contain effluent limits for selenium before June 22, 2018; defendant's obligation was only to test selenium levels and report the same in its DMRs.

Numerical limits for selenium became part of defendant's permits effective June 22, 2018. Those limits are a monthly average of 4.7 ug/l and a daily maximum of 8.2 ug/l. Water samples taken directly from the "water column" (effluent discharged from an outfall) are tested by certified labs, and the results reported to defendant and to WVDEP through DMRs.

Beginning in approximately 2016 or early 2017, Bluestone commenced actions to address selenium problems at Red Fox. Bluestone identified drainage ditches, sumps and other structures conveying water to the relevant discharge points and cleaned and/or re-worked those features in order to reduce selenium contributing materials. Bluestone also removed materials,

including a refuse pile and soil, which contributed selenium to the water. Bluestone then recovered the surface with soil and revegetated the surface. Bluestone believes these actions have reduced selenium levels.

In the summer 2018, Bluestone engaged Nalco, a water treatment firm, to consult and test whether Nalco distributed products successfully treat the water. Nalco treatments did not work as hoped.

Bluestone believes that it is achieving compliance at outlet 006, as demonstrated by a trend of declining violations shown its DMRs. During March – June 2020 outlet 006 levels have been less than 4.7 ug/l. and during the last 14 months 10 of 14 samples showed results of less than 4.7 ug/l monthly average.

WV DEP and West Virginia law (*see* WV Code of State Regulations, Title 47, Series 2, Appendix E) allow selenium at mine sites to be measured by an alternative approach, one that eschews numeric selenium values in water column samples; that is, by measurement of selenium found in aquatic organisms living in the receiving streams. Under this protocol, fish (or other aquatic organisms) are collected from receiving streams, processed and the remains are laboratory tested to determine levels of selenium within the fish tissue. For this protocol fish may be collected only during specific time periods:  August through October and December through March. In the summer 2019 Bluestone applied for and was granted DEP permission to perform fish tissue analysis and sampling. Defendant's vendors collected fish from receiving waters in September and December 2019.

The test results showed that selenium effluent discharges from outfalls 005, 007 and 008 would be compliant as measured by the fish tissue protocol. Consequently Bluestone applied for modifications to its permit to allow fish tissue data collection and reporting in lieu of numeric

8

water column valves. WVDEP issued a draft NPDES permit on July 1 and 10, 2020 which provides for fish tissue sampling for outfalls 005, 007 and 008. The draft permit has been published, and time for public comment will expire August 12, 2020.

The above fish tissue studies demonstrate that outfalls 005, 007 and 008 will routinely be in compliance going forward. The fish tissue analysis also shows that Bluestone probably would have been in compliance as of June 2018, if defendants had sought and obtained permit modifications authorizing fish tissue data for those outfalls. Extrapolating the fish data backwards strongly suggests Bluestone would have been in compliance with the permit. Moreover, the fish tissue data proves that alleged selenium pollution from outlets 005, 007 and 008 was at relatively low levels. In other words, the selenium violations were not great, even though exceeding the numeric water column values on occasions. It also bears noting that fish tissue data is a superior measure of the quality of the water and the effects on living organisms, as compared to numeric water column measurements.

Bluestone continues to focus on outlet 006 to decide the best approach to compliance and is considering water management solutions: e.g., pumping water up the hill for dispersal on the surface, following an appropriate and efficient schedule; or installation of a biocell (not a bioreactor), which is a surface impoundment supplied with organic materials (e.g., hay, manure) and which, through biological action, reduces selenium). It may also be found that the water flowing to outlet 006 contains a generally declining amount of selenium. Such a decline is due to the work Bluestone undertook (removal of the refuse pile and work on the ditches and sumps), and naturally occurring factors affecting selenium. Therefore, it may be likely that outlet 006 may not need any new remedial measures.

