IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**OHIO VALLEY ENVIRONMENTAL**
**COALITION, WEST VIRGINIA**
**HIGHLANDS CONSERVANCY,**
**APPALACHIAN VOICES, and**
**THE SIERRA CLUB,**

        **Plaintiffs,**

v.                                                                                  **Civil Action. No. 1:19-cv-00576**
                                                                   **Judge David A. Faber**

**BLUESTONE COAL CORPORATION,**

        **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR STAY PENDING RESOLUTION OF PROPOSED CONSENT ORDER WITH WVDEP

Bluestone Coal Corporation submits this memorandum in support of its motion for stay pending resolution of a proposed Consent Order with WVDEP filed herewith. The Court should grant this motion for the reasons stated below.

On June 4, 2019, Plaintiffs mailed notice of their intent to file suit in sixty days against Bluestone Coal Corporation for selenium effluent violations at four outlets at the Red Fox mine, subject to WV/NPDES Permit No. WV1006304. As required by law, the notice was sent to the defendant, the United States Environmental Protection Agency, the Office of Surface Mine Reclamation and Enforcement and the WVDEP. Less than 60 days later, on July 11, 2019, the

WVDEP issued an "Administrative Civil Penalty Assessment Notice" (the "Administrative Assessment") along with a "PROPOSED Consent Order" to Bluestone Coal Corporation for violations of Chapter 22, Article 11, of the West Virginia Code. Exhibit 1. The Administrative Assessment addressed violations of several WV/NPDES permits including WV1006304, which is at issue in this case. More particularly, the DEP assessed civil penalties for daily maximum and monthly average violations of selenium effluent limits at outlets, 005, 006, 007 and 008 from June 30, 2018 through December 31, 2018. In addition, it proposed stipulated penalties for selenium violations at those outlets from January 1, 2019 through the effective date of the Proposed Consent Order.[1] The very same selenium violations are at issue in this case.

On August 6, 2019, the Plaintiffs filed the instant action [ECF 1]. Notwithstanding the above-referenced Administrative Assessment initiated by the DEP, Plaintiffs aver in their Complaint that after they sent their notice of intent to file suit on June 4, 2019, that:

> More than sixty days have passed since the notice letters were sent. EPA, OSMRE, and/or the WVDEP have not commenced or diligently prosecuted a civil or criminal action to redress the violations. Moreover, neither EPA nor WVDEP has commenced an administrative penalty action under 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to adequately redress the violations within the notice letters.

Complaint at ¶6. There is no doubt that at some point, Plaintiffs were aware of the existence of DEP's Administrative Assessment and Proposed Consent Order as they made it an exhibit and questioned Steve Ball (General Counsel of Bluestone Coal Corporation) about it in his deposition on February 20, 2020. Exhibit 1.

---

[1] On October 2, 2019, the DEP issued a revised "Administrative Civil Penalty Assessment Notice" and "PROPOSED Consent Order" which added additional violations to those contained in the July 11, 2019 version.

Thereafter, on May 8, 2020, the Plaintiffs filed their "Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment on Jurisdictional and Liability Issues" [ECF 55]. Therein, the Plaintiffs state that:

> On June 4, 2019, Plaintiffs notified Bluestone of their intent to file a citizen suit against it under both the CWA and SMCRA for violations of its selenium limits. Neither WVDEP nor EPA has filed the type of judicial or administrative penalty proceeding against Bluestone that would preclude Plaintiffs' citizen suit.[2]

In support of their Motion for Summary Judgment, the Plaintiffs also attached the Declaration of one of Plaintiffs' counsel wherein he states more broadly: "To the best of my knowledge, U.S. EPA, the Office of Surface Mining Reclamation and Enforcement, and the West Virginia Department of Environmental Protection, **have not taken any action** to redress the violations listed in the notice letters." (emphasis added) [ECF 54-9]. The violations listed in the notice letter span from July 2018, through February 2019. Contrary to the assertion in the Declaration, however, all of the violations listed in Plaintiffs' Notice of Intent to File Suit are addressed in the "Administrative Civil Penalty Notice" and "PROPOSED Consent Order".

