IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,

       Plaintiffs,

    v.                                    Civil Action No. 1:19-cv-00576

BLUESTONE COAL CORPORATION,

       Defendant.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR STAY PENDING
RESOLUTION OF PROPOSED CONSENT ORDER WITH WVDEP**

**INTRODUCTION**

Defendant argues that the Court should stay all proceedings in this case because the West

Virginia Department of Environmental Protection ("WVDEP") has issued a proposed administrative

consent order ("ACO") that will penalize Defendant for violations of fourteen of its Clean Water Act

("CWA") permits, including the permit at issue in this action for its Red Fox mine. Defendant frames

its argument based on mootness. Defendant contends that WVDEP's ACO is equivalent to a judicial

consent decree that will resolve, or have a controlling effect on, all of Plaintiffs' claims regarding

Defendant's permit violations at its Red Fox mine. Defendant asks the Court to stay the case until

WVDEP finalizes the ACO and then dismiss Plaintiffs' claims as moot.

As explained in more detail below, Defendant's argument is baseless. A self-dealing

administrative order from Governor Justice's environmental agency to one of his family's coal

companies can neither preclude nor moot this action. It will neither resolve nor have a controlling

effect on Plaintiffs' claims in this case. Consequently, a stay of this case is not warranted.

The only possible effect that WVDEP's ACO could have on this case would be if this Court were to reduce its penalty because Defendant already paid a penalty for the same violations to WVDEP. At this time, that effect is purely theoretical, because Defendant has not paid such a penalty. But even if Defendant did pay WVDEP $125,000 after the proposed ACO became final, the ACO makes it impossible to allocate any part of that amount to specific violations. The ACO identifies 495 violations of fourteen of Defendant's permits from January 2016 through June 2020. CM/ECF # 83-2 at 12-38. WVDEP calculated a $1,307,900 "base penalty" for those violations, then added $840,800 in "base penalty adjustments" for a total penalty of $2,148,700. Id. at 34, 38. WVDEP then reduced the penalty to $125,000—a discount of 94%—because that is the statutory limit of its administrative penalty authority. Id. at 38 (citing W.V. Code § 22-11-22a(b)(1)). WVDEP did not explain how that reduction was spread over the 495 violations of fourteen permits. It is therefore impossible to identify and give Defendant any specific credit for its payment of a penalty for any particular violation of any particular permit. Stated otherwise, because WVDEP only proposed to assess 6% of its calculated penalty, and Defendant's selenium violations at its Red Fox mine comprise only 22% of the cited violations, it is speculative whether the ACO proposes any penalty at all for those violations.

Consequently, a stay is not warranted because Defendant has not shown that the ACO will have any significant or controlling effect on this case. Defendant has not cited a single instance where a court has stayed a citizen enforcement action on the eve of trial to allow the polluter to reach a better deal with a governmental enforcement agency. Indeed, federal courts routinely reject delay efforts like those of Defendant.[1] A federal court has an obligation to exercise the jurisdiction conferred by a

---

[1] See Domino v. Didion Ethanol, LLC, Civ. No. 09-cv-213, 2010 WL 1372660, at *2 (W.D. Wis. Apr. 6, 2010); Long Island Soundkeeper Fund, Inc. v. New York City Dep't of Envtl. Prot., 27 F. Supp. 2d 380, 385 (E.D.N.Y 1998); Louisiana Envtl. Action Network, Inc. v. Evans Cooperage Co., Civ. No. 95-3002, 1997 WL 824310, at *6 (E.D. La. Sept. 30, 1997); PIRG of NJ v. Yates Industries, Inc., 757 F. Supp. 438, 445 (D.N.J.1991); Sierra Club v. U.S. Dep't of Energy, 734 F. Supp. 946, 951–52 (D. Colo. 1990); Brewer v. City of Bristol, Tenn., 577 F. Supp. 519, 529 (E.D. Tenn. 1983).

citizen suit provision and reject requests for stays in circumstances like these. <u>New York Pub. Interest Res. Grp., Inc. v. Limco Mfg. Corp.</u>, 697 F. Supp. 608, 611–12 (E.D.N.Y. 1987). To do otherwise would be to allow what Congress did not want to allow regarding enforcement of environmental law by citizens:

> It seems to be a <u>very dirty trick</u> to let someone carry the ball all the way through, whether it is a citizen or the Natural Resource Defense Fund, Wilderness Society, whatever it is—they pick up the ball, carry it all the way down the field, and then at the 5-yard line the . . . Government comes in and shrugs its massive shoulders and says "I am taking over here." . . . To me that seems an unfairness.

136 Cong. Rec. 5322, 5628 (Mar. 26, 1990) (comments of Sen. Chafee; emphasis added).[2]

The case most similar to this one is <u>Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC</u>, 141 F. Supp. 3d 428, 449–53 (M.D.N.C. 2015). That case, like this one, involved a citizen suit for NPDES permit violations. The defendant argued that the court should stay the case because the state environmental agency had sued it in state court for related violations. The court denied the stay because resolution of the state court action would not resolve the plaintiffs' claims for civil penalties. <u>Id.</u> at 453. The court also found that a stay would allow the polluter's violations to persist, would potentially harm the environment, and would unnecessarily interfere with the citizens' right to have their case decided without further delay. <u>Id.</u> at 452. Those same considerations apply here.

