IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,

                   **Plaintiffs,**

v.                                 **Civil Action. No. 1:19-cv-00576**
                                  **Judge David A. Faber**

BLUESTONE COAL CORPORATION,

                   **Defendant.**

## DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR STAY PENDING RESOLUTION OF PROPOSED CONSENT ORDER WITH WVDEP

NOW COMES the Defendant, Bluestone Coal Corporation, by its counsel, Michael W. Carey, S. Benjamin Bryant, and the law firm of Carey, Douglas, Kessler & Ruby, PLLC, and files this reply to Plaintiffs' Opposition to Defendant's Motion for Stay Pending Resolution of Proposed Consent Order With WVDEP.

The Plaintiffs' opposition fails for the following reasons: 1) it is based on an unfounded *ad hominem* attack on the Defendant's owners; 2) it attempts to rebut grounds for a stay that are not relied upon by Defendants; and 3) it fails to properly recognize the mandatory requirements of the draft consent order and its elimination of any ongoing claims by Plaintiffs.

## ARGUMENT

I.    **Plaintiffs' *Ad Hominem* Attack On Defendant's Owners Are Groundless And Should Be Stricken From The Record.**

After claiming Defendant's motion for a stay is baseless, Plaintiffs state: "A self-dealing administrative order from Governor Justice's environmental agency to one of his family's coal

companies can neither preclude nor moot this action." [ECF 90 at 1].  This *ad hominem* attack is simply untrue.  As set forth in the draft Consent Order, Bluestone has agreed to take corrective action to eliminate violations at the specified outlets, pay further stipulated penalties if it fails to do so, and pay the maximum penalty allowed under state law for past violations.  There is no place in the courts for this type of baseless allegation; the Court should order it to be stricken.

## II.    The Plaintiffs' Arguments Concerning Preclusion Are Irrelevant.

Pages 4 through 10 of Plaintiffs' memorandum are spent addressing what they characterize as Defendant's "insinuation" that the draft Consent Order precludes Plaintiffs' claims.  However, as clearly stated in its motion and accompanying memorandum, Defendant is seeking a stay solely on the ground that the draft Consent Order "upon its anticipated final approval, will render this action moot." [ECF 83 at 1; ECF 84 at 4].  Nowhere does Defendant assert that a stay is appropriate because the draft Consent Order "precludes" this action.  The only purpose in referencing 33 U.S.C. § 1365(b)(1)(B) in footnote 2 was to set forth that Plaintiffs' statement in its Motion for Summary Judgment that the WVDEP had not filed the type of administrative penalty proceeding that would preclude Plaintiffs' citizen suit was an open question in the Fourth Circuit.[1]  Thus, because Defendant is not relying on preclusion as a basis for its stay, it will not further address Plaintiffs'

---

[1] The Plaintiffs go to great lengths to justify that the assertions made in their Complaint, their motion for summary judgment and supporting declaration relating to their contention that the DEP had not taken any action to redress the violations at issue in this case were true and legally supported.  In doing so, however, they ignore the fact that by failing to disclose the Administrative Civil Penalty Assessment Notice issued by the DEP on July 11, 2019 and September 2, 2020, they denied the Court the opportunity to determine whether, in fact, said Notice served to preclude their case under 1365(b)(1)(b), or whether it was the type of "administrative penalty action . . . under comparable state law to adequately redress the violations."  Finally, it strains credulity to assert that simply because Steve Ball and others at Bluestone were unaware of the status of the assessment Notice, means that DEP had "not taken any action to redress the violations listed in the notice letters."

opposition on that issue.[2]

### III.   Plaintiffs Misconstrue The Mandatory Requirements Of The Draft Consent Order

In analyzing whether the draft Consent Order between the WVDEP and Bluestone could render Plaintiffs' claims moot, it is important to set forth the nature of and the process by which the order is initiated and finalized.  On May 10, 1982, the EPA delegated primary enforcement authority of the Clean Water Act to the WVDEP.  *See* 33 U.S.C. § 1342(a)(2) and 47 Fed. Reg. 22363.  West Virginia Code 22-11-22a(b) authorizes the Secretary to assess a civil administrative penalty against a permittee that violates NPDES permits, as was done by the WVDEP against Bluestone on July 11, 2019, and revised on October 2, 2019.  Consistent with the practice of the WVDEP, the assessment was accompanied by a draft Consent Order made up of three main components: 1) civil penalties for past violations; 2) stipulated penalties for future violations; and 3) a requirement that Bluestone submit and obtain DEP approval for corrective action plans to address recurrent violations at certain outlets.  Each of those three components applied to the permit violations at issue in this case. [ECF 83-1].

