**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BLUEFIELD DIVISION**

**OHIO VALLEY ENVIRONMENTAL**
**COALITION, et al.,**

        **Plaintiffs,**

    **v.**                          **Civil Action No. 1:19-cv-00576**

**BLUESTONE COAL CORPORATION,**

        **Defendant.**

**SURREPLY TO DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION FOR STAY**

**INTRODUCTION**

Plaintiffs respectfully submit this Surreply in opposition to Defendant's motion for stay. The

justifications for this Surreply are twofold. First, on the very day that Defendant submitted its Reply

to this Court, it also produced in discovery material evidence that contradicts arguments in its Reply.

Second, Defendant makes new arguments in support of its stay motion in its Reply, including false

characterizations of the content of confidential settlement discussions. As explained below,

Defendant's representation that it has demonstrated compliance with its selenium limits at Outfall 006

is contradicted by evidence produced on the very day Defendant filed its Reply, and that

noncompliance means that the balance of the harms on the question of a stay favors Plaintiffs.

Accordingly, the proposed administrative consent order ("ACO") between the West Virginia

Department of Environmental Protection ("WVDEP") and Defendant does not warrant a stay of this

action.[1]

---

[1] Defendant also contends in its reply that Plaintiffs' characterizations of the ACO as "self-dealing"
and a "conflict of interest" are "ad hominem attack[s]," "groundless," "untrue," "baseless," and
"sign[s] of desperation." CM/ECF #92 at 1–2, 6 n.6. Yet Defendant does not even attempt to dispute

## I.  DEFENDANT VIOLATED THE MONTHLY AVERAGE SELENIUM LIMIT ON OUTFALL 006 IN AUGUST 2020, ESTABLISHING THAT IT REMAINS IN A STATE OF NONCOMPLIANCE AT THAT OUTFALL.

As the late Justice Scalia recognized in the context of Clean Water Act-regulated discharges,

[a] good or lucky day is not a state of compliance. Nor is the dubious state in which a past effluent problem is not recurring at the moment but the cause of that problem has not been completely and clearly eradicated. When a company has violated an effluent standard or limitation, it remains . . . 'in violation' of that standard or limitation

---

either that Governor Justice has a financial interest in Bluestone Coal Corporation or that Governor Justice has control over the WVDEP.

Governor Justice's 2020 West Virginia Ethics Commission Financial Disclosure Statement establishes that the Governor, during the past calendar year, held an interest with a fair market value of $10,000 or more in Bluestone Coal Corporation. Surreply Ex. 1 at 6, 8. It appears that the Governor has not put his financial interests in a blind trust or other conflict-mitigating arrangement, leading the West Virginia legislature to consider whether ethics reform is necessary. "Lawmakers Call for Ethics Reform to Deal With Billionaire Resort-Owning Governor," *ProPublica* (Aug. 21, 2019), available at https://www.propublica.org/article/lawmakers-call-for-ethics-reform-to-deal-with-billionaire-resort-owning-governor.

Moreover, the Governor controls the WVDEP. Under West Virginia law, WVDEP's cabinet secretary "shall be appointed by the Governor . . . and serves at the will and pleasure of the Governor." W. Va. Code §22-1-6(e).

"In self-dealing, an officeholder's official role allows her to affect one or more of her own personal interests." Stark, Conflict of Interest in American Public Life 41(2003) (emphasis added). Government officials can engage in self-dealing where the governmental entities they head provide financial benefits to the officials' business interests, regardless of the official's actual participation in the provision of benefits. Id. at 41–44; see also Smith v. United States, 305 F.2d 197, 213 (9th Cir. 1962) (upholding conviction of director of government agency for violating self-dealing prohibitions even in the absence of evidence of personal participation by the defendant).

Here, Defendant attempts to use an administrative settlement to reduce its exposure to financial penalties for violations of federal environmental laws. In that way, the ACO offers financial benefit to Defendant. It is uncontested that the Governor has a financial interest in Defendant and that he controls WVDEP. As explained by Stark and held in Smith, no evidence of personal participation is necessary for self-dealing to exist in these circumstances. As a result, Plaintiffs' characterizations of the ACO as "self-dealing" and a "conflict of interest" are relevant and well-supported.

so long as it has not put in place remedial measures that clearly eliminate the cause of the violations.

Gwaltney of Smithfield v. Chesapeake Bay Found., 484 U.S. 49, 69 (1987) (Scalia, J., concurring in part and concurring in the judgment). Defendant has insisted to this Court and apparently to WVDEP in negotiations surrounding the ACO that, despite having taken no action to treat selenium at Outfall 006 of WV/NPDES Permit WV1006304, it is in compliance with its selenium limits at Outfall 006. Memorandum Op. & Order, CM/ECF #76 at 2 ("Defendant also explains that Outlet 006 has been compliant with its selenium effluent limit for the last four months."); Memo. of Law in Support of D.'s Motion for Stay Pending Resolution of Proposed Consent Order With WVDEP, CM/ECF #84 ("[T]he draft Consent Order specifically recognizes . . . Bluestone has demonstrated compliance at Outlet 006.").[2] But recently produced evidence shows that Defendant's good fortune has run out and it remains in a state of noncompliance at Outfall 006.

