IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

OHIO VALLEY ENVIRONMENTAL COALITION,
WEST VIRGINIA HIGHLANDS CONSERVANCY,
APPALACHIAN VOICES, and
THE SIERRA CLUB

    Plaintiffs,

v.                              CIVIL ACTION NO. 1:19-00576

BLUESTONE COAL CORPORATION,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Bluestone Coal Corporation's motion for a stay of proceedings in this case. (ECF No. 83.)  For the reasons that follow, the motion to stay is **DENIED**.

**I.  Background**

The court's previous scheduling order set this case for trial on August 11, 2020.  On July 28, 2020, upon defendant's motion, the court continued trial to September 23, 2020.[1]  On Friday, September 4, 2020, defendant moved to stay proceedings, arguing that this case would soon be moot.  The court then

---

[1] In granting that motion, the court acknowledged that it "share[d] plaintiffs' concern that a long delay of this matter would prejudice the plaintiffs" but reasoned that countervailing health concerns justified a modest continuance.  (ECF No. 76.)

vacated the pretrial conference set for September 8, and in lieu of the final settlement conference set for September 22, 2020, set a hearing on defendant's motion for stay.

Defendant represents that a stay until November 11, 2020, would likely be sufficient to enable the West Virginia Department of Environmental Protection ("WVDEP") to finalize an administrative consent decree that, defendant further represents, will render this case (at least partially) moot. Plaintiffs oppose the motion to stay, arguing that this case will <u>not</u> soon be moot and that they have a right to proceed to trial in the absence of an appropriate justification for a stay. Plaintiffs argue that defendant has not met its heavy burden of showing that a stay is appropriate. Plaintiffs further argue that no court has gone so far as to order a stay on the eve of trial based on the argument that an administrative proceeding will soon moot a Clean Water Act ("CWA") case.

It is undisputed that the WVDEP has not filed a formal lawsuit to address the subject matter of this dispute. After hearing the parties' arguments on the motion on September 22, 2020, the court took the motion under advisement.

**II. <u>Discussion</u>**

    **a. Legal Standard for a Motion to Stay Proceedings**

Because deciding a motion to stay requires a court to "weigh competing interests and maintain an even balance," <u>Landis</u>

v. N. Am. Co., 299 U.S. 248, 254-55 (1936), and because this balancing act allows for a large amount of discretion, courts in this circuit have described the applicable factors in differing ways.  A 2017 decision from the Eastern District of Virginia sets forth five factors, Dale v. Jordan, 2017 WL 11507178, at *1 (E.D. Va. Feb. 27, 2017),[2] while a 2013 decision from this district set forth only three, White v. Ally Fin. Inc., 969 F. Supp. 2d 451, 462 (S.D.W. Va. 2013).[3]  The court finds the factors set forth in the White case to be appropriate here: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party."  Id. at 462.[4]

    **b.**    **Limitations on Power to Stay Proceedings**

While a district court's power to grant a motion to stay is "well recognized," it is not "without limitation."  Williford v. Armstrong World Indus., 715 F.2d 124, 127 (4th Cir. 1983).  "The party seeking a stay must justify it by clear and convincing

---

[2] They are "(1) [the] interest of plaintiff in proceeding expeditiously balanced against prejudice to plaintiff caused by delay, (2) burden on defendant, (3) convenience to the court, (4) interests of persons not party to the civil litigation and (5) the public interest."  Id. at *1.
[3] In its motion, defendant did not set forth any standard, but its reply points to White. Plaintiffs' opposition also points to White.
[4] Judge Goodwin described these as the Landis factors because he derived them from the Supreme Court's opinion in Landis v. North Am. Co., 299 U.S. 248 (1936).  This court will also refer to them as the Landis factors.

circumstances outweighing potential harm to the party against whom it is operative." Id. (emphasis added). In seeking a stay, a litigant argues in the shadow of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Colo. River Water Cons. Dist. v. United States, 424 U.S. 800, 817 (1976). Chief Justice Roberts has described the exercise of federal jurisdiction as the "constitutional birthright of Article III judges." Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1951 (2015) (Roberts, C.J., dissenting). Indirectly, this "birthright" extends to the litigants who bring cases within the proper jurisdiction of Article III courts.

As Chief Justice Marshall explained, an exercise of jurisdiction is an exercise of sovereignty. See The Schooner Exch. v. McFaddon, 11 U.S. 116, 236 (1812) ("The jurisdiction of courts is a branch of that which is possessed by the nation as an independent sovereign power.") Thus, to challenge jurisdiction is to challenge sovereignty. See id.; see also 1 William Blackstone, Commentaries ch. 7 ("His judges are the mirror by which the king's image is reflected. It is the regal office, and not the royal person, that is always present in court, always ready to undertake prosecutions, or pronounce judgment, for the benefit and protection of the subject."). Asking a federal court to put its jurisdiction on hold on

4

mootness grounds is thus a request to set aside the sovereignty of the United States, albeit temporarily.

