IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

WEST VIRGINIA HIGHLANDS
CONSERVANCY, APPALACHIAN
VOICES, and THE SIERRA CLUB

    Plaintiffs,

v.                                          CIVIL ACTION NO. 1:19-00576

BLUESTONE COAL CORPORATION,

    Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the court is plaintiffs' Motion for an Award of Attorneys' Fees, Expert Witness Fees, and Expenses (ECF No. 116.)  For the reasons that follow, the motion is **GRANTED**, although the court will award less than the total requested.

## I.   <u>Background</u>

On February 17, 2021, the court entered a consent decree in this case.  The consent decree, however, expressly left unresolved plaintiffs' claim for fees and costs under 33 U.S.C. § 1365(d) and 30 U.S.C. § 1270(d).

On February 24, 2021, plaintiffs filed this motion, seeking $163,254.25 in attorney's fees, $19,044.94 in expert witness fees, and $5,013.75 in costs, for a total of $187,312.94.[1]

---

[1] The conclusion to plaintiffs' memorandum in support of their motion requests a total of $182,299.19.  (ECF No. 117.)  That

Defendant opposes the motion.  Defendant concedes that plaintiffs are prevailing parties entitled to fees and costs in the court's discretion, and defendant does not contest the hourly rates that plaintiffs have put forth for the lodestar calculation.  Also, defendant does not appear to contest the $5,013.75 in costs that plaintiffs claim.

Instead, defendant focuses its opposition on the fees plaintiffs incurred for their expert witnesses and on the attorney's fees associated with those experts.  Defendant objects to the full amount of these figures, totaling $29,181.65 by defendant's calculation, and asks the court to reduce accordingly any fee award that it finds appropriate to grant. Defendant argues that the experts (and, by extension, the associated legal work) was unnecessary to this rather straightforward set of facts, and that, moreover, the expected testimony was erroneous and irrelevant.

Plaintiffs respond by pointing out that when the case settled, trial was imminent and the expected testimony of the experts, while disputed by defendants, was undoubtedly relevant to the issues for trial.  Plaintiffs suggest that the expert

---

total appears to omit erroneously plaintiffs' claimed costs. Both the motion and the memorandum list costs totaling $5,013.75.  Thus, despite the apparent error in plaintiffs' total, defendant received fair notice that plaintiffs are seeking these costs.

testimony was also presumably admissible because defendant had

not filed a pretrial motion to exclude or limit it.  Moreover,

say plaintiffs, a fee motion is not the proper context for

disputing the merits of a case, which is what defendant attempts

to do when it criticizes the substance of plaintiffs' experts'

reports.

## II.  **Legal Standard**

Our legal system operates under the default rule that each

side bears its own litigation fees and costs.  Perdue v. Kenny

A. ex rel. Winn, 559 U.S. 542, 550 (2010).  Congress "departs"

from this default rule "from time to time."  Ohio River Valley

Env't Coal., Inc. v. Green Valley Coal Co., 511 F.3d 407, 413

(4th Cir. 2007).  Two examples of such a departure are in Clean

Water Act ("CWA") and Surface Mining Control and Reclamation Act

("SMCRA") cases.  See 33 U.S.C. § 1365(d) (CWA); 30 U.S.C.

§ 1270(d) (SMCRA).

The CWA provides, "The court, in issuing any final order in

any action brought pursuant to this section, may award costs of

litigation (including reasonable attorney and expert witness

fees) to any prevailing or substantially prevailing party,

whenever the court determines such award is appropriate."  33

U.S.C. § 1365(d).  In like manner, the SMRCA provides, "The

court, in issuing any final order in any action brought pursuant

to subsection (a) of this section, may award costs of litigation

(including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  30 U.S.C. § 1270(d).