In summary, Bluestone will achieve compliance for outlets 005, 007 and 008 with the

permit modifications, and will soon achieve compliance for outlet 006. Plaintiffs will criticize the time Bluestone has taken to reach compliance. However, it is relevant (to consideration of penalties) that if defendant had sought permit modifications earlier, then it would have avoided incurring $406,000 in stipulated penalties. Those penalties constitute sufficient punishment for the violations. As for economic benefit to violator, Bluestone has gained little or no economic benefit. Bluestone could have sought permit modifications for the fish tissue protocol, which cost it only the expenses of the fish study, fish collection and lab analysis. The costs for pumping outlet 006 water uphill will be presented at trial. Defendant will also present evidence proving the costs for installation of a biocell at A&G Coal in Virginia, a topic discussed in depositions in this case. Those costs were approximately $6000 for design work and less than $90,000 for construction.

**(5) Plaintiffs' Listing of Contested Issues of Fact and Contested Issues of Law**

a. Whether Bluestone should be assessed a substantial civil penalty under the Clean Water Act, 33 U.S.C. §§ 1365(a) and 1319(d), for its violations of the terms and conditions of its WV/NPDES Permit.

b. Whether Bluestone should be enjoined to compel compliance with the Clean Water Act, 33 U.S.C. § 1365(a), and SMCRA, 30 U.S.C. § 1270(a), and required to install selenium treatment systems as soon as practicable at each outlet with continuing selenium violations.

**(5) Defendant's Listing of Contested Issues of Fact and Contested Issues of Law**

a. Whether Bluestone should be assessed any civil penalty under the Clean Water Act., and if so, the appropriate amount.

b. Whether Bluestone should be enjoined to compel compliance with the Clean

Water Act, 33 U.S.C. § 1365(a), and SMCRA, 30 U.S.C. § 1270(a), and required to install any selenium treatment system at any outlet with continuing selenium violations.

**(6) Stipulations**

None.

**(7) Suggestions for the Avoidance of Unnecessary Proof and Cumulative Evidence**

If Plaintiffs' motion for partial summary judgment is granted, there will be no need to hear evidence on jurisdiction and liability, and the trial will be limited to the issues of the amount of civil penalties and the scope and timing of injunctive relief.

**(8) Special Procedures**

At this time, Plaintiffs and Defendant do not foresee any potentially difficult or protracted aspects of the trial that may involve complex issues, multiple parties, difficult legal questions or unusual proof problems that would require special procedures.

**(9) Voir Dire Questions**

Bluestone has requested a jury trial. Doc. #61 at 4. Under the Clean Water Act, the defendant is only entitled to a jury trial on liability issues, not on the amount of civil penalties. *Tull v. United States,* 481 U.S. 412, 427 (1987). Thus, if Plaintiffs' motion for summary judgment on liability is granted, this Court will determine the amount of civil penalties without a jury. SMCRA does not authorize civil penalties. Injunctive relief under the Clean Water Act and SMCRA is an equitable, not a legal, claim and therefore is also decided by the Court without a jury. *Tull,* 481 U.S. at 422.

**(9) Voir Dire Questions – Defendants**

None. Trial or hearing to the Court.

**(10) Estimate of the Number of Trial Days Required**

Depending on what issues remain unresolved at trial, Plaintiffs and Defendant estimate that the trial will require approximately two (2) or (3) days.

**(11) Required Courtroom Technology**

The parties will use the Court's ELMO system and laptop display to present their trial exhibits, and will also provide the Court with binders containing their joint and separate exhibits.

**(12) Other Relevant Matters for Pretrial Discussion or Disposition**

Plaintiffs reserve the right to raise such other matters with Defendant and the Court should Plaintiffs become aware of them before trial.


Respectfully submitted,

/s/Michael Becher_____
Michael Becher
Derek Teaney
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
mbecher@appalmad.org

James M. Hecker, DCBN 291740
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
jhecker@publicjustice.net
*Counsel for Plaintiffs*

**AND**

 /s/ S. Benjamin Bryant_____
Michael W. Carey, WVSB No. 635
S. Benjamin Bryant, WVSB No. 520
Carey, Douglas, Kessler & Ruby, PLLC
707 Virginia Street, East, Suite 901
P.O. Box 913
Charleston, WV 25323
(304) 345-1234

mwcarey@csdlawfirm.com
sbbryant@csdlawfirm.com
*Counsel for Defendant*

IT IS SO ORDERED this \_\_\_\_ day of _____, 2020.

_____

David A. Faber

Senior United States District Judge