Today, September 4, 2020, Bluestone Coal Corporation and the WV DEP agreed to the terms

---

[2] Under 33 U.S.C. § 1365(b)(1)(B), citizens suits are barred where "the Administrator or State has commenced and is diligently prosecuting a civil or criminal action . . . to require compliance with the standard, limitation or order" at issue in the citizen suit. It is an open question in the Fourth Circuit whether an administrative enforcement action similar to the "Administrative Civil Penalty Assessment Notice" pursued administratively by the DEP constitutes a "civil . . . action" under the statute. The Third Circuit has ruled that it does; the Second and Ninth Circuits have held that the statute only applies to actions filed in the Courts. The Fifth Circuit held that the corresponding citizens' suit provision of the Clean Air Act also requires a government enforcement action be filed in a court to serve preclusion purposes. *See* Baughman v. Bradford Coal Corp., 592 F2d 215, 217-19 (3d Cir.), *cert. denied*, 441 U.S. 961 (1979); Friends of the Earth v. Consolidated Rail Corporation, 768 F2d 57 (2d Cir. 1985); Sierra Club v. Chevron, U.S.A., 834 F2d 1517 (9th Cir. 1987); Texans United for a Safe Economy Education Fund v. Crown Central Petroleum Corp., 207 F3d 789, 794-95 (5th Cir. 2000).

of a draft Consent Order resolving the DEP Administrative Assessment issued to Bluestone. Exhibit 2.[3] Pursuant to state law, notice of the draft Consent Order will be published seeking comments from the public. The deadline to submit comments will be 30 days after publication of a Class II Legal Advertisement, after which the DEP must reach a final decision within 30 days. Upon issuance of a Final Order, the defendant and/or any person who submitted comments may appeal said order to the West Virginia Environmental Quality Board concerning the assessment of a civil administrative penalty. W.V. Code § 22-11-22a(b)(4)-(6).

Upon the anticipated final approval of the Consent Order, Bluestone submits this case should be dismissed as moot. As it relates to the four outlets at issue here, under the terms of the draft Consent Order agreed to with WVDEP, Bluestone will: (1) pay a civil penalty for past violations[4], and (2) pay stipulated penalties for future violations. Moreover, in general, the draft Consent Order requires that Bluestone submit a Corrective Action Plan to address effluent limit violations at 15 outlets under seven permits, including the selenium violations under WV1006304. However, the draft Consent Order specifically recognizes that Bluestone has pending a NPDES permit reissuance which would assign semi-annual selenium fish tissue compliance monitoring for Outlets 005, 007 and 008 and that Bluestone has demonstrated selenium compliance at Outlet 006. Accordingly, if the Permit is approved prior to the final entry of the Consent Order, Bluestone will not have to submit a Corrective Action Plan for Permit WV106304. Exhibit 2, Order of Compliance ¶ 3.

---

[3] The terms of the draft Consent Order were agreed to today as set forth in Exhibit 2. The DEP will forward a certified copy to Bluestone for signature. Under the law, it remains a draft Consent Order until the Secretary issues the final order. W.V. Code § 22-11-22a(b).

[4] Under the Consent Order, Bluestone has agreed to pay $125,000 in penalties for the past violations up to September 3, 2020. That is the maximum amount that can be assessed administratively by the DEP under state law. W.V. Code § 22-11-22a(b)(1).

In Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC, 2008 WL 5377799, 69 ERC 1345, the United States District Court for the Southern District of West Virginia addressed whether a consent decree entered into by the permit holder and the DEP rendered a pending citizen suit moot.[5] The facts of Hobet are very similar to the instant case. After OVEC sent Notices of Intent to file suit, the West Virginia DEP filed enforcement actions against Hobet in relation to selenium discharge limits under four NPDES permits in 2006 and 2007, in the Circuit Court of Boone County. After several months of inaction in that case, OVEC filed suit in the United States District Court for the Southern District of West Virginia contending the state was not diligently prosecuting its enforcement action.  Thereafter, Hobet notified the District Court that it had entered into a settlement and had drafted a proposed consent order with the DEP in the Boone County case.  In response, the District Court ordered Hobet to file the Consent Order and any supplemental legal authority to support its motion to dismiss within fourteen days of its entry in Boone County Circuit Court.  Id., *3.