---

[2] In that instance, Congress rejected an amendment to the Clean Air Act citizen suit provision that would have allowed the United States to intervene at any time and substitute itself for the citizen plaintiffs with regard to any claim for civil penalties. 136 Cong. Rec. at 6442.  Defendant is asking this Court to let WVDEP take over this case long after it was filed and snuff it out.

**ARGUMENT**

I.   **ADMINISTRATIVE ORDERS DO NOT CARRY THE SAME WEIGHT AS JUDICIAL ORDERS IN THE CITIZEN SUIT CONTEXT.**

To understand how feeble Defendant's argument for a stay is, it is useful first to understand the nature of the ACO. It is an <u>administrative</u> order; it is not a <u>judicial</u> order. Courts have coercive power. They can issue injunctions and enforce violations of their orders with contempt power and coercive penalties. WVDEP has no coercive power. It has to go to court to obtain such relief. W. Va. Code §22-11-22a(a)(3). Moreover, WVDEP's administrative penalty authority is limited to $125,000 <u>per order</u>. W. Va. Code §22-11-22a(b)(1). In contrast, this Court can impose a penalty up to $55,800 <u>per violation</u>. 40 C.F.R. § 19.4; 85 Fed. Reg. 1751 (Jan. 13, 2020). As a result, the proposed ACO on which Defendant relies is fundamentally different from a judicial order when it comes to its potential preclusive effect on this citizen suit and the applicable test for mootness.

A.   **The ACO Cannot Preclude This Citizen Suit as a Matter of Law.**

As this Court is aware from its rejection of Defendant's position that its 2016 federal consent decree precludes this action, judicial actions can in some circumstances limit a citizen's right to bring its own enforcement action. CM/ECF #60 at 15. Although Congress contemplated administrative enforcement actions like the ACO, the effects of such actions on citizen suits are much more limited than the potential effects of a judicial action. <u>Compare</u> 33 U.S.C. §1319(g) <u>with</u> 33 U.S.C. §1365(b). For the following reasons, the proposed ACO—even if finalized—does not preclude this citizen suit.

1.   **The Administrative Preclusion Provision in 33 U.S.C. § 1319(g) Does Not Apply to the ACOs.**

Defendant insinuates that its proposed deal with WVDEP might preclude this citizen suit under 33 U.S.C. §1319(g). CM/ECF #84 at 2–3. Defendant further insinuates that Plaintiffs made misstatements in their complaint, their motion for summary judgment, and a declaration in support of their motion for summary judgment about WVDEP's proposed July 2019 and September 2020

4

orders and their effect under Section 309(g) of the Clean Water Act. Id. If Defendant believed its insinuations, it would have moved to dismiss or for summary judgment on that basis. It has not. Nor does it really even now expressly argue that Section 309(g) precludes this action. That is because it does not. Plaintiffs stand by their statements in their complaint and in their counsel's declaration, and Defendant's suggestions of malfeasance by Plaintiffs and their counsel is specious.

> **a.   WVDEP's Proposed ACOs Cannot Bar This Action Because They Were Not Commenced Prior to the Filing of Plaintiffs' 60-Day Notice Letter.**

WVDEP's administrative actions were commenced well after plaintiffs' notice letter was filed. That alone would doom a preclusion argument based on the ACOs.

Section 309(g)(6)(B), 33 U.S.C. 1319(g)(6)(B), provides:

(B) The limitations contained in subparagraph (A) on civil penalty actions under section 505 of this Act shall not apply with respect to any violation for which –

* * *

> (ii) notice of an alleged violation of section 505(a)(1) of this Act has been given in accordance with section 505(b)(1)(A) prior to commencement of an action under this subsection and an action under section 505(a)(1) with respect to such alleged violation is filed before the 120th day after the date on which such notice is given.

33 U.S.C. §1319(g)(6)(B) (emphasis added). In this action, Plaintiffs sent their notice letter on June 4, 2019, and filed their complaint on August 6, 2019, less than 120 days later. CM/ECF Nos. 1, 54-9. WVDEP's two proposed administrative consent orders were not commenced until July 11, 2019, and September 2, 2020. CM/ECF Nos. 83-1 & 83-2. Consequently, WVDEP's administrative proceeding was not commenced prior to Plaintiffs' notice letter and therefore cannot bar Plaintiffs' action.[3]

---

[3] See, e.g., Black Warrior Riverkeeper, Inc. v. Birmingham Airport Auth., 561 F. Supp. 2d 1250, 1253 (N.D. Ala. 2008); Altamaha Riverkeepers v. City of Cochran, 162 F. Supp. 2d 1368, 1373 (M.D. Ga. 2001); Community Ass'n for Restoration of Environment v. Henry Bosma Dairy, Civ. No. 98-3011, 2001 WL 1704240 (E.D. Wash. 2001); Kara Holding Corp. v. Getty Petroleum Mktg., Inc., 67 F. Supp. 2d 302, 309 (S.D.N.Y. 1999); Louisiana Env'tl Action Network, Inc. v. Evans Cooperage Company,