Next, pursuant to statute, an informal hearing was held between representatives of Bluestone and an assessment officer appointed by the Secretary on August 27, 2020.  During the course of the hearing and thereafter, the parties negotiated and agreed to the terms of the draft Consent Order [ECF 83-2], signed by Bluestone on September 4, 2020. Ex. 1.

Pursuant to statute, the DEP will publish the draft agreement in each county where the

---

[2] Plaintiffs also complain about the timing of Defendant's motion claiming it is too late in the proceedings.  However, mootness is a jurisdictional matter, and if and when a case becomes moot, the court loses jurisdiction.  *E.g.*, Summers v. Earth Island Institute, 555 U.S. 488 (2009).  The mootness doctrine applies at all stages of federal litigation, including trial and appeal. Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).  Therefore, the timing of Bluestone's motion has no bearing on mootness.

violations occurred, soliciting comments from the public.  At that point, the Plaintiffs here, and any other interested parties, can submit comments to DEP.  Moreover, anyone who submits comments may request a public hearing regarding the draft Consent Order which may be granted or denied at the Secretary's discretion.  Thereafter, the Secretary "shall consider" any comments received in fashioning a final order.  Within 30 days of the close of the comment period, the Secretary shall issue a final order or make a determination not to issue a final order.  Upon the issuance of a final order, any person who submitted written comments shall have the right to appeal such order to the Environmental Quality Board. W. Va. Code § 22-11-22a(b)(1-6).  Finally, any decision by the Environmental Quality Board is subject to judicial review. W. Va. Code § 22B-1-9(a); *see also* § 22B-3-3.

Thus, as set forth above, the Plaintiffs here will have the right to provide input, object, and ultimately appeal any decision made by DEP concerning the draft Consent Order.  As such, they are permitted to participate in the process with the WVDEP, the agency which has primary authority for enforcing the federal Clean Water Act in West Virginia, in finalizing the enforcement action.

Moreover, if the draft Consent Order is finalized in its current form, the requirements thereof are mandatory.  In this regard, Bluestone will have to pay the maximum penalty allowed under West Virginia law for past violations, pay stipulated penalties for future violations, and develop a Corrective Action Plan for violations at certain outlets under certain permits, including the outlets at issue here.[3] [ECF 83-2, pp. 5-7, Order of Compliance, ¶¶ 3-8, Other Provisions, ¶ 1].  Importantly, the DEP can seek enforcement of the terms and conditions of the final order in the Circuit Court of

---

[3] As discussed *infra*, the requirement to submit a Corrective Action Plan for Permit WV 1006304 will be satisfied upon reissuance of the permit by DEP allowing fish tissue monitoring for selenium concentration.

Kanawha County.[4]

Finally, under the draft Consent Order the DEP reserves the right to take further action if compliance with the order "does not adequately address the violations." [ECF 83-2, p. 8, ¶ 2]. Thus, in the final analysis, the draft Consent Order will be issued with input from the public, subject to appeal to the Environmental Quality Board and judicial review, mandatory upon becoming final and subject to enforcement in the Circuit Court. Thereafter, even if Bluestone complies fully with the terms of the order, the DEP is empowered to take further corrective actions if necessary.

## IV.   The Realistic Prospect Test Is The Correct Legal Analysis To Be Applied In This Case.

In Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC ("Hobet I"), Civ. No. 3:08-cv-00088, 2008 WL 5377799, 69 ERC 1345 (S.D. W. Va. Dec. 18, 2008), the court analyzed the appropriate standard to apply in considering whether a Consent Decree entered by the Circuit Court of Boone County rendered a citizens suit addressing the same violations moot. In doing so, the court noted that there are different standards depending on whether compliance is mandatory or voluntary. If compliance is voluntary, then "the defendant must demonstrate that it is *absolutely clear* the alleged wrong behavior could not reasonably be expected to recur." Id., *6. On the other hand, where compliance is mandatory, the test is whether there is a realistic prospect that violations will continue notwithstanding the Consent Decree. According to the court, this more deferential standard is appropriate because "[t]he primary function of a citizen suit is to spur agency enforcement of law." Id., *7. "Creating a high standard of mootness 'would discourage defendants in a citizen [suit] from entering a consent decree with federal or state enforcement agencies . . . shift[ing] primary enforcement responsibility from the expert agencies to the necessarily generalist