Remarkably, on the very day that it insisted to this Court in its reply brief in support of its stay motion that Plaintiffs' claim for injunctive relief is moot because it is "absolutely clear" that permit violations will not recur, Defendant produced evidence to Plaintiffs that conclusively establish a permit violation in August 2020 at Outfall 006. Surreply Ex. 2. Specifically, that evidence establishes that on August 12, 2020, the selenium concentration in Defendant's discharge from Outfall 006 was 4.2 $\mu$g/L, and that on August 20, 2020 the selenium concentration in discharge from that outfall was 7.1 $\mu$g/L. Accordingly, the average monthly selenium concentration at Outfall 006 in August 2020 was 5.65 $\mu$g/L—in violation of the permit limit of 4.7 $\mu$g/L. Defendant's August 2020 violation of its average limit subjects it to a penalty for each day of the month, which amounts to 31 days and an

_____

[2] In its Reply brief, Defendant qualifies its representations about compliance at Outfall 006 by characterizing it as a recognition by WVDEP or "to the satisfaction of [WV]DEP", rather than as an ostensible fact, suggesting Defendant knew, when it filed its Reply, that an unqualified claim of present compliance at Outfall 006 would be false in light of the August 2020 violation discussed herein. CM/ECF #94 at 8, 10.

additional $1,729,800 in civil penalties. United States v. Smithfield Foods, Inc., 972 F. Supp. 338, 340 (E.D. Va. 1997), aff'd, 191 F.3d 516, 527 (4th Cir. 1999); 40 C.F.R. § 19.4; 85 Fed. Reg. 1751.

The evidence of Defendant's August 2020 violation of its selenium limits at Outfall 006 is relevant to Defendant's stay motion in three ways. First, it defeats Defendant's contention that Plaintiffs' claim for injunctive relief is moot because it is in compliance with its selenium limits at Outfall 006.[3] Second, it defeats Defendant's position that Plaintiffs' claim for civil penalties is moot because Defendant has not paid, and is not obligated to pay, the statutory maximum penalty for that violation. Pub. Interest Research Grp. of New Jersey, Inc. v. Elf Atochem N. Am., Inc., 817 F. Supp. 1164, 1171–72 (D.N.J. 1993) (holding that, in a Clean Water Act citizen suit to enforce permit violations, "the possibility that substantial additional penalties may by imposed [by the court] . . . creates a sufficient case or controversy to avoid mootness"). Finally, the August 2020 violation contradicts Defendant's argument that Plaintiffs face no prejudice from a stay because "Bluestone has achieved compliance with [its] selenium limits." CM/ECF #92 at 14.

## II.     DEFENDANT FAILED TO CARRY ITS HEAVY BURDEN TO JUSTIFY A STAY.

For the first time on reply, Defendant acknowledges that it must establish a hardship or inequity to support its stay motion that outweighs potential prejudice to Plaintiffs. CM/ECF #92 at 13 (citing White v. Ally Financial, 969 F. Supp. 2d 451 (S.D. W. Va. 2013)). As the Fourth Circuit has held, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).

---

[3] Plaintiffs note that although modification of the selenium limits on Outfalls 005, 007, and 008 if WVDEP were to finalize the draft permit might moot Plaintiffs' claims for injunctive relief on those outfalls, such a modification would not moot Plaintiffs' claims for civil penalties for past violations at Outfalls 005, 007, and 008. See, e.g., Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd., 890 F.2d 690, 697 (4th Cir. 1989).

Despite its recognition of the applicable test, Defendant still fails to carry its heavy burden. The only hardship that it articulates is a "need for Bluestone . . . to expend further funds defending this action if the Court would ultimately determine the case should be dismissed as moot." CM/ECF #92 at 13–14. That argument falls short because "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of [the Supreme Court's landmark stay decision in] Landis [v. North Amer.. Co., 299 U.S. 248, 254 (1936)]." Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005).

Rather than establish its own hardship, Defendant attempts to downplay the readily apparent prejudice to Plaintiffs by asserting that its selenium discharges are lawful and by making representations about confidential settlement discussions between the Parties. CM/ECF #92 at 14. Defendant made those arguments for the first time in its reply brief.