Of course, in our federal system, the United States is not the only sovereign. Alden v. Maine, 527 U.S. 706, 748 (1999) ("Although the Constitution grants broad powers to Congress, our federalism requires that Congress treat the States in a manner consistent with their status as residuary sovereigns and joint participants in the governance of the Nation."). When Congress passed the CWA, it took federalism interests into account. Specifically, 33 U.S.C. § 1365(b) requires citizens who want to sue in federal court to first give the state 60 days to file its own lawsuit and address the pollution. If the state fails to do so (as the state failed to do here), then jurisdiction rests with the federal courts to hear citizen suits. See id.

    c.    **The Landis Factors**

The Landis factors counsel against a stay in this case. First, the judicial economy that defendant advertises is fleeting. The only issues left for trial in this case are the amount of damages and whether injunctive relief is appropriate. In passing the CWA, Congress determined that this court is competent to decide those questions. As to damages, the court does not necessarily need scientific expertise to determine what level of civil penalties would be sufficient to deter future violations. As to injunctive relief, this court may have less

expertise than WVDEP, but WVDEP had an opportunity to pursue a resolution of the claims presented in this case and failed to do so. When Congress gave citizens the right to pursue relief in federal court when a state agency fails to do so, it made a calculated choice to value redress, however imperfect, over inaction by the state experts.

Defendant's arguments about agency expertise are unavailing. "When Congress enacted the citizen suit provision of the Clean Air Act, it chose to allocate federal judicial resources to the oversight of the nation's air pollution problem." St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C., 348 F. Supp. 2d 765, 768 (E.D. La. 2004). When Congress passed the CWA, it made a similar choice about allocation of judicial resources to oversight of the nation's water pollution problem. If Congress valued agency expertise above all else, it could have provided that whenever agencies initiate administrative proceedings, federal courts are divested of continued jurisdiction over citizen suits. But Congress did not do that. The text of the CWA makes no provision for precluding federal jurisdiction when a state commences an administrative action pre-citizen suit, and it certainly does not provide for stripping a federal court of its jurisdiction when a state agency commences an administrative action post-citizen suit.

As plaintiffs point out, a stay may actually militate against judicial economy.  By stepping aside to allow WVDEP to attempt to fashion a remedy in a venue that the CWA does not contemplate (an administrative venue), complicated questions are likely to arise about how the court can fashion additional relief (if appropriate) around an administrative consent order.  A delay is also likely to exacerbate and prolong the larger question of mootness, as it seems unlikely that the case will be more than partially moot (if at all).  In sum, simply allowing the case to proceed to trial on the narrow issues that are left appears to be the most judicially economical route.

The second factor is hardship to the moving party if the action is not stayed.  Defendant has failed to show hardship beyond having to face litigation expenses and potential liability under the CWA (which has already been established by summary judgment).  This is insufficient to warrant a stay.  Defendant has not shown that this action will be moot or that the administrative consent decree will be inconsistent with whatever damages and injunctive relief this court may award.  Should WVDEP issue an administrative order that could impact this proceeding, the Court will address that issue when it arises.  See St. Bernard, 348 F. Supp. 2d at 768.

Finally, plaintiffs have shown how a stay of this matter will harm them under the third factor:  prejudice to the non-

moving party. They have alleged that their members continue to suffer injury as a result of Bluestone's violations. Specifically, they allege,

> This Court has recognized that "[s]elenium impacts the reproductive cycle of many aquatic species, can impair the development and survival of fish, and can even damage gills or other organs of aquatic organisms subjected to prolonged exposure." Hobet II, 723 F. Supp. 2d at 900. Defendant's continued violations of its selenium limits will therefore cause irreparable harm to Plaintiffs' environmental interests during the pendency of the requested stay.

(ECF No. 90, at 19.) This factor weighs against a stay of this case.

### III. Conclusion

At first glance, defendant's motion appears to ask for modest relief: simply put the case on hold for a little while. But without sufficient cause for a stay, a delay in bringing this case to trial would be unjust to plaintiffs. Moreover, because defendant grounds its motion on mootness, the motion implicates significant questions about this court's jurisdiction under Article III of the Constitution. If defendant brings forth evidence that the case is (as opposed to will be) moot, the court will address the larger issue of jurisdiction at that time. At present, the court has jurisdiction and a duty to exercise it.

In summary, the court has fully considered the parties' written submissions and arguments and finds that defendant has

not met its burden to justify a stay in this matter. Accordingly, and for the reasons expressed above, defendant's motion to stay (ECF No. 83) is **DENIED**.

The court hereby **sets this matter for a bench trial on October 15, 2020, at 9:30 a.m., in Bluefield.**

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO ORDERED this 6th day of October, 2020.

                                            Enter:

                                            David A. Faber
                                            Senior United States District Judge