District courts are expected to use their discretion in resolving motions for fees and costs.  Daly v. Hill, 790 F.2d 1071, 1078-79 (4th Cir. 1986).  Such motions are more factual in their nature than legal.  See id.  But district courts in this circuit are also expected to follow "a three-step process."  McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013).  Those three steps are (1) apply the dozen factors set forth in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) in determining the "lodestar" figure; (2) subtract for unsuccessful claims (unless they are related to successful ones); and (3) determine what percentage of the remaining amount should be awarded by reference to the prevailing party's degree of success.  Id. (citations omitted).

The lodestar figure is the product of the reasonable number of attorney hours to litigate the case and the reasonable rate for those hours.  Id.[2]  As for the Johnson factors, they are

---

[2] If more than one attorney litigated the case for the prevailing party, the reasonable rate obviously may vary depending on the expertise of the attorney billing each portion of the total hours.  See Lusk v. Virginia Panel Corp., 96 F. Supp. 3d 573, 582 (W.D. Va. 2015) (finding $300 per hour reasonable for partners and $150 per hour reasonable for an associate).

> (1) the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the
> outset of the litigation; (7) the time limitations
> imposed by the client or circumstances; (8) the amount
> in controversy and the results obtained; (9) the
> experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and
> length of the professional relationship between
> attorney and client; and (12) attorneys' fees awards
> in similar cases.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008).[3]

"Reasonableness is the touchstone of any award of

attorneys' fees and expenses." E.I. DuPont de Nemours & Co. v.

Kolon Indus., No. 3:09CV058, 2013 WL 458532, at *2 (E.D. Va.

Feb. 6, 2013). "When properly calculated, the lodestar figure

represents a presumptively reasonable fee." Project Vote/Voting

for Am., Inc. v. Long, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012);

see also City of Burlington v. Dague, 505 U.S. 557, 562 (1992);

McAfee v. Boczar, 738 F.3d 81, 88-89 (4th Cir. 2013) ("The

---

[3] The Supreme Court has contrasted the Johnson factors and the
lodestar method, endorsing the latter as the better of the two.
See Perdue, 559 U.S. at 551. While recognizing the potential
overlap between the two methods and stating that the same
factors should not be considered twice, the Fourth Circuit Court
of Appeals has not abandoned the Johnson factors. See McAfee,
738 F.3d at 88-90; E. Associated Coal Corp. v. Director, 724
F.3d 561, 570 n.5 (4th Cir. 2013) ("[C]onsideration of [the
Johnson] factors likewise is subject to the Supreme Court's
admonition regarding double-counting.").

Supreme Court has indulged a 'strong presumption' that the
lodestar number represents a reasonable attorney's fee.").

"The party requesting a fee bears the burden of
establishing entitlement to an award and documenting the
appropriate hours expended and hourly rates."  Project Vote, 887
F. Supp. 2d at 709.  Among the appropriate evidence to show what
rates are reasonable is "evidence of fees [the attorney]
received in the past."  See Westmoreland Coal Co. v. Cox, 602
F.3d 276, 290 (4th Cir. 2010).

## III.  Discussion

### a.   Lodestar Calculation

Plaintiffs have proposed lodestar inputs for their three
attorneys as follows:

**James Hecker:**  167.25 hours at $475 per hour, for a total
of $79,443.75;

**Derek Teaney:**  136.1 hours at $355 per hour, for a total of
$48,315.50; and

**Michael Becher:**  114.5 hours at $310 per hour, for a total
of $35,495.

Defendant has not contested the reasonableness of the hourly
rates, but defendant does contest the total hours.
Specifically, defendant asks the court to exclude all hours
related to the plaintiffs' experts, whom defendant says did not
advance plaintiffs' case.  Relatedly, defendant directly

challenges plaintiffs' claim for expert fees, saying they should

be disallowed in their entirety.  Evaluating the lodestar inputs

that plaintiffs propose against the Johnson factors, the court

determines that the inputs that plaintiffs have proposed are

largely correct.