Upon completion of the filings of the parties, the District Court determined that at the time OVEC filed the case, the Court had jurisdiction because the circuit court docket revealed the DEP action was not being diligently prosecuted.  The Court recognized that even though jurisdiction was proper, the case could become moot upon the settlement of an enforcement action with the state regulatory agency involving the same violations.  OVEC objected to Hobet's motion to dismiss for mootness claiming that the Consent Decree allowed too long a schedule for compliance and too lenient civil penalties. Id., *4, *6.  However, the Court noted that as it relates to injunctive relief, it was not its place to "substitute its own plan for compliance in place of WVDEP's without evidence

---

[5] For the convenience of the Court, the Hobet opinion is attached as Exhibit 3.

that the agency's plan was ill-conceived or developed in bad faith." Id., *7. The Court determined the "proper standard was whether there existed 'a realistic prospect that violations alleged in [plaintiffs] complaint will continue notwithstanding the consent decree.'" Id., *7. Here, the DEP has agreed that if the pending NPDES permit renewal that will allow semi-annual fish tissue analysis to demonstrate compliance for Outlets 005, 007 and 008 is approved, no further Corrective Action Plan will be required. As to Outlet 006, the DEP has recognized that Bluestone has demonstrated compliance at Outlet 006.

In terms of civil penalties, the District Court noted that "[b]ecause of the discretion granted to state governments as primary enforcers of the act, various courts have been reluctant to allow collateral attacks on civil penalties contained within a binding consent order." Moreover, the District Court stated that even though the civil penalties are less than what the plaintiffs would like, that is not a basis for allowing the case to proceed because "[i]f citizens could sue for civil penalties that the government chose to forgo, they would usurp the primary enforcer role and undermine the state's discretion." However, the District Court further stated that if "the civil penalty is not sufficient to have a deterrent effect" the Court can permit the citizen suit to proceed. Id., *9.

Under the draft Consent Order with DEP, in its current form, Bluestone will be subject to both the federal and state consent orders requiring the payment of stipulated penalties for any future violations of the NPDES permit. In this regard, under the draft Consent Order, Bluestone will have to pay $1,000 for every daily maximum effluent violation and $3,000 for every monthly average effluent violation. However, the draft Consent Order allows Bluestone to offset the state penalties for amounts paid for the same effluent violations to the EPA up to 10% of the DEP penalty. Exhibit 2, Order of Compliance, ¶ 8. Under those circumstances, Bluestone would pay $900 for daily

maximum effluent violations and $2,700 for average monthly effluent violations. Under the federal consent decree, Bluestone will have to pay $2,500-$3,500 for every daily maximum effluent violation and $3,000-$4,500 for every monthly average effluent violation. In addition, Bluestone is subject to additional penalties of $1,000 – $2,000 for persistent violations. Under those parameters, Bluestone is facing potential penalties up to $8,800 for daily effluent violations (2 semi-monthly violations x $4,400) and $7,200 for monthly average effluent violations, each month, plus an additional $1,000 - $2,000 per violation, potentially, for persistent violations. Finally, under the draft Consent Order, Bluestone must pay $10,000 for each violation of the semi-annual fish tissue limits. Id.

For the past violations through June 30, 2020, Bluestone has been assessed $414,500 and paid $379,500 for the selenium permit violations for the outlets at issue in this case under the federal consent decree. In addition, as noted, Bluestone has agreed to pay $125,000 to resolve the penalties for all of the violations at issue under the draft Consent Order with DEP, which is the maximum DEP can assess under West Virginia law.

Given the substantial amount of money that Bluestone has paid and agreed to pay, as well as the substantial stipulated penalties it has agreed to pay for future violations, combined with its obligation to achieve compliance under the draft Consent Order, and the agreement of DEP to eliminate a corrective action plan for WV1006304 upon renewal of the permit authorizing fish tissue analysis, there is no realistic concern that Bluestone's violations will continue.

Based on all of the above, the Defendant submits that upon finalization of the draft Consent Order with DEP, this case will be moot. Therefore, Bluestone respectfully requests that the Court stay all proceedings in this matter until a final decision is made by DEP whether to execute the

proposed consent order with Bluestone that will address the violations that are subject to this action.[6]

Respectfully submitted,

BLUESTONE COAL CORPORATION,

By Counsel:

/s/ Michael W. Carey
Michael W. Carey, WVSB No. 635
S. Benjamin Bryant, WVSB No. 520
Carey, Douglas, Kessler & Ruby, PLLC
707 Virginia Street, East, Suite 901
P.O. Box 913
Charleston, WV 25323
(304) 345-1234
mwcarey@csdlawfirm.com
sbbryant@cdkrlaw.com
***Counsel for Defendant***

---

[6] The defendant also respectfully requests that this matter be stayed because of the ongoing Covid-19 pandemic. As a practical matter, the conditions in our state have not improved since the Court continued the trial in this matter from August 5, 2020, until September 23, 2020. As such, defendant's counsel's concerns remain.