### b. The ACO Cannot Preclude This Citizen Suit Because West Virginia Law is Not Comparable to CWA Section 309(g).

Not only was WVDEP's administrative action too late in time to preclude this citizen suit, it was also not commenced under a state law comparable to Section 309(g) of the Clean Water Act. Section 309(g)'s preclusion provision applies only if a state is acting under a state law provision comparable to Section 309(g). 33 U.S.C. §1319(g) (6)(a)(ii). In Sierra Club v. Powellton Coal Co., LLC, this Court held that West Virginia's administrative penalty provisions are not comparable to Section 309(g) "because West Virginia law does not provide for the assessment of administrative penalties without the violator's consent" and, therefore, administrative penalty actions by WVDEP cannot preclude CWA citizen suits. 662 F. Supp. 2d 514, 530 (S.D. W. Va. 2009). Although the relevant code sections have changed since the Powellton decision, the requirement for the violator's consent has not. Judge Copenhaver based his conclusion in Powellton in part on a West Virginia regulation that provided that "[t]he administrative proceeding may be terminated at any time and for any reason by any party involved in the proceeding." Id. at 529 (quoting W. Va. Code R. §47-1-5.4). That provision is still present in West Virginia law today, though it has been recodified at W. Va. Code R. §47-30B-5.4. As a result, West Virginia's administrative penalty proceedings are still not comparable to Section 309(g) because they require the consent of the polluter.

For that reason, Plaintiffs allegation in Paragraph 6 of the complaint in this action is substantiated and well-pled, notwithstanding Defendant's baseless contention to the contrary. In that paragraph, Plaintiffs alleged that "neither EPA nor WVDEP has commenced an administrative penalty action under 309(g) of the CWA, 33 U.S.C. §1319(g), or a comparable state law to adequately redress the violations within the notice letters." CM/ECF #1, ¶6. Because WVDEP's administrative

---

Inc., No. Civ.A. 95–3002, 1997 WL 824310, at *5 (E.D. La. Sept. 30, 1997); Sierra Club v. Hyundai America, Inc., 23 F. Supp. 2d 1177, 1179-82 (D. Or. 1997); Ohio Env'tl Council v. Vari–Seal Mfg. Corp., No. C88–3299, 1989 WL 106710, at *1 (N. D. Ohio Apr. 13, 1989).

proceedings are not comparable to Section 309(g), Defendant fails in its effort to contradict Paragraph 6 of the Complaint by pointing to proposed July 2019 order.

The statement in Plaintiffs' summary judgment memorandum with which Defendant's take issue on page 3 of their stay motion memorandum is similarly well-founded. Plaintiffs stated in their memorandum that, "[o]n June 4, 2019, Plaintiffs notified Defendant of their intent to file a citizen suit against it under both the CWA and SMCRA for violations of its selenium limits. Neither WVDEP nor EPA has filed the type of judicial or administrative penalty proceeding against Defendant that would preclude Plaintiffs' citizen suit." CM/ECF #55 at 6. Because, as noted below, WVDEP's administrative proceedings are not "in a court" and, as noted above, West Virginia law is not comparable to Section 309(g), WVDEP's proposed July 2019 order was not the type of proceeding that would preclude this citizen suit.

Defendant's suggestion that Plaintiffs' counsel's declaration was inaccurate is equally specious. That declaration averred, "[t]o the best of my knowledge, U.S. EPA, the Office of Surface Mining Reclamation and Enforcement, and the West Virginia Department of Environmental Protection, have not taken any action to redress the violations listed in the notice letters." CM/ECF #54-9, ¶6. Proposing an administrative order does not redress a violation of federal law; issuing a final order might. In any event, Plaintiffs' counsel's statement was based in part on the sworn testimony of Defendant's Vice-President and General Counsel Stephen Ball. In his deposition, Mr. Ball was presented with the proposed July 2019 order and he testified that he was only familiar with it because of the deposition notice and that others he talked to about it, including Defendant's President Jay Justice, were also unfamiliar with it. Stay Response Ex. 1, Tr. at 51. Mr. Ball further stated that "nothing was ever done with this document specifically, but a separate Payment Plan Agreement was entered into" between WVDEP and several of Defendant's affiliates regarding annual permit fees. Id. at 51–52. Plaintiffs' counsel drew a fair conclusion from Mr. Ball's testimony that, because "nothing was

ever done" with the proposed order, that WVDEP had not taken any action to redress the violations at issue.

c.     **An Administrative Order Can Never Preclude a Citizen Suit Under CWA § 505(b).**

Defendant also insinuates, but never expressly maintains, that its proposed deal with WVDEP might preclude this citizen suit under 33 U.S.C. §1365(b)(1)(B). CM/ECF #84 at 3 n.2. Again, Defendant is wrong.