---

[4] Notably, Bluestone agreed to waive its right to challenge the required Civil Penalty Assessment or any future demanded stipulated penalties. [ECF 83-2, p. 7, Other Provisions, ¶ 1].

courts.'" Id. (citations omitted)

As discussed above, the draft Consent Order agreed to by WVDEP and Bluestone imposes mandatory obligations to pay the maximum civil penalty for past violations and stipulated penalties going forward.[5]  Once final, Bluestone must submit a Corrective Action Plan for the permit at issue here, WV1006304, within 45 days, "outlining how and when Bluestone will achieve compliance with" selenium effluent limits for Permit WV1006304. [ECF 83-2, p. 5, Order For Compliance ¶3]. The DEP may enforce the terms of the agreement in the Circuit Court of Kanawha County. [ECF 83-2, p. 7, Other Provisions ¶1].  Because the terms of the draft Consent Order are mandatory and enforceable in the circuit court, the realistic prospect test is the appropriate analysis to be applied in the case at bar.[6]

In their opposition, Plaintiffs rely on one sentence out of Hobet I to suggest that the draft Consent Order should be treated as voluntary and therefore subject to the more stringent requirement that Defendant demonstrate that it is absolutely clear violations will not recur. [ECF 90, pp. 10-11] However, analysis of Hobet I belies Plaintiffs' contention.

After concluding that the realistic prospect test applied to the Consent Decree entered in Boone County, the court turned to determining whether the violations will continue "'in the sense that the violations will not be cured even after the remedial plan implemented by the consent decree

---

[5]  According to the terms of the draft Consent Order, the stipulated penalties begin immediately upon signature of the agreement by Bluestone, which was September 4, 2020. [ECF 83-2, p. 6, Order For Compliance, ¶ 8] and Ex. 1.

[6] In contending that the realistic prospect test should not apply, the Plaintiffs once again impugn the integrity of the regulators claiming the DEP lacks coercive authority because it is "ultimately under the control of West Virginia's top executive official who has a financial interest in the polluter and a clear conflict of interest." [ECF 90, p. 11]  It is the experience of undersigned counsel that when a party engages in baseless personal attacks of this nature, it is a sign of desperation.  Again, the Court should strike the passage from the record.

has been fully implemented in accordance with reasonable timetables.'" Id., *7.  In performing that analysis, the court examined the schedule for compliance set forth in the Consent Decree.  The court noted that while it may not be as rapid as the plaintiffs would like, it was reasonable. Id. *7.  The court then examined whether Hobet would succeed in achieving compliance. Id. *7-8  Under the Consent Decree, Hobet was required to test various treatment systems to address selenium effluent violations.  Regardless, Hobet was required to have some form of treatment program in place by a date certain. Id., *8.  The court then noted that while Hobet had failed to meet permit limits and state compliance orders in the past, the consent decree was in a different category. Id.  First, it was more comprehensive and detailed than past limits and compliance orders. "It establishes . . . limits with defined penalties.'"  No prior order contained a schedule for compliance or "mandatory penalties for noncompliance."  Moreover, it was not simply an agency issued permit or compliance order.  Rather, it was a settlement approved by the court and had the force of a court order which the court concluded would not be taken lightly. Id.

While the court did not identify the compliance orders it referred to, they probably were not unlike the reissuance of permit WV1006304 in 2015 whereby the DEP set a compliance schedule for selenium at Outlets 004, 005, 006, 007 and 008.  While the new permit did establish a compliance schedule, it did not contain mandatory penalties for future noncompliance.  Here, the draft Consent Order requires Bluestone to submit a corrective action plan by a date certain to ensure compliance with the selenium effluent limits at the outlets at issue here.  It also contains mandatory penalties for future violations.  Furthermore, the DEP can seek enforcement of the terms of the agreement in the Circuit Court of Kanawha County.  Finally, even if Bluestone is in full compliance with the Consent Order, the WVDEP reserves the right to seek other remedies should Bluestone fail to achieve compliance.  Thus, the draft Consent Order is truly mandatory and the Plaintiffs'

comparison of it to the compliance orders referenced in <u>Hobet I</u> is misplaced.