Defendant's first effort to downplay the prejudice to plaintiffs is to once more insist that it is not violating the Clean Water Act. Despite Defendant's protests to the contrary, its ongoing discharges of a toxic pollutant in excess of its permit limits is causing environmental harm and, consequently, prejudice to Plaintiffs. As Defendant acknowledges, West Virginia's water quality standard for selenium is exceeded where, inter alia, selenium fish tissue concentrations exceed 8.0 mg/kg. CM/ECF #92 at 9; W. Va. C.S.R. §47-2-8.27.1. On September 8, 2020, Defendant produced evidence in discovery of two fish collected downstream from Outfall 006 in July 2020 with tissue concentrations of 8.4 mg/kg and 8.6 mg/kg. Surreply Ex. 3 at 5. Those results are consistent with a fish tissue concentration downstream of Outfall 006 collected by Defendant in December 2019 of 8.809 mg/kg. CM/ECF #92-4 at 24.[4] Those elevated fish tissue concentrations are evidence of ongoing

---

[4] Contrary to Defendant's contention that it did not "request . . . to utilize fish tissue analysis at Outlet 006" in its permit modification request "[b]ecause Outlet 006 has been in substantial compliance over the last several months," Defendant did not seek a permit modification for Outfall 006 at least in part

5

environmental harm from Defendant's continuing violations and, hence, of the prejudice to Plaintiffs' interests from a stay.

Defendant's second effort to downplay the prejudice to Plaintiffs is to offer a description of the terms of a potential settlement floated by Plaintiffs' counsel, and then contend that "if Bluestone were to pay Plaintiffs a significant amount of money and transfer substantial property to them, then [Plaintiffs] have no concern about any potential harm due to selenium at Red Fox for the next three years." CM/ECF #92 at 14–15. As a threshold matter, in the foregoing quote Defendant intentionally mischaracterizes the very settlement terms Defendant describes. Implicit within that mischaracterization is a preposterous accusation of extortion. The purported recipient of the $600,000 payment and the property would be the West Virginia Land Trust—an independent, non-profit third party—**not the Plaintiffs**. CM/ECF #92 at 14. The goal behind the property donation was the permanent protection of that land from development or exploitation and the completion of a public access corridor from the City of Beckley to the New River Gorge National River.  The property at issue—believed to have substantial value because of its location and size—is located between land already under the control of the West Virginia Land Trust and the New River Gorge National River and is owned by Stretcher Neck Properties, LLC (another Justice family company). See Surreply Ex. 1 at 13. As Defendant is well aware, the ultimate goal was public ownership of the property to benefit Beckley and Raleigh County generally.  Protecting forests in sensitive watersheds like the New River has substantial water quality benefits, and any money received by the West Virginia Land Trust in settlement would have also been earmarked to protect or improve the State's water quality. So, far from improper, the proposed settlement offer was designed to benefit the public and the waters of the State.

---

because the fish with elevated selenium loads downstream of that outfall made it likely that Defendant would ultimately receive more stringent effluent limitations. Surreply Ex. 4 (Doss Tr. at 43–45).

Defendant's mischaracterization overlooks the common practice in settlement of Clean Water Act citizen suits of allocating funds to a Supplemental Environmental Project in the region where the violations occurred to offset, or in lieu of, civil penalties, which must be paid to the United States Treasury. See, e.g., Sierra Club v. Powellton Coal Co., LLC, Civ. No. 2:08-cv-01363, 2010 WL 4791590, at *3 (S.D. W. Va. Nov. 18, 2010). The West Virginia Land Trust has implemented multiple Supplemental Environmental Projects using monies received under consent decrees entered by this Court in Clean Water Act citizen suits. See, e.g., Ohio Valley Envtl. Coal., Inc. v. Patriot Coal Corp., Civ. No. 3:11-cv-00115, 2012 WL 895939, at *3 (S.D. W. Va. Mar. 15, 2011) (approving consent decree that included a payment of $6,750,000 to the West Virginia Land Trust in order to fund a Supplemental Environmental Project to restore riparian areas and preserve land in the affected watersheds).

In all events, Defendant's representations of confidential settlement discussions violate Rule 408 and cannot be used to weigh the competing interests in a stay.   Defendant has, with its improper disclosure in its Reply, forced Plaintiffs to explain and defend a settlement proposal that, under the Rules and protocols of good faith negotiation among lawyers, should have remained confidential. Defendant attempts to justify its disregard of fair  dealing and the strictures of Rule 408 by contending that it may use statements made in confidential settlement discussions to rebut contentions of irreparable harm under Rule 408(b). CM/ECF #92 at 14. Defendant relies on two unpublished opinions from foreign district courts for its position, but ignores recent Fourth Circuit precedent that forbids Defendant's reliance on evidence of confidential settlement discussions in these circumstances.