### 1. Time and Labor Expended (Reasonable Hours)[4]

Because the lodestar is ultimately the product of

reasonable hours at reasonable rates, this factor calls for

considering what time and labor were reasonably expended.

Plaintiffs' three attorneys state that they each worked over 100

hours on this case, for a combined total of approximately 418

hours.  Defendant does not contend that plaintiffs' counsel

generally worked too many hours but does contend that the 24.95

hours spent on expert issues were unnecessary.

As an initial matter, the court finds that the non-expert

hours of 392.9 are a reasonable lodestar input, with one small

exception.[5]  The court makes this finding in light of the hours'

---

[4] Because this section implicates the reasonableness of the
expert witness fees claimed, the court will address plaintiffs'
claim for those fees in this section.

[5] The small exception is for Mr. Teaney's entry of 0.5 hours for
securing lodging for the trial team and witnesses.  (See ECF No.
116-2, at 20.)  Having had the opportunity to observe Mr.
Teaney's briefing and oral argument, the court has no qualms
with his proposed hourly rate for legal work.  However, because
it is appropriate to reduce the rate for an attorney's
performance of administrative work, the court will reduce the
rate for this entry by half, for a total reduction of $88.75.

facial reasonableness, when considering the extent of the litigation, and given the lack of specific criticism from defendant as to the non-expert hours claimed.  Moreover, the entries on the timesheets appear reasonable.

That leaves 24.95 remaining hours (those spent on expert issues) and the resolution of defendant's contention that these hours were unreasonable.  Those hours translate to $10,136.75 in attorney's fees.  And the expert fees themselves amount to $19,044.94.  The grand total at issue in this objection is $29,181.69.  Defendant says the expected expert testimony in this case was irrelevant, unhelpful, and not logically related to the case.  Defendant's position is that the experts did not help establish liability but were merely engaged "to attempt to maximize potential civil penalties."  (ECF No. 118, at 2.).

Plaintiffs engaged two experts:  Jonathan Schefftz and Wane Schneiter.  Schneiter, an engineer, was expected to testify that defendant should have (and should still) use SeHawk bioreactor units to remedy the selenium discharge problem.  Defendant criticizes this expected testimony as plainly wrong and as the product of too narrow an analysis.  Shefftz, an economist, was expected to testify regarding appropriate civil penalties.

---

See Conservation L. Found., Inc. v. Roland Teiner Co., 832 F. Supp. 2d 102, 106 (D. Mass. 2011) (cutting rate in half for administrative work).

Defendant says that Shefftz's conclusion—that at least $3.3 million in penalties would be appropriate—erroneously assumes the propriety of installing the SeHawk bioreactor units.

> Defendant further states:
>
> In other words, both Mr. Schneiter and Mr. Schefftz limited their opinions to just one of several possible methods available to BCC to correct the selenium problem.  Yet BCC never intended to use SeHawk bioreactors, and did not even seriously consider using them, because the SeHawk units were prohibitively expensive.

(Id. at 3 (footnote omitted).)

Plaintiffs reply that although the court's award of summary judgment on liability limited the scope of the issues for trial to those related to appropriate remedies, engaging these experts was integral to preparing for a trial on those issues.  They say they needed Schneiter to help the court understand the technical issues involved in achieving compliance, and they needed Schefftz to help the court understands the economics informing the penalties analysis.  And such experts are routinely presented in these cases, say plaintiffs.

Further, plaintiffs deem unsubstantiated and unavailing defendant's claim that the proposed technology was cost-prohibitive.  They say cost does not excuse non-compliance, and it would be defendant's burden to come forward with a less expensive means of achieving compliance.  Moreover, plaintiffs

9

contend, a post-settlement fee application is not the proper

context in which to raise disputed issues of fact.

The court will allow the disputed attorney's fees and

expert fees at a twenty percent reduction.  A federal court may

decline to award fees for an expert who proves unhelpful.  Am.