The CWA provision on which Defendant relies bars citizen suits if the federal or state government has filed "a civil action in a court of the United States or a State" relating to the same claims. 33 U.S.C. §1365(b)(1)(B). Defendant purposefully omitted the key statutory phase—in a court of the United States or a State—in an effort to hide the baseless nature of its contention. CM/ECF #84 at 3 n.2. Defendant's argument depends entirely on the proposition that an administrative proceeding can be "a civil action in a court." That argument is inconsistent with the plain language of the statute and with all of the recent court decisions construing that language. Defendant further suggests that whether an administrative proceeding can have a preclusive effect under 33 U.S.C. §1365(b)(1)(B) is an "open question in the Fourth Circuit." CM/ECF #84 at 3 n.2. But based on the statutory language and the subsequent history of the sole case supporting Defendant's position, it is not an open question anywhere.

Congress said that only a "civil action in a court of the United States or a State" by state or federal governments could preclude a citizen suit under the Clean Water Act. 33 U.S.C. § 1365(b)(1)(B). Those words—"a civil action in a court"–only refer to judicial enforcement actions. Plaintiffs' citizen suit is therefore not precluded by Defendant's proposed administrative deal with WVDEP.

Every decision on that issue since 1985 supports that conclusion. The courts have held that "the plain meaning of 'court of the United States or a State' excludes administrative actions." Texans United v. Crown Central Petroleum Corp., 207 F.3d 789, 795 (5th Cir. 2000) (construing the CAA §

8

7604(b)(1)(B)). The Second, Seventh and Ninth Circuits have also adopted literal interpretations of the identical language in § 1365(b)(1)(B) of the CWA and 42 U.S.C. § 6972(b)(2)(C) of RCRA and have limited its preclusive effect to judicial enforcement actions. <u>Sierra Club v. Chevron U.S.A., Inc.</u>, 834 F.2d 1517, 1525 (9th Cir. 1987) (CWA); <u>PMC v. Sherwin-Williams Co.</u>, 151 F.3d 610, 619 (7th Cir. 1998) (RCRA); <u>Friends of the Earth v. Consolidated Rail Corp.</u>, 768 F.2d 57, 62 (2d Cir. 1985) (CWA). Many other district courts have adopted the same approach, including at least one within the Fourth Circuit. <u>Maryland Waste Coalition v. SCM Corp.</u>, 616 F. Supp. 1474, 1481 (D. Md. 1985); <u>Murray v. Bath Iron Works Corp.</u>, 867 F. Supp. 33, 42 (D. Me. 1994); <u>City of Toledo v. Beazer Materials and Services</u>, 833 F. Supp. 646, 657 (N.D. Ohio 1993); <u>Coalition for Health Concern v. LWD, Inc.</u>, 834 F. Supp. 953, 955-956 (W.D. Ky. 1993), <u>rev'd and rem. On other grds</u>, 60 F.3d 1188 (6th Cir. 1995); <u>Lykins v. Westinghouse Electric Corp.</u>, 715 F. Supp. 1357, 1359 (E.D. Ky. 1989).

Defendant attempts to resurrect a 41-year-old decision, issued before Congress's 1987 enactment of §1319(g)(6), in support of its position: <u>Baughman v. Bradford Coal Co., Inc.</u>, 592 F.2d 215 (3rd Cir.), <u>cert. denied</u>, 441 U.S. 961 (1979). Defendant misrepresents the holding in <u>Baughman</u>, contending that the Third Circuit has "ruled" that "an administrative enforcement action . . . constitutes a 'civil . . . action' under" 33 U.S.C. §1365(b)(1)(B). But in <u>Baughman</u> the Third Circuit only stated that, as a theoretical matter, some administrative actions <u>might</u> be the functional equivalent of a court action, but only if the administrative agency had the powers and procedures of a court. 592 F.2d at 217–19. However, the Third Circuit's actual holding was that the administrative agency at issue "is not a 'court of . . . a State.'" <u>Id.</u> at 217.

Regardless of its holding, <u>Baughman</u>'s functional test is erroneous and obsolete. Congress's 1987 enactment of 33 U.S.C. §1319(g)(6) superseded it. <u>Pub. Interest Research Grp. of New Jersey,</u>

Inc. v. Witco Chem. Corp., Civ. No. 89-cv-3146, 1990 WL 66178, at *6 (D.N.J. May 17, 1990).[4] Indeed, the Third Circuit itself has expressed doubts that Baughman is still good law. Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1264 (3d Cir. 1994).

In any event, WVDEP would fail the Baughman test because it is not the functional equivalent of a court. As discussed above, WVDEP is not the functional equivalent of a court because it lacks coercive power and its authority to assess administrative penalties is capped at $125,000—no matter the frequency or severity of the violations at issue.