The Plaintiffs further argue that if the draft Consent Order is finalized, it should be analyzed under the test for voluntary compliance (i.e., absolutely clear that violations could not reasonably be expected to recur) because Bluestone had the right to terminate the proceedings at any time. [ECF 90, p. 11]. The logic of this argument is dubious. While Bluestone may have the right to withdraw, once the Consent Order becomes final, compliance with its terms is mandatory – Bluestone cannot back out at that point. This is exactly why a stay is appropriate; a determination whether this case is moot is wholly dependent on the terms of the *final* Consent Order, not the draft.

**V.      Application Of The Realistic Prospect Test To The Draft Consent Order In Its Current Form Would Render This Action Moot.**

      A.      There is no realistic prospect that violations of the selenium effluent limits will recur upon implementation of the final Consent Order.

Plaintiffs contend that because the draft Consent Order does not require Bluestone to take any corrective action, it cannot moot Plaintiffs' claim for injunctive relief. [ECF 90, p. 11]. Plaintiffs' argument is misleading and inaccurate.

If the draft Consent Order is finalized in its current form, Bluestone will be required to submit a Corrective Action Plan to address selenium effluent limits at Outlets 005, 006, 007 and 008 under permit WV1006304 within 45 days of the final entry of the Consent Order. [ECF 83-2, p. 5, Order For Compliance, ¶ 3]. However, the DEP further recognized that Bluestone has sought a renewal and modification of the permit that would allow Bluestone to demonstrate compliance at Outlets 005, 007 and 008 through monitoring fish tissue selenium concentrations, and that Bluestone has otherwise demonstrated compliance at Outlet 006. As such, the DEP agreed that if the permit is reissued prior to the final entry of the Consent Order, then Bluestone will not have to submit a Corrective Action Plan for Permit WV1006304. Id., pp. 5-6.

Therefore, further discussion of the proposed compliance monitoring by fish tissue analysis is in order.  Because selenium is potentially toxic to and can accumulate in the aquatic life in receiving streams, the WVDEP has developed a hierarchy for testing designed to best protect the fish and other organisms. Ex. 2.  Selenium concentration in the fish egg/ovary tissue is considered the best indicator of potential harm to fish reproduction and, thus, takes precedence over any other test.  After that, whole body fish tissue concentration is preferred over water column concentration. Id., p. 1.  In other words, fish tissue analysis is superior to water column sampling to insure the aquatic life is protected.  Currently, compliance with selenium effluent limits at the four outlets at issue in this case is monitored by sampling and analyzing the selenium content in the water at the outfalls.

In September 2019, Bluestone submitted a plan to the DEP to conduct fish tissue sampling and analysis at each of the outlets involved in this case. Ex. 3.  It was approved on September 20, 2019. Id.  On September 23, 2019, consultants obtained fish samples from Outlets 005, 006 and 007.  On December 16, 2019, the consultants obtained fish samples from 006 and 008. Ex. 4, Bates No. BCC006073.  Because the size of the fish are relatively small, analysis of the selenium concentration had to be conducted on the whole body rather than on the eggs/ovaries. Id., p. 6, fn 7.  Under the DEP requirements, a permittee is in compliance with selenium standards as long as the whole body concentration of selenium does not exceed 8.0 parts per million. Id., p. 5; Ex. 2, p. 2.  The results of the analysis of the sampled fish are as follows:

| OUTLET | DATE | RESULT |
|--------|------|--------|
| 005 | September 2019 | 1.629 ppm Se |
| 006 | September 2019 | 6.415 ppm Se |
| 006 | December 2019 | 7.172 ppm Se |
| 007 | September 2019 | 3.662 ppm Se |

| 008 | December 2019 | 4.072 ppm Se |
| --- | --- | --- |

Ex. 4, Bates No. BCC006073. All of the results fall well within the permissible limit, particularly for Outlets 005, 007 and 008. Thus, under DEP's fish tissue protocol, Bluestone was in compliance with the selenium water quality standards for all four outlets as of September and December of 2019. As such, Bluestone requested that, as part of the ongoing renewal process for Permit WV1006304, Bluestone be allowed to utilize whole body fish tissue selenium concentration analysis for Outlets 005, 007 and 008. The DEP approved the request and the reissuance of the modified permit is pending.[7] Because Outlet 006 has been in substantial compliance over the last several months, no request was made to utilize fish tissue analysis at Outlet 006.