The Fourth Circuit has long recognized that "[t]he public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions." Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652, 654 (4th Cir. 1988). And the Fourth Circuit has further explained that "[a]ttorneys must be afforded wide latitude in the conduct of

settlement negotiations if [Rule 408] is to have any effect." Id. Based on the strong public policies underlying Rule 408, the Fourth Circuit held on September 1, 2020, that Rule 408(b) does not allow the admission of evidence of settlement discussions for any purpose where the purpose is "inseparable from proving or disproving the validity or amount of the disputed claim." Macsherry v. Sparrows Point, LLC, ___ F.3d ___, 2020 WL 5200687, at *10 (4th Cir. Sept. 1, 2020).

Here, the purported purposes for which Defendant attempts to offer evidence of confidential settlement discussions are inseparable from proving or disproving the validity or amount of Plaintiffs' claims. First, Defendant represents that Plaintiffs were willing to accept a donation of a specific dollar figure and a parcel of valuable property to a third party. CM/ECF #92 at 14–15. Such evidence goes directly to the amount of Plaintiffs' claim for civil penalties, and hence whatever ostensible purpose Defendant offers is inseparable from the claimed amount of civil penalties. Hence, under Macsherry, the Court may not consider Defendant's proffer.

Second, Defendant's representation that Plaintiffs were willing to allow Defendant three years to comply with the selenium limits in its permit goes directly to the validity of Plaintiffs' claim for injunctive relief. Accordingly, Defendant cannot offer representations of Plaintiffs' settlement statements for purposes of evaluating prejudice to Plaintiffs from a stay because that purpose is inseparable from the purpose of contesting the validity of Plaintiffs' claim for injunctive relief. Macsherry, 2020 WL 5200687, at *10. Accordingly, the Court may not consider Defendant's representations of Plaintiffs' confidential statements for any purpose in this litigation.

Rule 408 acknowledges that evidence of statements made in confidential settlement negotiations "is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position." Fed. R. Evid. 408, Advisory Committee Notes. At most, Defendants' representations of Plaintiffs' settlement position show only that Plaintiffs were willing to forbear further relief for their harms and compromise their claims on certain terms. In other words,

at most Plaintiffs' statements show their desire for peace. Without those terms, Plaintiffs are unwilling to forbear further relief or compromise their claims. Nor are they willing to accept further delay in obtaining that relief.

In short, the selenium bioaccumulating in fish downstream of Outfall 006 establishes prejudice to Plaintiffs from Defendant's ongoing violations of federal law. Moreover, Defendant's bad faith should not be rewarded by permitting it to use statements made by Plaintiffs' counsel in confidential settlement discussions to question the prejudice to Plaintiffs. Plaintiffs' counsel has negotiated many settlement agreements over the years and has never, before now, encountered a party or counsel willing to impermissibly exploit confidential statements made in good faith to try to reach settlement in a pernicious effort to score points. Plaintiffs note that Defendant's counsel also made statements during those negotiations that it would not want disclosed to this Court for fear it would compromise Defendant. Such statements are made in all settlement negotiations—that is the very nature of trying to reach compromise. Plaintiffs, however, will not follow Defendant's lead by disclosing its laywer's confidential statements. Finally, even if Defendant could rely on evidence of Plaintiffs' counsels' statements, the most that evidence would establish is that Plaintiffs were willing to compromise on certain terms. Accordingly, Defendant's effort to downplay the prejudice to Plaintiff from a stay fails.

## CONCLUSION

Because this case will not be mooted by finalization of the ACO, because Defendant has failed to establish any hardship or inequity absent a stay, and because Plaintiffs will be prejudiced by further delay in this matter, Plaintiffs respectfully request that the Court deny Defendant's stay motion.

Respectfully submitted,

**/s/ Derek O. Teaney**
DEREK O. TEANEY (WVBN 10223)
J. MICHAEL BECHER (WVBN 10558)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
P.O. Box 507

Lewisburg, WV 24901
Telephone: (304) 646-1182
Email: dteaney@appalmad.org

JAMES M. HECKER (DCBN 291740)
PUBLIC JUSTICE
1620 L Street, NW Suite 630
Washington, DC 20036
Telephone: (202) 797-8600, ext. 225
Email: jhecker@publicjustice.net

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BLUEFIELD DIVISION

**OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB,**

        **Plaintiffs,**

        **v.**                                      **Civil Action No. 1:19-cv-00576**

**BLUESTONE COAL CORPORATION,**

        **Defendant.**

## CERTIFICATE OF SERVICE

I, Derek O. Teaney, hereby certify that, on September 17, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to each of the following CM/ECF participants:

MICHAEL W. CAREY
S. BENJAMIN BRYANT
CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
707 Virginia Street, East, Suite 901
P.O. Box 913
Charleston, WV 25323
mwcarey@csdlaw.com
sbbryant@csdlawfirm.com
*Counsel for Defendants*

                        /s/ Derek O. Teaney
                        DEREK O. TEANEY (WVBN 10223)