Canoe Ass'n, Inc. v. City of Louisa, 683 F. Supp. 2d 480, 499

(E.D. Ky. 2010).  From the court's vantage point, retaining

these experts appears to have been reasonable, and it appears

that the testimony would have been helpful.  By settling prior

to trial, defendant gained the benefit of limiting its exposure

related to these experts' fees.  And plaintiffs are correct that

defendant's argument pushes the boundaries of permissibility by

touching upon factual issues that were settled.[6]  A party cannot

settle and then dodge a fee application by predicting a

favorable outcome, had the case proceeded to trial.

On the other hand, because the settlement obviated the need

for a trial, the court never received an opportunity to evaluate

just how helpful the experts would be, and thus, how reasonable

their fees are.  Defendant has made a focused argument and has

---

[6] See E. Associated Coal Corp. v. Director, 724 F.3d 561, 577
(4th Cir. 2013) (noting that fee petitions "should not result
'in a second major litigation'") (quoting Hensley v. Eckerhart,
461 U.S. 424, 437); see also E.E.O.C. v. Propak Logistics, Inc.,
746 F.3d 145, 157 (4th Cir. 2014) (Wilkinson, J., concurring)
(criticizing a party for "rehash[ing]" merits arguments in the
context of a fee petition).

plausibly called into question the reasonableness of the expert fees and related attorney's fees.  Though limited, there is enough merit in this argument to warrant a modest reduction in the lodestar.

Accordingly, the court will reduce the ultimate lodestar to reflect a 20 percent across-the-board reduction in expert fees and related attorney's fees, which amounts to a reduction of $5,836.34 ($2,027.35 for attorney's fees and $3,808.99 for expert fees).

### 2. Novelty and Difficulty of Issues

This case did not appear to be extraordinarily complex, as environmental cases go.  But plaintiffs' attorneys faced skilled counsel who put forth a formidable defense, and there were some thorny issues to address.  This factor calls for no adjustment, as the case on the whole appears to have been of average difficulty.

### 3. Skill Required to Perform the Legal Services Properly

This case involved a specialized area of the law for which plaintiffs' counsel were well-prepared by experience in other cases.  To litigate the case effectively, counsel presumably drew upon their skills both in environmental law matters and in federal practice more generally.  Because the court finds that the rates and hours set forth by plaintiffs accurately reflect

the skill needed to take on this case and reach a favorable outcome, this factor calls for no adjustment.

### 4. Attorneys' Opportunity Costs

There is no indication that this case had more than an average effect on plaintiffs' attorneys' ability to take on other work.  Thus, this factor calls for no adjustment.

### 5. Customary Fee for Like Work

The declarations of plaintiffs' counsel establish that their fees are commensurate with other fees awarded in litigation of this variety.  The same or similar rates have been approved for plaintiffs' counsel in similar cases.  Thus, this factor calls for no adjustment.

### 6. Attorneys' Expectations at Outset

There is no indication that this case proved to be any more or any less difficult than plaintiffs' counsel expected it to be.  Thus, this factor calls for no adjustment.

### 7. Client or Case-specific Time Limitations

The schedule in this case was impacted by the COVID-19 epidemic.  Otherwise, the time limitations were typical.  Thus, this factor calls for no adjustment.

12

**8. Amount in Controversy versus Result Obtained**

This factor is subsumed within step three, below, of the analysis required in this circuit, so the court will refrain from considering it here as well.[7]

**9. Attorneys' Experience, Reputation, and Ability**

Plaintiffs' attorneys have impressive credentials and appear to be well regarded.  There is also a wealth of experience among them.  The court finds that these considerations are fully reflected in the hourly rates that plaintiffs' counsel have proposed.  Thus, this factor calls for no adjustment.

**10. Undesirability of Case within Legal Community**

While some members of the legal community may not be interested in representing plaintiffs in this case, that is probably more a result of the nature of their practices.  The case could also be perceived as an affront to an industry that has been important to West Virginia's economy historically. Beyond this, however, this is little indication that the case was particularly undesirable among members of the legal community as a whole.  Thus, this factor calls for no adjustment.