## B. Defendant Has Proposed The Wrong Legal Test for Whether the ACO Moots This Action.

Relying on this Court's decision in Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC ("Hobet I"), Civ. No. 3:08-cv-00088, 2008, WL 5377799 (S.D. W. Va. Dec. 18, 2008), Defendant suggests that a stay is warranted because, once it is finalized, the proposed ACO will render this citizen suit moot because there will be no realistic prospect that Defendant's violations will continue. CM/ECF #84 at 5–7. As explained throughout this brief, Hobet I is distinguishable on a number of points. But it is clearly inapplicable on the threshold question of the appropriate mootness test. In Hobet I, this Court applied the realistic prospect test because the case involved a court order. 2008 WL 5377799, at *8. But no such judicial order will result from finalization of the proposed ACO.

Hobet I acknowledged that the applicable mootness test turns on whether the behavior on which the mootness argument is based is mandated. 2008 WL 5377799, at *6. This Court stated:

> When a polluter voluntarily ceases violations, the standard for mootness is high. "The defendant must demonstrate that it is absolutely clear the alleged wrong behavior could

---

[4] In addition to the New Jersey district court judge in Witco Chem Corp., fifteen other federal judges have expressly considered Baughman and rejected its holding. These include a three-judge panel of the Fifth Circuit in Crown (207 F.3d at 795), a three-judge panel of the Second Circuit in Consolidated Rail (768 F.2d at 62), a three-judge panel of the Ninth Circuit in Chevron (834 F.2d at 1525), a three-judge panel of the Seventh Circuit in Sherwin-Williams (151 F.3d at 619), a Maryland district judge in SCM (616 F. Supp. at 1481), and two Kentucky district judges in LWD (834 F. Supp. at 955-56) and Lykins (715 F. Supp. at 1359).

> not reasonably be expected to recur." <u>Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.</u>, 484 U.S. 49, 56 (1987) (internal quotations omitted) (emphasis in original). . . . [T]he standard for evaluating the effect of a <u>mandatory</u> consent order should be more deferential to a defendant than the standard for determining <u>voluntary</u> compliance. . . . [T]he proper standard [for a mandatory consent order is] whether there exist[s] a realistic prospect that violations alleged in [the] complaint will continue notwithstanding the consent decree.

2008 WL 5377799, at *6–7. In determining mootness in <u>Hobet</u>, this Court contrasted the Boone County consent decree at issue in that case with a mere "agency issued . . . compliance order" and determined the polluter in the <u>Hobet</u> case was unlikely to take the judicial order lightly because, unlike an agency issued compliance schedule, it "has the force of a court order." <u>Id.</u> at *8. The clear implication of this Court's comparison of administrative and judicial orders in <u>Hobet I</u> is that the latter are subject to the realistic prospect test, whereas the former are not.

Applying the realistic prospect test to a court order makes sense, because there is an impartial judicial officer—with the authority to issue coercive relief—standing ready to enforce the terms of the order. But the realistic prospect test does not make sense in the context of an agency compliance order, where the agency lacks such coercive authority. W. Va. Code §22-11-22a(a)(3). That is particularly so in this case where the enforcement agency is ultimately under the control of West Virginia's top executive official who has a financial interest in the polluter and a clear conflict of interest.

Accordingly, if the proposed deal were finalized, this Court should not apply the realistic prospect test, but rather should ask whether Defendant has carried the heavy burden to make "<u>absolutely clear</u> the alleged wrong behavior could not reasonably be expected to recur." <u>Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.</u>, 484 U.S. 49, 56 (1987). That mootness standard makes particular sense in this instance because Defendant is voluntarily agreeing to the deal with WVDEP and, in fact, had the absolute right to terminate the proceeding at any time. <u>See</u> W. Va. C.S.R. §48-30B-5.4 ("The administrative proceeding may be terminated at any time and for any reason by any party involved in the proceeding.").

11

Defendant cannot satisfy its burden and show that it is absolutely clear that its selenium violations will not recur. The problematic outfalls still exist and are still discharging. Until, at minimum, the discharges are eliminated and the WV/NPDES permit at issue is revoked, violations may recur. Cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 193–94 (2000) (holding that the mere fact that a polluter continued to hold an NPDES permit prevented a conclusion that violations would not recur without further evidentiary development).

The ACO's stipulated penalty provisions on which Defendant relies do not change that conclusion.[5] As one federal district court has held, "[t]he fact that [the agency issuing the administrative consent order] has continuing jurisdiction and has set stipulated penalties does not indicate that 'it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Franklin v. Birmingham Hide & Tallow Co., Inc., Civ. No.  98-BU-0259-S, 1999 WL 35235824, at *9 (N.D. Ala. Apr. 22, 1999) (internal citations omitted). That court did "not find that [the plaintiff's] citizen suit is moot because the Consent Order provides for the payment of stipulated penalties for future violations." Id. The court instead found that, regardless of the stipulated penalties, the defendant had to demonstrate that there were no ongoing violations, and it had failed to meet its burden to show mootness. Id. Similarly here, Defendant has failed to meet its

---

[5] Nor do the stipulated penalties have any bearing on the preclusion analysis set forth above. Administrative orders have no preclusive effect under § 1319(g)(6) if they merely "notify Defendants that they 'may be liable for penalties' in the future if they fail to comply with the terms of those orders." California Sportfishing Prot. All. v. Chico Scrap Metal, 728 F.3d 868, 877 (9th Cir. 2013). A stipulated penalty does not commence an administrative proceeding nor is it an "assessed" penalty under § 1319(g)(6)(A)(iii). A stipulated penalty is negotiated and agreed upon in advance of a violation's occurrence. It is not a penalty determined and assessed after the violation occurs. Thus, "stipulated penalties . . . of a negotiated order[] are clearly not the type of penalties contemplated under section 1319(g)(6)." PennEnvironment v. RRI Energy Ne. Mgmt. Co., 744 F. Supp. 2d 466, 473 (W.D. Pa. 2010).

burden to show mootness because it has reported ongoing selenium violations in its most recent quarterly monitoring report in the second quarter of 2020. See CM/ECF #83-2 at 36.