The draft Consent Order sets forth that, going forward, provided the permit is reissued allowing fish tissue monitoring, and because Bluestone has demonstrated compliance at Outlet 006 to the satisfaction of DEP, no further Corrective Action Plan will be required by Bluestone for Permit WV1006304. [ECF 83-2, p. 6, ¶3]. Obviously, the DEP concurs that upon the implementation of fish tissue monitoring, Bluestone will be in compliance with selenium water quality limits at the four outlets.[8] Thus, if the draft Consent Order is approved in its current form, there is no realistic prospect that the violations will continue upon implementation thereof and

---

[7] Both the request for inclusion of the fish tissue monitoring and DEP's inclusion thereof in the proposed renewed permit are lengthy documents and are not filed here as exhibits, but will be provided if the Court requests. However, the reissuance of the permit allowing for fish tissue monitoring was sent to the EPA for comment. Notably, the EPA had "no comment", Ex. 5, and so has no objection.

[8] The facts now before the Court also establish that Bluestone has met the "absolutely clear" standard for a finding of mootness. The fact is that Bluestone has, as a factual matter, come into compliance with selenium limits, and will be in full legal compliance once the draft permit is issued.

10

Plaintiffs' request for injunctive relief is moot.[9]

      B.    The Penalties Imposed For Past Violations And The Stipulated Penalties Required For Future Violations Is Sufficient To Have A Deterrent Effect And Renders This Action Moot.

Plaintiffs contend that the $125,000 penalty imposed under the draft Consent Order is too modest to deter future violations.[10]   However, as recognized by the court in Hobet I, the courts should give deference to the state regulators as the primary enforcers of the Clean Water Act. Otherwise, citizens suits would usurp the primary enforcer role and undermine the state's discretion. Id. *9.  In this regard, it is important to note that the $125,000 imposed under the draft Consent Order is the maximum permitted under state law. [ECF 83-2, p. 6, ¶5], W. Va. Code § 22-11-

---

[9] Notwithstanding the fact that Plaintiffs did not allege it in their Complaint, they contend that the draft Consent Order does not address violations of the compliance schedule issued by DEP relating to the design, construction and installation of a selenium treatment system. However, as it turns out, and as reflected in the draft Consent Order, there was no need for the "design, construction and installation" of a treatment system.  To the contrary, compliance has been achieved by the DEP agreed-to proposal to monitor compliance through fish tissue analysis. Moreover the ultimate requirement of the DEP schedule was "Permittee shall achieve compliance with the final selenium effluent limitations."  As noted in the draft Consent Order, the:

> Order for Compliance of this Order satisfies any claim WVDEP has or **may have** for penalties under the West Virginia Water Pollution Control Act for violations of the effluent limits for outlets which occurred January 2016 through June 2016 in relation to the specified Permits.  Any violations that occur between the last day of June 2020 and the date of the Draft Order shall be considered part of the Civil Administrative Penalty.

[ECF 83-2, p. 6, ¶ 7] (emphasis added). Accordingly, any claim for penalties for violation of the DEP Compliance Schedule is also moot.

[10] Plaintiffs rely on Ohio Valley Environmental Coalition v. Hobet Mining LLC, 723 F. Supp 2d 886 (S.D.W.Va., July 12, 2010)(Hobet II) to support their argument that the assessed penalties under the draft Consent Order are too *di minimis* to deter future conduct. [ECF 90, pp. 16-17].  However, what Hobet II simply makes clear is that said question is heavily fact dependent.  As set forth *infra*, the penalties assessed for past violations along with the stipulated penalties, of both the state and federal consent decrees, are more than adequate to deter future violations, particularly when taking into consideration that upon renewal of the permit allowing fish tissue analysis, Bluestone will be in compliance with selenium water quality standards.