---

[7] See footnote 3, supra.

**11. Nature and Length of Attorney-client Relationship**

Plaintiffs' attorneys appear to have longstanding relationships with their organizational clients and appear committed to similar goals in the area of environmental law. The court does not find it appropriate to adjust upward or downward based on this factor in this case. Thus, this factor calls for no adjustment.

**12. Attorney's Fees Awards in Similar Cases**

As discussed in factor five, the attorney declarations here establish that the fees requested are commensurate with similar awards in similar cases. Thus, this factor calls for no adjustment.

**b.   Lodestar Figure**

In light of the foregoing analysis, the arguments in the briefs, and the declarations of plaintiffs' counsel, the court determines that the total lodestar figure is **$161,138.15**. To arrive at this figure, the court took the original proposed lodestar of $163,254.25 and subtracted $2,027.35, representing a 20% reduction for plaintiffs' legal work associated with their experts and $88.75, as a result of applying a lower rate for a half hour of attorney work spent on an administrative task.

**c.   Adjustment for Unsuccessful Claims**

"After a lodestar figure is calculated, the Court must determine whether the fee award should be reduced to reflect the

time counsel spent on unsuccessful claims that are unrelated to

the successful claims." Crump v. U.S. Dep't of Navy, 245 F.

Supp. 3d 692, 716 (E.D. Va. 2017) (emphasis in original).  The

court granted summary judgment to plaintiffs on the issue of

liability both on their CWA and SMCRA claims.  (ECF No. 73.)

Thus, there are no unsuccessful claims for which to adjust the

lodestar.

### d.    Adjustment for Degree of Success

The final step is as follows:  "Once the court has

subtracted the fees incurred for unsuccessful, unrelated claims,

it then awards some percentage of the remaining amount,

depending on the degree of success enjoyed by the plaintiff."

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008).

This step is somewhat in tension with the presumption that the

lodestar is reasonable.  Perdue, 559 U.S. at 553-54 (suggesting

that departures from lodestar should be rare).  Accordingly,

this step does not involve simply reducing a requested award by

reference to the amount sought versus the amount obtained.

Instead, the question is whether the plaintiffs' "level of

success . . . makes the hours reasonably expended a satisfactory

basis for making a fee award."  See McAfee, 738 F.3d at 92

(emphasis added).

Here, there is a satisfactory basis for a significant fee

award, but not quite for the full amount of the lodestar.

15

Plaintiffs achieved significant injunctive relief and monetary payments by virtue of the negotiated consent decree.  As to the monetary payments, these were $30,000 to the United States and $270,000 to an environmental mitigation project.  The court approved the consent decree and offers no criticism thereof. The court notes, however, that the combined monetary relief is significantly less than what plaintiffs' expert was expected to testify the appropriate penalty would be.  There is enough of a discrepancy there such that the court should temper the lodestar slightly.  Accordingly, the court finds that a ten percent downward adjustment to the lodestar is appropriate.

Thus, the total adjusted attorney's fee award amount is **$145,024.33.**

### e.    Expert Fees

As discussed above, the expert fees will be allowed at a 20% reduction.  The total amount sought is $19,044.94.  Thus, the total adjusted expert witness fee award amount is **$15,235.95.**

### f.    Costs

The costs requested, totaling $5,013.75, appear reasonable. Defendant has not contested them.  Accordingly, the court will award costs in the amount of **$5,013.75.**

## IV.   Conclusion

For the reasons expressed above, plaintiffs' motion (ECF No. 116) is **GRANTED**.   The court finds that plaintiffs are entitled to a total fee and cost award of **$165,274.03**, payable by defendant in the manner set forth in the consent decree. (ECF No. 115.)

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 29th day of September, 2021.

ENTER:

_David A. Faber_

David A. Faber
Senior United States District Judge