Moreover, a case is not moot unless it is "impossible for the court to grant any effectual relief whatever." Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (internal quotation marks omitted). Here, as discussed further below, the Court has the authority to issue mandatory injunctive relief—which is utterly lacking from the proposed ACO—and can impose a civil penalty in an amount far in excess of the penalty assessed in the ACO. That alone is sufficient to keep this case and controversy alive.

## II.   EVEN IF THE COURT WERE TO APPLY THE REALISTIC PROSPECT TEST APPLICABLE TO JUDICIAL ORDERS, THE ACO WOULD NOT MOOT THIS ACTION

This action would present a live case and controversy even if the administrative order at issue were evaluated under the realistic prospect test applicable to judicial orders. As a threshold matter, the proposed ACO does not deal with a substantial subset of the violations at issue in this case. Moreover, the proposed ACO leaves a near virtual certainty of continuing noncompliance, leaving Plaintiffs claims for civil penalties and injunctive relief viable.

### A. The Proposed ACO Does Not Resolve Defendant's Violations of its Selenium Compliance Schedule.

No matter any other consequences of the proposed ACO, it cannot moot Plaintiffs' claims for relief for Defendant's 1000+ days of violation of its compliance schedule for the simple reason that the ACO does not address those violations. This Court has expressly found Defendant liable for 1,129 days of violation for its failure to commence construction of a selenium treatment system since June 21, 2017. CM/ECF #73 at 17–18. Additional violations have accrued since the Court's summary judgment ruling. But the proposed deal between WVDEP and Defendant does not address those violations. Accordingly, the ACO cannot moot or otherwise preclude Plaintiffs' claims for violations of the compliance schedule in WV/NPDES Permit WV1006304. See, e.g., Birmingham Airport Auth.,

561 F. Supp. 2d at 1255 ("As long as the plaintiff here can establish one current violation not within a consent order, this case may continue"); Citizens Legal Envtl. Action Network v. Premium Standard Farms, Civ. No. 97-cv-6073, 2000 WL 220464, at *10 (W.D. Mo. 2000); Berry v. Farmland Indus., Inc., 114 F. Supp. 2d 1150, 1156 (D. Kan. 2000); Humane Soc. of U.S. v. HVFG, LLC, Civ. No. 06-C-6829, 2010 WL 183 WL 1837785, at *13 (S.D.N.Y. May 6, 2010).

**B.  The Proposed ACO Leaves a Realistic Prospect of Future Violations of Defendants' Selenium Limits.**

Even if the proposed deal were finalized and the realistic prospect test were to be applied, the proposed deal cannot moot this action. The mootness analysis applies differently to Plaintiffs' claim for civil penalties and to their claim for injunctive relief. Ellis v. Bhd. Of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees, 466 U.S. 435, 442 (1984). As explained below, claims for both types of relief would survive the finalization of the proposed deal between WVDEP and Defendant.

**1.  The De Minimis Penalty Proposed by the ACO Cannot Moot Plaintiffs' Claims for Civil Penalties.**

Once a court has made a finding of an ongoing violation, the Court is required to assess civil penalties and those claims for civil penalties cannot become moot "so long as they are for past violations that were part of or which contiguously preceded the ongoing violations." Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd., 890 F.2d 690, 697 (4th Cir. 1989); see also Public Interest Research Grp. of N.J. v. Star Enterp., 771 F. Supp. 655, 665 (D.N.J. 1991) (holding that finding of ongoing violation triggers automatic assessment of civil penalties which, in turn, prevents mootness). In its order granting Plaintiffs' partial summary judgment, this Court concluded that "the present case satisfies the . . . test for proving ongoing violations." CM/ECF #73 at 14. Accordingly, at this stage in the proceedings, civil penalties are required and cannot be mooted under Gwaltney, 890 F.2d at 697.

The fact that the proposed deal, if finalized, might impose a modest civil penalty of $125,000 does not change the mootness analysis. As a threshold matter, the $125,000 penalty is for 495 violations—only 110 of which are selenium violations at the Red Fox Mine. CM/ECF # 83-2 at 12–38. As shown above, it is impossible to determine from the ACO how much of that penalty applies to those violations. Assuming <u>arguendo</u> that WVDEP's proposed penalty is based on a ratio of the number of violations at the Red Fox mine to the total number of violations, only 22.22% of the penalty would be attributable to selenium violations—or approximately $27,775. Unlike WVDEP, this Court is not limited to imposing a penalty of $125,000 or $27,775. This Court can impose any penalty up to the statutory maximum, which is $169,241,400 for Defendant's already-established 3,033 days of permit violations.