22a(b)(1). Thus, Plaintiffs' belief that the amount of the penalty is insufficient not only usurps DEP's decision making authority, but the judgment of the West Virginia Legislature as well.

Moreover, the penalty imposed for past violations under the draft Consent Order cannot be considered in isolation. The draft Consent Order also requires Bluestone to pay substantial stipulated penalties for future violations. This includes $1,000 for daily maximum violations, and $3,000 for monthly average violations, both subject to a 10% discount for penalties paid under the federal Consent Decree for the same violations. Thus, when combined with the stipulated penalties of the draft Consent Order, Bluestone is facing total possible stipulated penalties of $6,400 for each daily maximum violations and $9,200 for each monthly average violation.[11] [ECF 84, pp. 6-7]. Moreover, if fish tissue analysis is approved for Outlets 005, 007 and 008, Bluestone will be subject to a $10,000 penalty for any violations under that method. [ECF 83-2, p. 6, ¶ 8i]. Combined with the payment of $125,000, the stringent penalties going forward of the draft Consent Order certainly will deter future violations.[12]

---

[11] By way of example, if in any month Bluestone violated daily maximum limits for both samples as well as the resulting average monthly limit at Outlet 006, it could face a total penalty of $21,600 under both the federal and state agreements.

[12] Plaintiffs contend that the penalties imposed must be reviewed against their claim that the economic benefit to Bluestone for noncompliance is $3.3 million, based on Plaintiffs' assertion that the solution to the selenium problem was the installation of wildly expensive bioreactor systems. However, Bluestone has satisfied the DEP that fish tissue monitoring has demonstrated compliance and the Plaintiffs' claim that a bioreactor system should have been installed is a fallacy. In this regard, Bluestone's expert has concluded that the cost of implementing fish tissue monitoring for two years would have been $46,000. Ex. 4, p. 9. Therefore, the economic benefit of Bluestone failing to meet selenium effluent limits is significantly lower than the total penalties paid under the federal Consent Decree of $414,500. Of that total, Bluestone paid $35,000 on September 4, 2020, so that payment is not yet reflected on the website http://www.southerncoalcorporation.droppages.com/.

.

12

VI.    **A Stay Of This Matter Is Appropriate.**

Bluestone concurs that there are three factors to consider in determining whether a stay is appropriate are: 1) the interests of judicial economy; 2) hardship and equity to the moving party if the action is not stayed; and 3) potential prejudice to the non-moving party. White v. Ally Financial, 969 F. Supp. 2d 451 (S.D.W.Va. 2013).

Notwithstanding Plaintiffs' blanket assertion that the draft Consent Order does not moot this action, the opposite conclusion is clear from its terms.  As discussed above, the DEP (the primary regulatory authority) has recognized that based on the baseline data obtained under the fish tissue sampling plan, Bluestone will be in compliance with selenium water quality standards upon reissuance of its permit allowing monitoring by fish tissue analysis.  Thus, if the draft Consent Order becomes final in its current form, the need for injunctive relief from this Court is eliminated. Similarly, the civil penalties, both for past and future violations, will deter future violations thus mooting Plaintiffs' claim for additional penalties.[13]  Accordingly, in the interest of judicial economy, the Court should stay this case and allow the administrative process to run its course so that the Court can evaluate the resulting Consent Order in its final form.  In this regard, if the Court were to determine that the final Consent Order rendered some but not all of Plaintiffs' claims moot, it would narrow the issues to be tried.  Therefore, judicial economy weighs in favor of a stay.

A stay would also eliminate the need for Bluestone, as well as the Plaintiffs, to expend further funds defending this action if the Court would ultimately determine the case should be

---

[13] Even if the Court would ultimately determine that this matter is not moot and that an award of civil penalties is appropriate, Bluestone would be entitled to an offset for any penalties paid by Bluestone to DEP and to the EPA.  The Court should know what that amount is before issuing an order.

dismissed as moot. Such is not an inconsequential concern. The draft Consent Order, should it become final, will not only require the payment of $125,000 to the DEP, but will require the payment of additional funds implementing various corrective action plans under the Consent Order.