The Supreme Court has held that a case is moot only where it is "impossible for the court to grant 'any effectual relief whatever' to a prevailing party." <u>Church of Scientology</u>, 506 U.S. at 9. Because the Court retains the authority to impose substantial additional penalties, Plaintiffs' civil penalty claims are not moot. <u>Pub. Interest Research Grp. of New Jersey, Inc. v. Elf Atochem N. Am., Inc.</u>, 817 F. Supp. 1164, 1171–72 (D.N.J. 1993) (holding that, in a CWA citizen suit to enforce NPDES permit violations, "the possibility that substantial additional penalties may be imposed [by the court] . . . creates a sufficient case or controversy to avoid mootness").[6]

<u>Hobet</u> does not support a contrary conclusion. The civil penalty in that case was $4,088,315 and was imposed in a judicial order. 2008 WL 5377799, at *9. That amount is more than 32 times larger than the $125,000 penalty in WVDEP's proposed administrative order. And the <u>Hobet</u> decision acknowledges that a penalty that is not sufficient to have a deterrent effect does not moot a case. <u>Id.</u>

---

[6] The court's reasoning about deterrence in the <u>Elf Atochem</u> case is also applicable here because the imposition of additional penalties will fill the general deterrence function of penalties under the Clean Water Act and provide effectual relief to Plaintiffs. 817 F. Supp. at 1172.

More analogous to this case than the <u>Hobet</u> decision on which Defendant relies is this Court's decision in <u>Hobet II</u>: <u>Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC</u>, 723 F. Supp. 2d 886 (S.D. W. Va.). In that case, this Court held that a judicial consent decree that did not "impos[e] significant civil penalties or requir[e] additional expenditures on SEPs" did not moot the plaintiffs' claims for civil penalties. <u>Id.</u> at 912. This Court further observed that, "[w]hen compared to the $4,088,315 penalty imposed in [<u>Hobet I</u>], the agency's imposition of this comparatively nominal penalty reflects poorly on the agency and is indicative of a lack of motivation to design a remedy reasonably calculated to eliminate non-compliance." <u>Id.</u> at 912 n.12. The same is true here. Moreover, in <u>Hobet II</u>, this Court based its determination that a modest financial penalty does not moot a citizen suit claim for civil penalties on the Fourth Circuit's holding in <u>United States v Smithfield Foods, Inc.</u>, 191 F.3d 516, 529 (4th Cir. 1999), that civil penalties should "remove or neutralize the economic incentive to violate environmental regulations."

Like the penalties in <u>Hobet II</u>, the modest penalties in the proposed deal between Defendant and WVDEP are insufficient to deter future violations, leaving a realistic prospect of continued noncompliance. As established in summary judgment record, the economic benefit to Defendant from its noncompliance was at least $3.3 million. CM/ECF #58-5. And this Court found in its order denying Defendant's motion to dismiss that "it appears evident that the [federal] Consent Decree's penalties have not 'remove[d] or neutralize[d] the economic incentive to violate [the selenium-related] environmental regulations.'" CM/ECF #50 at 24 (quoting <u>Smithfield Foods</u>, 191 F.3d at 529). In so holding, this Court observed that, "[w]hen a consent decree creates an ineffective penalty regime and/or does not challenge continuing violations" it does not preclude citizen enforcement. <u>Id.</u> at 25. The portion of the $125,000 penalty in the proposed deal between WVDEP and Defendant related to Defendant's selenium violations, if finalized, is insignificant compared to the economic benefit the

company has enjoyed from its noncompliance. Accordingly, that penalty cannot moot Plaintiffs' civil penalty claims.

### 2. Because it Does Not Require Defendant to Take Any Corrective Action the ACO Cannot Moot Plaintiffs' Claims for Injunctive Relief.

Even if finalized, the proposed deal between WVDEP and Defendant would not moot Plaintiffs' claims for injunctive relief either. That is because the deal requires no action by Defendant to eliminate its violations. Accordingly, it leaves far more than a realistic prospect of noncompliance— it leaves a virtual certainty.

As Defendant concedes, the proposed deal does not require a Corrective Action Plan for Defendant's selenium violations. CM/ECF #84 at 6. That alone is sufficient, under Hobet II, to preclude a finding of mootness. The consent decree at issue in Hobet II, like the proposed deal in this case, did not require a corrective action plan for selenium. 723 F. Supp. 2d at 912. As a result, this Court expressly held that, "without a clear corrective action plan, the modified consent decree does not establish the same likelihood [as there was in Hobet I] that a treatment system will be developed and violations eliminated. Thus, when viewed objectively the terms of the modified consent decree do not support a finding of mootness." Id. Because this case is indistinguishable from Hobet II in that regard, the proposed deal is incapable of mooting Plaintiffs' claims for injunctive relief.