Finally, as to the issue of potential prejudice to the Plaintiffs should a stay be granted, Plaintiffs assert that "Defendant's continued violations of its selenium limits will therefore cause irreparable harm to Plaintiffs' environmental interests during the pendency of the requested stay." [ECF 90, p. 19]. Two responses are in order. First, as reflected in the draft Consent Order, the DEP has recognized that Bluestone has achieved compliance with selenium limits at the four outlets upon reissuance of the permit allowing fish tissue monitoring.

Secondly, Plaintiffs' contention of ongoing irreparable harm is belied by their settlement demand in this case. In this regard, Federal Rule of Evidence 408(b) provides that settlement discussions may be revealed to "negat[e] a contention of undue delay," and courts have ruled such discussions admissible to rebut an argument that a party will suffer irreparable harm in the absence of a preliminary injunction.[14] In this case, the Plaintiffs proposed settling this matter by the payment by Bluestone of $600,000 to the West Virginia Land Trust, transfer of approximately 850 acres of property near the New River Gorge[15] to the West Virginia Land Trust, and the payment of attorney fees, in exchange for Plaintiffs' agreement to allow Bluestone up to three years to correct the

_____

[14] Ourbus, Inc. v. City of Ithica, NY, 2019 WL 2710111, at *13 (N.D. N.Y. June 28, 2019) (considering the "another purpose" provision of FRE 408(b), noting ". . . .several courts have determined that when evidence [of settlement discussions] is offered to oppose the contention that a party will suffer irreparable harm in the absence of a preliminary injunction, it falls squarely within the "another purpose" exception. *See also* Katori Designs, LLC v. Living Well Spending Less, Inc., 2016 WL 6833004 (M.D. FL. November 21, 2016), at *3, (the terms of party's settlement offer were "wholly inconsistent with - and therefore fatal to - a claim of imminent irreparable harm absent an injunction."

[15] Neither Bluestone, nor its parent companies, own any interest in this acreage.

selenium issues at Red Fox, subject to regulation by DEP, and no assessment of civil penalties in this action.[16]   As such, if Bluestone were to pay Plaintiffs a significant amount of money and transfer substantial property to them, then they have no concern about any potential harm due to selenium at Red Fox for the next three years.   Taken in the context of their settlement demand, Plaintiffs' claim of irreparable harm during a stay of this matter rings hollow.

## CONCLUSION

In the final analysis, a stay is warranted in this case to allow the ongoing process of finalizing the draft Consent Order to reach its conclusion.  The DEP, as the primary regulator of the Clean Water Act, is best suited to determine the best way to insure compliance with selenium discharges at Red Fox and to address past violations.  Upon finalization, this Court can determine what, if any, of Plaintiffs' claims are rendered moot thereby.

Respectfully submitted,

BLUESTONE COAL CORPORATION,
By Counsel:

  /s/ Michael W. Carey
Michael W. Carey, WVSB No. 635
S. Benjamin Bryant, WVSB No. 520
Carey, Scott, Douglas & Kessler, PLLC
707 Virginia Street, East, Suite 901
P.O. Box 913
Charleston, WV 25323
(304) 345-1234
mwcarey@csdlawfirm.com
sbbryant@cdkrlaw.com

---

[16] Counsel is prepared to submit an affidavit so stating, if this point is disputed by Plaintiffs.

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,**

        **Plaintiffs,**

**v.**                             **Civil Action. No. 1:19-cv-00576**
                                   **Judge David A. Faber**

**BLUESTONE COAL CORPORATION,**

        **Defendant.**

## CERTIFICATE OF SERVICE

    I, Michael W. Carey, counsel for Bluestone Coal Corporation, do hereby certify that on September 15, 2020, I electronically filed the foregoing **"Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Stay Pending Resolution of Proposed Consent Order With WVDEP,"** with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to the following CM/ECF participants:

Derek O. Teaney, WVSB No. 10223        James H. Hecker, DCSB No. 291740
J. Michael Becher, WVSB No. 10588      Public Justice
Elizabeth A. Bower, WVSB No. 13583     1620 L Street, NW Suite 630
Appalachian Mountain Advocates        Washington, DC 20036
P.O. Box 507                          (202) 797-8600 EXT. 225
Lewisburg, WV 24901              jhecker@publicjustice.net
(304) 382-4798
dteaney@appalmad.org
mbecher@appalmad.org
ebower@appalmad.org

                                      /s/ Michael W. Carey
                                      Michael W. Carey, WVSB No. 635