## III. BECAUSE THE PROPOSED ACO NEITHER PRECLUDES NOR MOOTS THIS ACTION, A STAY IS NOT WARRANTED.

Although a federal district court has the inherent discretion to grant a stay, Landis v. North Am. Co., 299 U.S. 248, 254 (1936), the exercise of that discretion "calls for the exercise of judgment which must weigh competing interests and maintain an even balance." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983). The burden on the proponent of a stay is a heavy one: "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Id. As this Court has previously characterized that

17

burden, "the court should consider whether the movant has demonstrated 'a clear case of hardship or inequity in being required to go forward, if there is even a possibility that the stay will harm someone else.'" White v. Ally Fin. Inc., 969 F. Supp. 2d 451, 462 (S.D. W. Va. 2013) (quoting Landis, 299 U.S. at 255).

To ascertain whether the proponent of a stay has carried their heavy burden, this Court considers three factors: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." White, 969 F. Supp. 2d at 462 (internal quotation marks omitted). None of those factors favors the stay sought by Defendant.

Because the proposed ACO can neither preclude nor moot this action—no matter the applicable test—Defendant's arguments for a stay collapse. Judicial economy would not be served by a stay because the proposed ACO will not resolve or have a controlling effect on this litigation. Cf. Hill v. Ford Motor Co., Civ. No. 2:16-cv-9851, 2017 WL 63020, at *2 (S.D. W. Va. Jan. 5, 2017) (granting stay where parallel litigation may have controlling effect on case).

On the second prong of the White test, Defendant has not even bothered to attempt to establish that it would face any hardship in the absence of a stay. It cannot. Federal courts regularly hold that polluters face no hardship or inequity from being held to account in a citizen suit. See, e.g., Brewer v. City of Bristol, Tenn., 577 F. Supp. 519, 529 (E.D. Tenn. 1983).

Here, this Court has already held that Defendant is in violation of two federal statutes—the Clean Water Act and the Surface Mining Control and Reclamation Act. CM/ECF #73 at 18–20. Indeed, this Court has found Defendant liable for at least 3,033 days of violation of the Clean Water Act. Id. at 18. As this Court observed when it granted Plaintiffs' motion for partial summary judgment, all that remains for the Court to resolve is "the amount of civil penalties and the scope and timing of injunctive relief." Id. at 21. In the absence of a stay, the only hardship that Defendant may face is

being held to account by a federal judge for thousands of violations of federal law. But that obviously cannot be a cognizable hardship for purposes of the stay analysis; otherwise, defendants could obtain a stay anytime they faced a day of reckoning. See Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis.").

Finally, in contrast to the complete absence of hardship to Defendant, Plaintiffs face very real prejudice from a stay. The purpose of this action is to stop the illegal discharge of excessive amounts of selenium, which has been designated by EPA as a toxic chemical. 40 C.F.R. §401.15. This Court has recognized that "[s]elenium impacts the reproductive cycle of many aquatic species, can impair the development and survival of fish, and can even damage gills or other organs of aquatic organisms subjected to prolonged exposure." Hobet II, 723 F. Supp. 2d at 900. Defendant's continued violations of its selenium limits will therefore cause irreparable harm to Plaintiffs' environmental interests during the pendency of the requested stay. This Court acknowledged that it shared Plaintiffs' concerns about environmental harm from continuing selenium discharges when it granted Defendant's prior motion for a continuance. CM/ECF #76 at 2.

## CONCLUSION

For the foregoing reasons, Defendant has failed to carry its burden to establish that a stay of proceedings in this action is warranted. Accordingly, this Court should deny Defendant's pending motion.[7]

---

[7] Plaintiffs also oppose a stay to the extent that Defendant relies on the ongoing pandemic to justify its stay request. Options such as a "virtual" hearing or an in-person, masked hearing in September 2020 are preferable to continuing this matter further into 2020 or 2021, when conditions related to the pandemic may further deteriorate as flu season sets in.

Respectfully submitted,

**/s/ Derek O. Teaney**

DEREK O. TEANEY (WVBN 10223)
J. MICHAEL BECHER (WVBN 10558)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 646-1182
Email: dteaney@appalmad.org

JAMES M. HECKER (DCBN 291740)
PUBLIC JUSTICE
1620 L Street, NW Suite 630
Washington, DC 20036
Telephone: (202) 797-8600, ext. 225
Email: jhecker@publicjustice.net

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,**

        **Plaintiffs,**

    **v.**                      **Civil Action No. 1:19-cv-00576**

**BLUESTONE COAL CORPORATION,**

        **Defendant.**

**CERTIFICATE OF SERVICE**

      I, Derek O. Teaney, hereby certify that, on September 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to each of the following CM/ECF participants:

MICHAEL W. CAREY
S. BENJAMIN BRYANT
CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
707 Virginia Street, East, Suite 901
P.O. Box 913
Charleston, WV 25323
mwcarey@csdlaw.com
sbbryant@csdlawfirm.com
*Counsel for Defendants*

                    /s/ Derek O. Teaney
                    DEREK O. TEANEY (WVBN 10223)